# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

RANDY DEAN QUINT,
JOHN LINN, and
MARK MOLINA,
Individually and On Behalf of All Others Similarly Situated,

      Plaintiffs,

          v.

VAIL RESORTS, INC., a Delaware Corporation,

      Defendant.

---

## PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT
## FOR VIOLATIONS OF FEDERAL AND STATE LABOR LAWS

---

## **TABLE OF CONTENTS**

                                                                                    Page

I.    INTRODUCTION ............................................................................................1

II.   PARTIES ........................................................................................................7

      A.   Plaintiffs ..............................................................................................7

      B.   Defendant ...........................................................................................12

III.  JURISDICTION ...........................................................................................12

IV.   VENUE ..........................................................................................................14

V.    STATEMENT OF FACTS ...........................................................................14

      A. Vail Resorts Business Overview .............................................................14

      B. Vail Resorts' Violations of Federal and State Labor Laws .....................19

            1.  Failure to Pay Compensable Travel Time
                and Donning and Doffing Time ............................................................19

            2.  Failure to Pay Compensable Training Time .......................................24

            3.  Failure to Reimburse Equipment and Phone Costs............................26

VI.   FLSA COLLECTIVE ACTION ALLEGATIONS.......................................28

VII.  CLASS ACTION ALLEGATIONS .............................................................30

VIII. CLAIMS ........................................................................................................38

      COUNT I:  FAILURE TO PAY FOR ALL HOURS WORKED
      IN VIOLATION OF THE FLSA ..................................................................38

      COUNT II: FAILURE TO PAY OVERTIME WAGES
      IN VIOLATION OF THE FLSA ..................................................................56

      COUNT III: FAILURE TO REIMBURSE FOR EXPENSES
      IN VIOLATION OF THE FLSA ..................................................................66

      COUNT IV: FAILURE TO PAY FOR TRAINING TIME
      IN VIOLATION OF THE FLSA ..................................................................68

      COUNT V: VIOLATIONS OF COLORADO WAGE
      AND HOUR LAW ........................................................................................70

      COUNT VI: FAILURE TO PAY FOR ALL HOURS WORKED
      IN VIOLATION OF CALIFORNIA LAW ...................................................85

i

COUNT VII: FAILURE TO PAY MINIMUM WAGES
IN VIOLATION OF CALIFORNIA LAW ..................................................90

COUNT VIII: FAILURE TO PAY OVERTIME WAGES
IN VIOLATION OF CALIFORNIA LAW ..................................................93

COUNT IX: FAILURE TO PAY WAGES FOR MISSED
MEAL PERIODS IN VIOLATION OF CALIFORNIA LAW ...................97

COUNT X: FAILURE TO PAY WAGES FOR MISSED
REST PERIODS IN VIOLATION OF CALIFORNIA LAW .....................98

COUNT XI: FAILURE TO REIMBURSE EXPENSES
IN VIOLATION OF CALIFORNIA LAW ..................................................99

COUNT XII: SOLICITATION OF EMPLOYEES BY
MISREPRESENTATION IN VIOLATION OF CALIFORNIA LAW .....102

COUNT XIII: UNFAIR COMPETITION IN VIOLATION OF
CALIFORNIA LAW ...................................................................................104

COUNT XIV: VIOLATIONS OF MINNESOTA LAW ...........................107

COUNT XV: VIOLATIONS OF WISCONSIN LAW................................116

COUNT XVI: VIOLATIONS OF WASHINGTON STATE LAW ...........123

COUNT XVII: VIOLATIONS OF NEW YORK STATE LAW ..............137

COUNT XVIII: VIOLATIONS OF VERMONT LAW .............................147

COUNT XIX: VIOLATIONS OF MICHIGAN LAW ..............................154

COUNT XX: VIOLATIONS OF UTAH LAW .........................................159

COUNT XXI: BREACH OF CONTRACT
AS TO THE NATIONWIDE CLASS........................................................161

COUNT XXII: UNJUST ENRICHMENT
AS TO THE NATIONWIDE CLASS........................................................163

IX.    PRAYER FOR RELIEF .............................................................................165

X.    JURY DEMAND........................................................................................167

APPENDIX A: DOCUMENT PRESERVATION INSTRUCTIONS

EXHIBITS A-C: PLAINTIFFS' CONSENTS TO JOIN COLLECTIVE ACTION

Plaintiffs Randy Dean Quint, John Linn, and Mark Molina ("Plaintiffs") by and through the undersigned counsel, individually and on behalf of all others similarly situated, hereby bring this Class and Collective Action Complaint against Vail Resorts, Inc. ("Defendant," "Vail Resorts" or the "Company"). Plaintiffs allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys.

## I.       <u>INTRODUCTION</u>

1.       This class and collective action asserts claims for Vail Resorts' violations of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*., ("FLSA"), the laws of the States of Colorado, California, Utah, Minnesota, Wisconsin, Washington, New York, Vermont and Michigan, and common law. Through this action, Plaintiffs seek recompense for unpaid wages, overtime and other benefits wrongly withheld from them and all other similarly situated current and former Vail Resort employees.

2.       Vail Resorts claims to be the world's "premier mountain resort company" and "a leader in luxury, destination-based travel at iconic locations." Vail Resort's "Mountain" business segment comprises thirty-seven resorts and regional ski areas with ancillary services including ski lifts, lift ticket sales, ski and

1

snowboard schools, equipment rental, retail merchandise sales, dining and retail establishments, and luxury hotels. These resorts include Vail, Beaver Creek, Breckenridge, Keystone and Crested Butte in Colorado; Park City in Utah; Heavenly, Northstar and Kirkwood in the Lake Tahoe area of California and Nevada; Wilmot Mountain in Wisconsin; Afton Alps in Minnesota; and Mt. Brighton in Michigan.

3.     Vail Resorts employs approximately 7,000 year-round employees and approximately 36,000 seasonal employees. The Company has undertaken a number of measures to attract seasonal employees and increase the likelihood of their annual return to Vail Resorts. As Defendant's most recent annual report on Form 10-K filed with the U.S. Securities and Exchange Commission ("SEC"), dated September 24, 2020 (the "Form 10-K"), states: "The market for the most qualified talent continues to be competitive and we must provide competitive wages, benefits and workplace conditions to attract and retain our most qualified employees." In particular, Vail Resorts represents that it pays seasonal employees hourly wages that exceed the relevant state minimum wage. Vail Resorts also knows that job applicants and employees compare the hourly wages offered by competing resorts and, in turn, that competing resorts monitor and are influenced by the hourly wage paid by Vail Resorts.

4.     The Company has repeatedly touted its above-market hourly wages. For example, on June 18, 2015, the *Denver Post* published an article titled "Vail Resorts bumps minimum starting wage to $10 [per hour] in eight states." The article stated: "Vail Resorts, one of Colorado's largest employers, is bumping its minimum wage for entry-level positions to $10 an hour . . . . In California, the company will pay ***$1 more than the state's minimum wage***. In Utah, Wisconsin and Wyoming, it will pay ***$2.75 over the state's minimum wage***. Vail's entry-level wage is ***$1.77 higher*** than the Colorado minimum of $8.23 per hour." (all emphasis added throughout unless otherwise noted).

5.     Vail Resorts CEO Rob Katz, in a letter to employees, emphasized "the pay hike would help the company remain competitive in the hunt for workers." Katz also emphasized the Company was "taking this step because ***it is incumbent on us to do the right thing for our employees***." The article concluded that with "Colorado's unemployment at 4.2 percent and falling, and with rent and home prices soaring, ***a higher wage could help Vail lure and retain better employees*** in the state where its employee roster swells to as many as 18,000 at the height of ski season."

6.     Similarly, CEO Rob Katz stated in a March 5, 2018 press release: "[W]e are announcing ***a significant increase in the Vail Resorts minimum wage*** for our employees in North America" which "will impact thousands of employees

3

across our resorts and lines of business. Effective beginning of the 2018-2019 winter season, the Vail Resorts hourly minimum wage will increase:

> From USD $11.00 to USD $12.25 in Colorado, California and Utah.
> From USD $10.50 to USD $12.00 in Vermont.
> From USD $10.45 to USD $11.25 in Minnesota.
> From USD $10.45 to USD $10.75 in Michigan and Wisconsin."

7.     Three days later, on March 8, 2018, the *Vail Daily* reported that "[t]hanks to new U.S. tax law, Vail Resorts will increase its minimum wages at its U.S. and Canadian resorts, and has announced a 40 percent increase in its quarterly dividend to shareholders . . . . Vail Resorts CEO Rob Katz said the company will see a cash savings of about $40 million in the 2018 calendar year. The savings will allow the company to increase its minimum wage in the U.S. from $11 per hour to $12.25 per hour" and increase the "quarterly dividend paid to shareholders. Katz said the '*investment in wages is critical' in an era of low unemployment and rising prices*."

8.     Despite representing to job applicants, returning employees and competitors that Vail Resorts pays its employees a set base rate per hour worked, Vail Resorts willfully and systematically fails to pay its hourly employees for all hours worked at the hourly wage specified in employment agreements. For example, pursuant to Company policy, Vail Resorts generally pays ski and snowboard instructors ("Snow Sport Instructors") at their regular rate for shifts of 6.5-7.25 hours per day. However, Vail Resorts supervisors and managers know that Snow Sport

4

Instructors typically work ***more than 9 hours per day***, including compensable time working while traveling on Company buses, donning and doffing indispensable uniforms and equipment, training, and "off the clock" work performed prior to and after shifts. All told, Vail Resorts fails to pay Snow Sport Instructors for ***more than 2.5 hours of work per day*** in violation of the FLSA and applicable state law.

9.     Vail Resorts also does not pay Snow Sport Instructors for training time necessary for their job performance. Such uncompensated training time can amount to several hundred to several thousand dollars per Snow Sport Instructor per year. Although Vail Resorts fails to maintain records for all hours worked by Snow Sport Instructors, as required, the Company maintains a record of the number of training hours.

10.     Other hourly employees such as ticket scanners and lift operators also are not paid for travel time to and from Company parking lots and locker rooms or for donning and doffing time. Unlike Snow Sport Instructors, these hourly employees are required to "swipe in" (*i.e.,* "clock in") to Vail Resorts' employee timekeeping system. However, Company policy requires hourly employees to perform work ***before*** they "swipe in" to the Company timekeeping system. Vail Resorts does not compensate these employees for this time. For example, employees must don Company-provided uniforms and can only "swipe in" to the timekeeping

system as they exit their Vail Resorts locker room. At the end of the day, employees likewise are required by Company policy to "swipe out" of the timekeeping system *before* entering the locker room and changing out of their Company-supplied uniforms. As a result, ticket scanners, lift operators and other hourly employees are not paid for travel time or donning and doffing time in violation of federal and state law.

11.    The Company also fails to reimburse Snow Sport Instructors and other hourly employees for the cost of their tools of the trade, which can exceed $1,000 per employee, and for the use of their smartphones in performance of Company work.

12.    Vail Resorts has exploited Plaintiffs and thousands of other seasonal employees in violation of federal and state labor laws for years, and these egregious practices continue to the present. This action seeks to hold Vail Resorts responsible for its misconduct, fairly compensate Plaintiffs and other similarly situated current and former Vail Resorts employees for damages preliminarily estimated to total more than $100 million, and secure injunctive, declaratory and all other appropriate relief.

## II.     PARTIES

### A.     Plaintiffs

1.      Plaintiff RANDY DEAN QUINT ("QUINT") is a resident of the state of Colorado. Plaintiff has worked as a seasonal Vail Resorts employee and full-time Snow Sports Instructor for seven years at Beaver Creek Resort, which is owned and operated by Vail Resorts. Plaintiff QUINT signed a consent form to join this collective action lawsuit, attached hereto as Exhibit A.

2.      QUINT is owed the following amounts in unpaid wages for unpaid hours:

| PLAINTIFF QUINT WEEKLY TOTALS | | | | | | |
|---|---|---|---|---|---|---|
| Workweek Dates | Hours Paid For Week | Pay Per Hour | Total Base Pay | Actual Hours Worked | Unpaid Hours | Unpaid Wages |
| 12/04/17-12/12/17 | 16.75 | $17.51 | $293.30 | 26.25 | 9.50 | $166.34 |
| 12/16/17-12/20/17 | 36.75 | $17.51 | $643.50 | 50.50 | 13.75 | $240.75 |
| 12/24/17-12/30/17 | 50.75 | $17.51 | $888.65 | 70.00 | 19.25 | $337.05 |
| 12/31/17-01/08/18 | 52.08 | $17.51 | $911.93 | 71.00 | 18.92 | $331.27 |
| 01/09/18-01/15/18 | 36.75 | $17.51 | $643.50 | 50.50 | 13.75 | $240.75 |
| 01/16/18-01/22/18 | 37.25 | $17.51 | $652.25 | 51.00 | 13.75 | $240.75 |
| 01/23/18-01/30/18 | 44.75 | $17.51 | $783.57 | 60.50 | 15.75 | $275.77 |
| 02/03/18-02/07/18 | 36.75 | $17.51 | $643.49 | 50.50 | 13.75 | $240.75 |
| 02/10/18-02/15-18 | 44.50 | $17.51 | $770.44 | 61.00 | 16.50 | $288.90 |

7

| PLAINTIFF QUINT WEEKLY TOTALS | | | | | | |
|---|---|---|---|---|---|---|
| Workweek Dates | Hours Paid For Week | Pay Per Hour | Total Base Pay | Actual Hours Worked | Unpaid Hours | Unpaid Wages |
| 02/17/18-02/21/18 | 30.00 | $17.51 | $525.31 | 42.00 | 12.00 | $210.09 |
| 02/25/18-02/28/18 | 29.50 | $17.51 | $516.55 | 40.50 | 11.00 | $192.60 |
| 03/03/18-03/08/18 | 44.00 | $17.51 | $770.45 | 60.50 | 16.50 | $288.90 |
| 03/11/18-03/17/18 | 46.75 | $17.51 | $818.61 | 65.75 | 19.00 | $332.66 |
| 03/19/18-03/23-18 | 36.25 | $17.51 | $634.75 | 50.00 | 13.75 | $240.75 |
| 03/26/18-03/30/18 | 36.25 | $17.51 | $634.75 | 50.00 | 13.75 | $240.75 |
| 04/02/18-04/06/18 | 36.25 | $17.51 | $634.75 | 50.00 | 13.75 | $240.75 |
| 04/09/18-04/11/18 | 21.75 | $17.51 | $380.85 | 30.00 | 8.25 | $144.45 |
| 12/08/18-12/16/18 | 23.25 | $18.04 | $419.43 | 31.50 | 8.25 | $148.83 |
| 12/25/18-12/31/18 | 50.75 | $18.04 | $915.53 | 70.00 | 19.25 | $347.27 |
| 01/01/19-01/07/19 | 44.00 | $18.04 | $793.76 | 60.50 | 16.50 | $297.66 |
| 01/08/19-01/13/19 | 44.50 | $18.04 | $802.78 | 61.00 | 16.50 | $297.66 |
| 01/21/19-01/26/19 | 44.00 | $18.04 | $793.76 | 60.50 | 16.50 | $297.66 |
| 01/29/19-02/02/19 | 36.75 | $18.04 | $662.97 | 50.50 | 13.75 | $248.05 |
| 02/05/19-02/10/19 | 44.50 | $18.04 | $802.78 | 61.00 | 16.50 | $297.66 |
| 02/13/19-02/19/19 | 50.75 | $18.04 | $915.53 | 70.00 | 19.25 | $347.27 |
| 02/20/19-02/24/19 | 25.50 | $18.04 | $460.02 | 36.25 | 10.75 | $193.93 |
| 02/27/19-03/05/19 | 44.00 | $18.04 | $793.76 | 60.50 | 16.50 | $297.66 |
| 03/06/19-03/12/19 | 42.00 | $18.04 | $757.68 | 58.00 | 16.00 | $288.64 |

| PLAINTIFF QUINT WEEKLY TOTALS | | | | | | |
|---|---|---|---|---|---|---|
| Workweek Dates | Hours Paid For Week | Pay Per Hour | Total Base Pay | Actual Hours Worked | Unpaid Hours | Unpaid Wages |
| 03/13/19-03/19/19 | 36.25 | $18.04 | $653.95 | 50.00 | 13.75 | $248.05 |
| 03/20/19-03/26/19 | 35.50 | $18.04 | $640.42 | 49.00 | 13.50 | $243.54 |
| 03/27/19-04/03/19 | 29.00 | $18.04 | $523.16 | 40.00 | 11.00 | $198.44 |
| 12/20/19-12/26/19 | 50.75 | $18.58 | $942.94 | 70.00 | 19.25 | $357.70 |
| TOTALS | $1,238.58 | | $22,025.12 | 1,708.75 | 470.17 | $8,363.30 |

3.       QUINT is owed the following amounts in estimated unpaid overtime:

| PLAINTIFF QUINT ESTIMATED OVERTIME | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Dates | Hours Paid | Total Pay | Regular Rate | 150% Regular Rate | Actual Hours Worked | Unpaid Overtime Hours | Unpaid Overtime | Liquidated Damages |
| 2017-2018 | 682.00 | $17,974.43 | $26.35 | $39.53 | 882 | 200.00 | $7,906.00 | $15,812.00 |
| 2018-2019 | 553.75 | $15,649.20 | $28.26 | $42.39 | 758.75 | 205.00 | $8,689.95 | $17,379.90 |
| 2019-2020 | 60.25 | $1,377.24 | $22.86 | $34.29 | 77.25 | 17.00 | $582.93 | $1,165.86 |
| TOTALS | 1,296 | $35,000.87 | | | 1,718 | 422 | $17,178.88 | $34,357.76 |

4.       Plaintiff JOHN LINN ("LINN") is a resident of Colorado. Plaintiff has worked as a seasonal Vail Resorts employee and part-time and full-time Snow Sports Instructor for four years at Beaver Creek Resort, which is owned and operated by Vail Resorts. Plaintiff LINN signed a consent form to join this collective action lawsuit, attached hereto as Exhibit B.

9

5.      LINN is owed the following amounts in unpaid wages for unpaid hours:

| PLAINTIFF LINN WEEKLY TOTALS | | | | | | |
|---|---|---|---|---|---|---|
| Workweek Dates | Hours Paid For Week | Pay Per Hour | Total Base Pay | Actual Hours Worked | Unpaid Hours | Unpaid Wages |
| 12/21/17-12/27/17 | 41.50 | $13.46 | $558.62 | 59.00 | 17.50 | $235.53 |
| 12/28/17-01/02/18 | 25.00 | $13.46 | $336.52 | 37.25 | 12.25 | $164.87 |
| 01/06/18-01/07/18 | 8.00 | $13.46 | $107.69 | 12.75 | 4.75 | $63.93 |
| 03/03/18-03/04/18 | 13.75 | $13.46 | $185.08 | 19.00 | 5.25 | $70.66 |
| **TOTALS** | **88.25** | **$13.46** | **$1,187.91** | **128.25** | **39.75** | **$534.99** |
| 12/08/18 | 7.25 | $14.25 | $103.31 | 10.00 | 2.75 | $39.19 |
| 12/22/18-12/28/18 | 51.24 | $14.25 | $730.17 | 70.50 | 19.26 | $274.47 |
| 12/29/18-01/04/19 | 50.41 | $14.25 | $718.35 | 68.50 | 18.09 | $257.79 |
| 02/16/19-02/20/19 | 21.75 | $14.25 | $309.93 | 30.00 | 8.25 | $117.57 |
| 02/23/19-02/25/19 | 21.75 | $14.25 | $309.93 | 30.00 | 8.25 | $117.57 |
| 03/02/19-03/08/19 | 24.25 | $14.25 | $345.56 | 36.50 | 12.25 | $174.57 |
| 03/10/19-03/12/19 | 22.00 | $14.25 | $313.50 | 30.00 | 8.00 | $114.01 |
| 03/17/19-03/19/19 | 5.50 | $14.25 | $78.38 | 9.50 | 4.00 | $57.00 |
| 03/23/19-03/27/19 | 31.13 | $14.25 | $443.61 | 44.38 | 13.25 | $188.83 |
| 04/08/19 | .75(GS) | $14.25 | $10.69 | 2.75 | 2.00 | $28.50 |
| **TOTALS** | **236.20** | **$14.25** | **$3,363.43** | **332.13** | **96.10** | **$1,369.50** |
| 12/15/19 | 7.75 | $14.68 | $113.77 | 10.50 | 2.75 | $40.37 |
| 12/19/19-12/25/19 | 35.25 | $14.68 | $517.47 | 50.00 | 14.75 | $216.53 |
| 12/28/19-01/02/20 | 39.00 | $14.68 | $572.52 | 54.00 | 15.00 | $220.20 |
| 01/07/20-01/12/20 | 29.50 | $14.68 | $433.06 | 40.50 | 11.00 | $161.48 |
| 02/14/20-02/20/20 | 45.50 | $14.68 | $667.94 | 63.00 | 17.5 | $256.90 |

| PLAINTIFF LINN WEEKLY TOTALS | | | | | | |
|---|---|---|---|---|---|---|
| Workweek Dates | Hours Paid For Week | Pay Per Hour | Total Base Pay | Actual Hours Worked | Unpaid Hours | Unpaid Wages |
| 02/21/20-02/22/20 | 13.00 | $14.68 | $190.84 | 18.00 | 5.00 | $73.40 |
| 02/29/20-03/03/20 | 10.50 | $14.68 | $154.64 | 17.25 | 6.75 | $99.09 |
| 03/13/20-03/14/20 | 13.00 | $14.68 | $190.84 | 18.00 | 5.00 | $73.40 |
| **TOTALS** | **193.50** | **$14.68** | **$2,841.08** | **271.25** | **77.75** | **$1,141.37** |
| **GRAND TOTALS** | **517.95** | | **$7,392.42** | **731.63** | **213.60** | **$3,045.86** |

6.      LINN is owed the following amounts in estimated unpaid overtime:

| PLAINTIFF LINN OVERTIME | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Workweek Dates | Hours Paid For Week | Total Pay | Regular Rate | 150% Regular Rate | Actual Hours Worked | Unpaid Overtime Hours | Unpaid Overtime | Unpaid Wages |
| 12/23/17-12/29/17 | 50.75 | $913.13 | $17.99 | $26.99 | 70.00 | 30.00 | $809.70 | $625.30 |
| 12/22/18-12/28/18 | 51.24 | $807.19 | $15.75 | $23.63 | 70.50 | 30.50 | $720.72 | $560.55 |
| 12/29/18-01/04/19 | 50.41 | $841.35 | $16.69 | $25.04 | 68.50 | 28.50 | $713.64 | $565.30 |
| 03/23/19-03/27/19 | 31.13 | $660.45 | $21.22 | $31.83 | 44.38 | 4.38 | $139.42 | $139.42 |
| 12/21/19-12/27/19 | 28.00 | $453.34 | $16.19 | $24.29 | 40.25 | 0.25 | $6.07 | $200.35 |
| 12/28/19-01/02/20 | 39.00 | $572.52 | $22.72 | $34.08 | 54.00 | 14.00 | $477.12 | $477.12 |
| 02/15/20-02/21/20 | 45.50 | $1051.45 | $23.11 | $34.66 | 63.00 | 23.00 | $797.18 | $670.07 |
| **TOTALS** | **296.03** | **$5,299.43** | | | **410.63** | **130.63** | **$3,663.85** | **$3,238.11** |

7.      Plaintiff Mark Molina ("MOLINA") is a resident of California. Plaintiff

has worked as a seasonal Vail Resorts employee and full-time Lift Ticket Scanner

11

for one year at Beaver Creek Resort which is owned and operated by Vail Resorts. Plaintiff MOLINA signed a consent form to join this collective action lawsuit, attached hereto as Exhibit C.

### B.    Defendant

8.    Vail Resorts, Inc. is a Delaware Corporation organized in 1997 and headquartered at 390 Interlocken Crescent, Broomfield, Colorado, 80021.

9.    As relevant to this action, Vail Resorts operates ski resorts and ski areas in Colorado, California, Utah, Minnesota, Wisconsin, Washington, New York, Vermont and Michigan.

## III.    <u>JURISDICTION</u>

10.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

11.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

12.    Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Plaintiffs assert

claims on behalf of proposed classes in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed Class have a different citizenship than Defendant.

13.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

14.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

15.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     The Court has personal jurisdiction over Defendant because Defendant is headquartered in the State of Colorado, conducts business within the State of Colorado, employs individuals within the State of Colorado, and is registered with the Colorado Secretary of State.

13

17.   Defendant also is subject to personal jurisdiction because Defendant has purposefully availed itself of the privilege of conducting activities in the State of Colorado and has established minimum contacts that are sufficient to confer this Court's jurisdiction over Defendant; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## IV.      VENUE

18.   Venue is proper in the District of Colorado because Defendant is headquartered in this District. Therefore, a substantial portion of the events forming the basis of this suit, including Defendant's illegal pay practices alleged herein, occurred in the District of Colorado.

## V.       STATEMENT OF FACTS

### A.      Vail Resorts Business Overview

19.   Vail Resorts was organized in 1997 and currently operates thirty-seven premier mountain resorts in the United States and abroad, offering skiing, snowboarding and other recreational activities. The Mountain segment accounts for nearly 90% of Vail Resorts' business and derives revenue through the sale of lift tickets, including pass products, as well as a comprehensive offering of amenities available to guests, such as ski and snowboard instruction, equipment rentals and

14

retail merchandise sales, a variety of dining venues, private club operations and other winter and summer recreational activities.

20.     The following graphic from Vail Resorts' most recent annual report on Form 10-K filed with the SEC on September 24, 2020, shows the geographic distribution of resorts worldwide:



21.     Vail Resorts claims its "premier resorts and business model" differentiates the Company from other mountain sports industry participants. "We own and operate some of the most iconic, branded destination mountain resorts in

geographically diverse and important ski destinations in Colorado, Utah, Lake Tahoe and the Pacific Northwest, including British Columbia, Canada. These resorts are complemented by regional ski areas in the Northeast, Pacific Northwest, Midwest and Mid-Atlantic regions, which are strategically positioned near key U.S. population centers, . . . ." Form 10-K at 7.

22.     To maintain its reputation for premium offerings, Vail Resorts must attract, hire, retain and ensure the regular return of more than 36,000 seasonal employees, including qualified Snow Sport Instructors, lift operators, ski patrol, snowmaking technicians, rental equipment staff, servers, maintenance and other personnel. "Our mountain and lodging operations are highly dependent on a large seasonal workforce. We recruit year-round to fill thousands of seasonal staffing needs each season and work to manage seasonal wages and the timing of the hiring process to ensure the appropriate workforce is in place." *Id*. at 26.

23.     The specialized nature of the work at Vail Resorts mountains requires highly skilled employees that are proficient in their respective areas of expertise, such as ski and snowboard instructors, rental equipment technicians, and ski patrol personnel. Many jobs, such as Snow Sports Instructors, also require fluency in more than one language to be able to communicate with Vail Resorts' global clientele.

24.     Vail Resorts has succeeded in filling its seasonal employee needs by repeatedly touting the supposedly superior hourly wage, which can exceed the relevant states' minimum hourly wage and the hourly rate offered by competitors. For example, in 2015, Vail Resorts increased its minimum starting wage for entry level positions to $10 per hour, which was higher than the state-mandated minimum hourly wage in most states. *See Vail Resorts bumps minimum starting wage to $10 [per hour] in eight states*, Denver Post, June 18, 2015. According to news reports, "Vail Resorts, one of Colorado's largest employers, is bumping its minimum wage for entry-level positions to $10 an hour . . . . In California, the company will pay *$1 more than the state's minimum wage*. In Utah, Wisconsin and Wyoming, it will pay *$2.75 over the state's minimum wage*. Vail's entry-level wage is *$1.77 higher* than the Colorado minimum of $8.23 per hour." *Id*. The article concluded that with "Colorado's unemployment at 4.2 percent and falling, and with rent and home prices soaring, *a higher wage could help Vail lure and retain better employees* in the state where its employee roster swells to as many as 18,000 at the height of ski season." *Id*.

25.     In announcing the hourly wage increase, Vail Resorts CEO Rob Katz wrote to employees that "the pay hike would help the company remain competitive

in the hunt for workers." Katz also emphasized the Company was "taking this step because *it is incumbent on us to do the right thing for our employees*."

26.     A few years later, CEO Rob Katz announced in a March 5, 2018 press release that the Company was again making "*a significant increase in the Vail Resorts minimum wage* for our employees in North America" that "will impact thousands of employees across our resorts and lines of business. Effective beginning of the 2018-2019 winter season, the Vail Resorts hourly minimum wage will increase:

> From USD $11.00 to USD $12.25 in Colorado, California and Utah.
> From USD $10.50 to USD $12.00 in Vermont.
> From USD $10.45 to USD $11.25 in Minnesota.
> From USD $10.45 to USD $10.75 in Michigan and Wisconsin."

27.     Three days later, on March 8, 2018, the *Vail Daily* reported that "[t]hanks to new U.S. tax law, Vail Resorts will increase its minimum wages at its U.S. and Canadian resorts, and has announced a 40 percent increase in its quarterly dividend to shareholders . . . . Vail Resorts CEO Rob Katz said the company will see a cash savings of about $40 million in the 2018 calendar year. The savings will allow the company to increase its minimum wage in the U.S. from $11 per hour to $12.25 per hour" and increase the "quarterly dividend paid to shareholders. Katz said the '*investment in wages is critical' in an era of low unemployment and rising prices*."

28.     However, as explained in detail below, Vail Resorts knowingly failed to compensate Plaintiffs and thousands of other similarly situated employees at their relevant hourly rate for all time worked. Vail Resorts also knowingly failed to reimburse Plaintiffs and others similarly situated for costs associated with their smartphones and tools of trade used in the performance of their jobs and for the benefit of Vail Resorts. In violation of federal and state laws, Vail Resorts has illegally reaped millions of dollars at the expense of Plaintiffs and other Class members.

**B.     Vail Resorts' Violations of Federal and State Labor Laws**

**1.      Failure to Pay Compensable Travel
Time and Donning and Doffing Time**

29.     Vail Resorts ski areas and resorts are located in areas where nearby housing and parking are scarce and generally reserved for paying customers. Accordingly, seasonal workers commute to parking areas maintained by Vail Resorts and take employee shuttle buses to their job sites or Vail Resorts locker rooms. While the distances and associated travel times may vary slightly, at all Vail Resorts properties relevant to this action, in a mountain environment, parking near the base areas is limited and reserved for resort guests. As a result, Vail Resorts designates "satellite" parking areas as "employee lots" and transports employees to

their worksites on Company buses. When employees ride in Company buses or shuttles, they are subject to the control of their employer.

30.    For example, Plaintiffs and other seasonal workers at Vail Resorts' Beaver Creek Resort typically begin their workday about an hour before the start of their shifts when they arrive at Company property to wait for Company buses that transport them to their job sites. Employees generally wait 10-15 minutes for the bus, but sometimes the wait is as long as 30 minutes.

31.    While they wait for Company buses, Snow Sport Instructors perform work that is integral and indispensable to their principal activities including (i) checking their schedules which direct them to particular worksites; (ii) communicating with ski and snowboard school students; and (iii) reviewing information such as grooming, terrain, snow and weather reports. When the bus arrives, dozens of employees line up to wait their turn to board, consuming another 5-10 minutes.

32.    During the bus ride, which lasts approximately fifteen minutes, Snow Sport Instructors continue to perform work that is integral and indispensable to their principal job function. However, Vail Resorts does not pay employees for their time waiting for and traveling on Company buses despite the fact that employees cannot use this time for their own purposes and/or are under Vail Resorts' control. Given

the level of productivity and efficiency demanded of Snow Sport Instructors during their shifts, the Company required, expected and understood that these employees were working prior to their shifts.

33.     After employees disembark from the buses, they walk to locker rooms where they put on uniforms and equipment that is integral and indispensable to their work performance. For example, Snow Sports Instructors must put on ski boots or snowboard boots, as well as other tools of the trade necessary to perform their job functions. It takes at least 5 minutes to walk to the locker room and at least 15 minutes to don Company required uniforms and equipment.

34.     After putting on their uniforms and equipment, it takes Snow Sport Instructors at least 5 minutes to walk to a pre-shift meeting which lasts at least another 10-15 minutes.

35.     After the meeting, Snow Sport Instructors start their shifts which are generally scheduled to be 6.5 to 7.25 hours in length, but sometimes last longer. Regardless of the actual length of the shift, Vail Resorts pays Snow Sport Instructors only for their scheduled "shift" time, 6.5 to 7.25 hours, which is only a portion of the total worktime performed.

36.     After their shifts, Snow Sport Instructors are required to: (i) complete Company specific paperwork memorializing the work performed during the shift;

(ii) meet with supervisors or managers; (iii) communicate with Vail Resorts customers; (iv) coordinate with other Vail Resorts employees; and (v) review schedules and perform other administrative functions. These activities consume at least 15 to 30 minutes. Since Snow Sport Instructors are required to perform this post-shift work and Vail Resorts knows that this work is being performed, the Company violates the FLSA and state law by not paying employees for this time.

37.     After completing their post-shift work, Snow Sport Instructors walk to the locker rooms, doff their Company-provided uniforms and gear and store their equipment. In total, Snow Sport Instructors spend at least 15 minutes doffing uniforms and equipment that is integral and indispensable to the performance of their work. In violation of federal and state laws, Vail Resorts fails to compensate Snow Sport Instructors for these doffing activities.

38.     After changing, Snow Sport Instructors walk to the Company bus stop, wait for the Vail Resorts employee bus and then take the return trip to the employee parking lot. The bus trip from locker room to parking lot generally takes at least 30 minutes, provided the bus is not delayed. On the bus, Snow Sport Instructors continue to perform Vail Resorts work, including communicating with customers, coordinating with other employees, reviewing schedules and attending to other Company administrative matters.

39.     In sum, when Snow Sport Instructors are compensated for a 6.5-hour shift, they actually work in excess of 9 hours. When Snow Sport Instructors are compensated for a 7.25-hour shift, they actually work in excess of 10 hours. Regardless of the assigned shift, Snow Sport Instructors are not paid for the extra time worked, which can amount to more than 2.5 hours of work per day. However, under federal and state laws, Vail Resorts is required to compensate Snow Sport Instructors for *all* time that work is performed.

40.     Unlike Snow Sport Instructors, other hourly employees are required to "swipe in" (*i.e.,* "clock in") to Vail Resorts' employee timekeeping system. However, Company policy requires hourly employees to perform work ***before*** they "swipe in" to the Company timekeeping system. Vail Resorts does not compensate these employees for this time. For example, employees must don Company-provided uniforms and equipment and can only "swipe in" to the timekeeping system as they exit the Vail Resorts locker room. At the end of the day, employees likewise are required by Company policy to "swipe out" of the timekeeping system ***before*** entering the locker room and changing out of their Company-supplied uniforms and equipment in the locker room. As a result, ticket scanners, lift operators and other hourly employees are not paid for travel time or donning and doffing time in violation of federal and state laws.

23

## 2.    Failure to Pay Compensable Training Time

41.    As set forth in the Vail Resorts Resource and Guideline Manual, a Snow Sport Instructor's base wage is determined by Professional Ski Instructors Association ("PSIA") "certification level along with years of experience."

42.    Under the heading "Professional Performance Expectations for All Instructors," the Manual states "Put yourself in the shoes of one of our guests . . . you have just arrived for your lesson. You've traveled a long distance and put up a substantial expense to get here. You know about the instructors' world-class reputation and you're expecting a lesson from a qualified professional, whose expertise will create an unforgettable experience for you and your family . . .Our guests expect nothing less than the best. You came here for some of the same reasons they did: You want an exceptional experience. Our reputation makes it our duty to set the industry standard. And now it's your responsibility to meet and exceed the standards each time you interact with a guest, peer or coworker."

43.    Under the heading "Training and Development," the Manual explains that the "quality of lessons you deliver is paramount to the guest experience. Meeting your required training and maintaining a focus on professional development ensure you are providing the guest with the best possible lesson experience."

44.     To "encourage" Snow Sport Instructors to become a certified instructor or increase their level of certification, the "following increases will be effective on the first day of the next pay period following the date when proof of Certification:"

> **PRIMARY DISCIPLINE CERTIFICATION (ALPINE, SNOWBOARD, NORDIC, ADAPTIVE)**
>
> Your primary discipline is the one in which you specialize or teach the majority of the season. Each instructor can have only one primary discipline. When you achieve a PSIA/AASI certification level 2 or above (or multiple level, e.g. Nordic) in your primary discipline, you will receive a 10% increase in your Base Rate or the entry Base Rate for that level of certification, whichever is greater. If you obtain your certification over the summer, your base wage will be determined by adding your annual merit increase (if applicable), then the certification increase.
>
> **PSIA/AASI CHILDREN'S SPECIALIST 2**
>
> All Level 2 certified instructors are eligible to earn CS-2 (formerly Children's Accreditation), which will add $1.00 or 3% (for CS-1) + 3% (for CS-2) whichever is greater, to your Hourly Base Rate. If you currently hold a 3-6-year-old Educator Endorsement or earn CS-1, you are eligible for a pay addition of $.50 or 3%, whichever is greater. If a CS-2 pay increase is awarded, you will be expected to enthusiastically accept assignments teaching children.
>
> **PSIA/AASI CHILDREN'S SPECIALIST 1**
>
> All Level 1 certified instructors are eligible to earn CS-1, which will add $.50 or 3%, whichever is greater, to your Base Rate. If a CS-1 pay increase is awarded, you will be expected to enthusiastically accept assignments teaching children.
>
> **SECONDARY DISCIPLINE CERTIFICATION (ALPINE, SNOWBOARD, ADAPTIVE, NORDIC, FREESTYLE)**

A secondary discipline is any discipline in which you are qualified to teach, but do not specialize or teach the majority of the season. You can have multiple secondary disciplines. Each PSIA/AASI certification level that you obtain in a secondary discipline will add $.50 or 3%, whichever is greater, to your Base Rate. Note: PSIA/AASI Freestyle Accreditation 1 and 2 are considered secondary disciplines. If a secondary discipline increase is awarded, you will be expected to enthusiastically accept assignments teaching that discipline.

45.     To obtain an initial certification or increase their level of certification, Snow Sport Instructors typically train 1 day (at least 6 hours a day not including travel and donning and doffing time) a week for 10 weeks per year for a total of 60 hours a season.

46.     Vail Resorts does not pay Snow Sport Instructors for this training time which is essential to the performance of their duties as required by the FLSA and state law.

47.     Uncompensated training time can amount to several hundred to several thousand dollars per Snow Sport Instructor per year. Although Vail Resorts fails to maintain records for all hours worked by Snow Sport Instructors, as required, the Company maintains a record of the number of training hours (not including the travel and donning and doffing time).

### 3.     Failure to Reimburse Equipment and Phone Costs

48.     Certain Vail Resorts seasonal employees are required to purchase expensive sports and other equipment necessary to perform their jobs for the benefit

26

of Defendant. However, Vail Resorts does not reimburse employees for the purchase or maintenance of such equipment, which includes skis and snowboards, boots, bindings, ski poles, and other gear.

49.     In addition to ski and snowboard equipment, the employees must have and maintain cellular service for a smartphone, which employees use throughout work time for the benefit of Vail Resorts. For example, supervisors and managers require employees to constantly check their assignment schedules and be reachable by phone prior to, during and after their shifts. When an employer requires employees to use their personal cell phones for work-related calls, the employer must reimburse the employees for their costs as a reasonable percentage of their cell phone bills. It is irrelevant whether the employee has an "unlimited minutes" plan.

50.     Vail Resorts required Plaintiffs and others similarly situated to pay the following expenses, which Defendant did not reimburse: (i) the cost to purchase new or up-to-date equipment including skis or snowboards with bindings, boots, gloves, poles, goggles and base layers; (ii) maintenance and replacement costs for new or up-to-date equipment including skis or snowboards with bindings, boots, gloves, poles, goggles, and base layers; and (iii) the cost of smartphones that Defendant required employees to use for their work; and (iv) the cost of cell phone plans.

## VI.        **FLSA COLLECTIVE ACTION ALLEGATIONS**

51.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA

on their own behalf and on behalf of:

> All current and former Vail Resorts hourly employees who worked
> in the United States and who were not compensated for work-related
> equipment and cell phone costs or "off-the-clock" work including,
> but not limited to, travel time, donning and doffing time, and training
> time during the three years preceding the filing of this Complaint
> through judgment (the "FLSA Collective" or the "Hourly
> Employees").

52.     Excluded from the FLSA Collective are Defendant's executives and

administrative and professional employees, including computer professionals and

outside salespersons.

53.     Consistent with Defendant's policy and pattern or practice, Plaintiffs

and the FLSA Collective were not paid for all hours worked or overtime

compensation when they worked beyond 40 hours in a workweek.

54.     Defendant assigned and/or were aware of all of the work that Plaintiffs

and the FLSA Collective performed.

55.     As part of their regular business practices, Defendant intentionally,

willfully and repeatedly engage in a pattern, practice and/or policy of violating the

FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or

practice includes, but is not limited to:

a.      Willfully failing to pay employees, including Plaintiffs and the FLSA Collective, for all hours worked;

b.      Willfully failing to record all of the time that employees, including Plaintiffs and the FLSA Collective, worked for Defendant's benefit; and

c.      Willfully failing to pay employees, including Plaintiffs and the FLSA Collective, overtime compensation when they worked beyond 40 hours in a workweek.

56.     Defendant is aware or should have been aware that federal law requires Plaintiffs and the FLSA Collective be compensated for all hours worked and overtime premiums for hours worked in excess of 40 per workweek.

57.     Defendant's unlawful conduct has been widespread, repeated and consistent.

58.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they were or are subject to the same or similar unlawful practices, policy, or plan; and (b) their claims are based upon the same factual and legal theories.

59.     Many similarly situated current and former Hourly Employees have been underpaid in violation of the FLSA and would benefit from the issuance of a Court-supervised notice of this lawsuit and the opportunity to join it.

60.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

61.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

62.     Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period, will include thousands of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## VII.     CLASS ACTION ALLEGATIONS

63.     Plaintiffs assert causes of action under state and common law pursuant to Federal Rule of Civil Procedure 23(b)(3) on their own behalf and on behalf of the following classes (collectively, the "Rule 23 Classes"):

64.     **Nationwide Class**: All current and former Vail Resorts hourly employees who worked in the United States and were not compensated at the hourly rate specified in their employment agreements for each hour worked including, but not limited to, "off-the-clock" work such as traveling to and from employee parking

lots, locker rooms or worksite, donning and doffing uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "Nationwide Class").

65.     **Colorado Class**: All current and former Vail Resorts hourly employees who worked in the State of Colorado and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "Colorado Class").

66.     **California Class**: All current and former Vail Resorts hourly employees who worked in the State of California and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "California Class").

67.     **Utah Class**: All current and former Vail Resorts hourly employees who worked in the State of Utah and who were not compensated for work-related

equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "Utah Class").

68.    **Minnesota Class**: All current and former Vail Resorts hourly employees who worked in the State of Minnesota and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "Minnesota Class").

69.    **Wisconsin Class**: All current and former Vail Resorts hourly employees who worked in the State of Wisconsin and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "Wisconsin Class").

70.   **Washington Class**: All current and former Vail Resorts hourly employees who worked in the State of Washington and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "Washington Class").

71.   **New York Class**: All current and former Vail Resorts hourly employees who worked in the State of New York and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "New York Class").

72.   **Vermont Class**: All current and former Vail Resorts hourly employees who worked in the State of Vermont and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three

years preceding the filing of this Complaint through judgment (the "Vermont Class").

73.     **Michigan Class**: All current and former Vail Resorts hourly employees who worked in the State of Michigan and who were not compensated for work-related equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling to and from employee parking lots, locker rooms or worksite, the donning and doffing of uniforms and equipment, and training time during the three years preceding the filing of this Complaint through judgment (the "Michigan Class").

74.     The Colorado Class, the California Class, the Utah Class, the Minnesota Class, the Wisconsin Class, the Washington Class, the New York Class, the Vermont Class and the Michigan Class are collectively referred to as the "State Employment Law Classes."

75.     Excluded from the Rule 23 Classes are Defendant's executives and administrative, professional and other full-time employees, including computer professionals and outside salespersons.

76.     The Rule 23 Classes are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of Rule 23 Class members. Rule 23 Class members can be identified from

Defendant's computer systems and electronic and other payroll and personnel records.

77.     There is a well-defined community of interest among members of the State Employment Law Classes and common questions of law and fact predominate in this action over any questions affecting individual members of the State Employment Law Classes. These common legal and factual questions include, but are not limited to, the following:

a.     Whether the time spent by Plaintiffs and members of the State Employment Law Classes performing off-the-clock work tasks is compensable under state wage and hour laws; and

b.     The proper measure of damages sustained by Plaintiffs and members of the State Employment Law Classes.

78.     There is a well-defined community of interest among the Nationwide Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a.     Whether the time Nationwide Class members spent on pre-shift and post-shift off-the-clock work activities is compensable time;

35

b.      Whether Nationwide Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof; and

c.      Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract and/or unjust enrichment. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1261-63 (11th Cir. 2004) ("Whether a contract has been breached is a pure and simple question of contract interpretation which should not vary from state to state . . . . A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."); *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123-26 (2d Cir. 2013).

79.     Plaintiffs' claims are typical of those of the Rule 23 Classes in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

80.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Classes and have retained counsel who are qualified and experienced in the

prosecution of nationwide class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Classes.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

82.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has electronic and other and payroll and record-keeping systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

83.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

84.     Because Defendant acts and refuses to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## VIII.     CLAIMS

### COUNT I:

### FAILURE TO PAY FOR ALL HOURS WORKED
### IN VIOLATION OF THE FLSA
29 U.S.C. §§ 202, 203(g), 206, 207, 216, 218; DOL Regulations, 29 C.F.R. §§ 531.35, 778.5, 778.108, 778.223, 778.315-18, 785.7, 785.9, 785.11-13, 785.27-29, 785.41, 790.6, 790.8(a)

85.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

86.     The representative Plaintiffs bring this Count on behalf of themselves, individually, and on behalf of all other similarly situated Vail Resorts employees, as a collective action under the FLSA.

87.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

88.     At all times relevant to this action, Vail Resorts was an "employer" under the FLSA in that it "suffered or permitted" Plaintiffs and the FLSA Collective

to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the

FLSA.

89.     29 U.S.C. § 206 specifies that every employer, including Defendant,

shall pay a minimum wage of not less than $7.25 per hour.

90.     29 U.S.C. § 207. Maximum hours, provides:

> (a) (1) [N]o employer shall employ any of his employees who in
> any workweek is engaged in commerce . . . for a workweek
> longer than forty hours unless such employee receives
> compensation for his employment in excess of the hours above
> specified at a rate not less than one and one-half times the regular
> rate at which he is employed.

91.     29 U.S.C. § 218. Relation to other laws, provides:

> (a)     No provision of this chapter . . . shall excuse
> noncompliance with any Federal or State law . . . establishing a
> minimum wage higher than the minimum wage established
> under this chapter or a maximum workweek lower than the
> maximum workweek established under this chapter . . . . No
> provision of this chapter shall justify any employer in reducing a
> wage paid by him which is in excess of the applicable minimum
> wage under this chapter, or justify any employer in increasing
> hours of employment maintained by him which are shorter than
> the maximum hours applicable under this chapter.

92.     Where a higher minimum wage than set in the FLSA is applicable to an

employee by virtue of a state or local law, the regular rate of the employee pay cannot

be lower than the minimum provided by the state or local law because the words

"regular rate at which he is employed" as used in 29 U.S.C. § 207 must be construed to mean the regular rate at which he is lawfully employed. 29 C.F.R. § 778.5.

93.     The "regular rate" of pay under the FLSA cannot be left to a declaration by the parties; it must be drawn from what happens under the employment contract. 29 C.F.R. § 778.108. The hourly rate is the amount an employer actually pays an employee for the normal, non-overtime workweek for which he is employed. *Id.* Once the parties have decided upon the amount of wages and the mode of payment, the determination of the regular rate is a matter of mathematical computation based on the total wages divided by the hours worked, irrespective of the "regular rate" specified in any wage contracts.

94.     Under the FLSA "an employee must be compensated for all hours worked.  29 C.F.R. § 778.223. "As a general rule the term 'hours worked' will include: (1) all time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) all time during which an employee is suffered or permitted to work whether or not he is required to do so." 29 C.F.R. § 778.223. Thus, working time is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness.

95.     In determining the number of hours for which overtime compensation is due, all hours worked (as defined in § 778.223) by an employee for an employer in a particular workweek must be counted. 29 C.F.R. § 778.315. Overtime compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the non-overtime hours under his contract (express or implied) or under any applicable statute has been paid. *Id*.

96.     "[I]t is settled under the Act that where a rate has been agreed upon as applicable to a particular type of work the parties cannot lawfully agree that the rate for that work shall be lower merely because the work is performed . . . during a week in which statutory overtime is worked. Since a lower rate cannot lawfully be set for overtime hours it is obvious that the parties cannot lawfully agree that the working time will not be paid for at all." 29 C.F.R. § 778.316. For example, an "agreement that only the first 8 hours of work on any day or only the hours worked between certain fixed hours of the day . . . will be counted as working time will clearly fail of its evasive purpose. An announcement by the employer that no overtime work will be permitted, or that overtime work will not be compensated unless authorized in advance, will not impair the employee's right to compensation for work which he is actually suffered or permitted to perform." *Id*.

97.     An agreement not to compensate employees for certain non-overtime hours is impermissible since it would have the same effect of diminishing the employee's total overtime compensation. 29 C.F.R. § 778.317.

98.     Agreements that provide for payment only for the hours spent in productive work and attempt to avoid pay for work hours spent in waiting time, time spent in travel on the employer's behalf or similar time are illegal under the FSLA. *See* 29 C.F.R. § 778.318. Such nonproductive working hours must be counted and paid for.

99.     A "workday" may "be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line." 29 C.F.R. § 785.9.

100.    Work that is not requested but permitted by the employer for the employer's benefit is compensable work time. 29 C.F.R. § 785.11. For example, an employee may voluntarily continue to work at the end of the shift and the employer must compensate the employee.

101.    Similarly, work performed away the job site, or at home, is compensable work if the employer knows or has reason to believe that the work is being performed. 29 C.F.R. § 785.12.

102.    It is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. 29 C.F.R. § 785.13.

Management cannot sit back and accept the benefits of employees' labor without compensating for them. *Id*. The mere promulgation of a rule against such work is not enough. *Id*.

103.   Work that an employee is required to perform while traveling must be counted as hours worked and compensated. 29 C.F.R. § 785.41.

104.   "Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

105.   The time devoted to "principal" activities must be taken into account in computing hours worked. 29 C.F.R. § 790.8(a). The use by Congress of the plural form "activities" in the statute makes it clear that in order for an activity to be a "principal" activity, it need not be predominant in some way over all other activities engaged in by the employee in performing his job. The legislative history indicates that Congress intended the words "principal activities" to be construed liberally to include any work of consequence performed for an employer, no matter when the work is performed.

106.   Plaintiffs and other Nationwide Class members were not paid at their regular rates for all hours worked in violation of 29 U.S.C. §§ 202, 203, 206, 207

and 218 and the Department of Labor regulations set forth above in at least *seven* ways.

107.   *First*, employees begin their workday about an hour before the start of their shifts when they arrive at Company property and wait for Company buses that transport them to job sites. Employees generally wait at least 10-15 minutes and sometimes as long as 30 minutes. During this time, Snow Sport Instructors perform work that is integral and indispensable to their principal job functions, such as checking Company schedules and communications that direct them to particular worksites and communicating with customers and reviewing information to be used during their shifts. This is "Compensable Work." 29 C.F.R. § 778.223 (Under the FLSA "an employee must be compensated for all hours worked" including all "time during which an employee is suffered or permitted to work"); 29 C.F.R. § 785.13 (Management "cannot sit back and accept the benefits without compensating for them"); 29 C.F.R. § 785.41 (Any "work which an employee is required to perform while traveling must, of course, be counted as hours worked"); 29 C.F.R. § 790.6 ("Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked"); 29 C.F.R. § 790.8(a) (the "statute makes it clear that in order for an activity to be a 'principal' activity, it need not be

predominant . . . Congress intended the words 'principal activities' to be construed liberally to include any work of consequence performed for an employer, no matter when the work is performed.")

108.   Given the level of productivity and efficiency demanded of Snow Sport Instructors during their shifts, the employer required and expected that this work was being performed prior to the shifts. Failure to compensate the Snow Sport Instructors for this pre-shift work violates the FLSA. 29 C.F.R. § 785.12 ("The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked.") Once the employees start work, they are required to be paid under the "continuous workday rule" until they stop. 29 C.F.R. § 790.6(b). A "workday" may "thus be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line." 29 CFR § 785.9(a).

109.   When a bus arrives, dozens of employees line up to wait their turn to board, consuming another 5-10 minutes. On the bus ride, which lasts approximately fifteen minutes, the Snow Sport Instructors continue to perform Compensable Work. 29 C.F.R. §§ 778.223, 785.9(a), 785.12, 785.13, 785.41, 790.6, 790.8(a). Snow Sport Instructors are not paid for travel time on Company buses despite the fact that they

are working and under the Company's control, in violation of the FLSA. 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked").

110.   **Second**, after employees disembark from buses, they walk to locker rooms where they put on ("don") uniforms and equipment that are integral and indispensable to their work. It takes approximately 5 minutes to walk to their locker room, which is compensable under the continuous workday rule, 29 C.F.R. § 790.6(b), for the employees who performed work that is integral and indispensable to their principal job functions earlier in the workday. It takes Snow Sport Instructors at least 15 minutes to put on uniforms and equipment. Depending on the number of employees in the locker room, it takes employees that do not have to don ski or snowboard boots approximately 10 minutes to enter the locker room, change into their uniforms and exit. At the end of shifts, this routine is reversed as employees remove ("doff") uniforms and equipment in approximately the same time increments. Employees are not compensated for "donning" and "doffing" time in violation of the FLSA. *See*, *e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1044-45, 1047 (2016); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 912 (9th Cir. 2004).

46

111.   ***Third***, after putting on their uniforms and equipment, it takes Snow Sport Instructors 5 minutes to walk to a pre-shift meeting which lasts 10-15 minutes. This time is compensable under the continuous workday rule. 29 C.F.R. § 790.6(b). The meeting is also Compensable Work. 29 C.F.R. §§ 778.223, 785.9(a), 785.13, 790.6, 790.8(a).

112.   After the meeting, the Snow Sport Instructors start their shifts which are scheduled at 6.5 to 7.25 hours in length but sometimes longer. Regardless of the actual length of the shift, Snow Sport Instructors are only compensated for the scheduled shift time.

113.   ***Fourth***, after their shifts, the Snow Sport Instructors complete paperwork memorializing events that transpired during the shift, meet with supervisors or managers, communicate with customers, coordinate with other employees, review schedules or attend to other work-related matters. These activities consume 15-30 minutes. Since the Snow Sport Instructors are required to perform this post-shift work and the Company knows that this work is being performed, the Company violates the FLSA by not paying employees for this time. *See* 29 C.F.R. § 785.11. For example, an employee may voluntarily continue to work at the end of the shift or "may . . . desire to finish an assigned task" or correct errors, "prepare time reports or other records." *Id.* Since the employer knows or has reason to believe

47

that the employee is continuing to work, then the time is compensable. *See* 29 C.F.R. § 785.13 ("In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough."). In any event, even if this post-shift work does not satisfy the requirements of 29 C.F.R. § 785.11, this time is compensable under the continuous workday rule. 29 C.F.R. § 790.6(b).

114.   ***Fifth***, after completing their post-shift work, the Snow Sport Instructors walk to locker rooms, doff their uniforms and gear, and store their equipment. The doffing activities require 15 minutes. Employees are not paid for these integral and indispensable work activities, as required.

115.   ***Sixth***, after changing, employees walk to the bus stop, wait for the employee bus, and then return to the parking lot. The trip from the locker room to the parking lot takes approximately 30 minutes if the bus is not delayed. During this time, Snow Sport Instructors communicate with customers, coordinate with other employees, review schedules or attend to other work-related tasks. Failure to pay Snow Sport Instructors for this time violates the FLSA. 29 C.F.R. §§ 785.11, 785.12, 785.13, 785.41.

116.   In sum, on days when Snow Sport Instructors are compensated for a 6.5-hour shift, they actually work in excess of 9 hours. When Snow Sport Instructors are compensated for a 7.25-hour shift, they actually work in excess of 10 hours. The additional 2.5+ hours must be compensated.

117.   **_Finally,_** the Company fails to pay Snow Sport Instructors for uncompensated time spent in periodic work-related training that is integral and indispensable to the employee's job and occurs on Company property at the Company's direction. Such time is compensable under the FLSA. 29 C.F.R. §§ 785.27, 785.29. The Company maintains records of the number of training hours (but not the travel and donning and doffing time) so the number of training hours and the amount due to each employee can be calculated during discovery.

118.   The Fair Labor Standards Act was designed to put a floor under wages and a ceiling over hours. The limitation of hours in turn had two purposes — the spreading of work and extra compensation for overtime, no matter how high the regular wage may be. Where, as here, an employer does not pay employees for all hours worked, hours will **not** be reduced, and financial pressure will **not** be applied to spread employment to avoid the extra wage. Therefore, Defendant violated the FLSA by not paying employees for all hours worked in non-overtime weeks at their regular rate of pay.

49

119.   Defendant's failure to pay employees at their regular rate of pay per hour set forth in their employment agreements for all hours worked in non-overtime weeks is a labor condition detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and constitutes an unfair method of competition in commerce which has caused a labor dispute within the meaning of 29 U.S.C. § 202 of the FLSA.

120.   Pursuant to 29 U.S.C. § 202, all employers must be held to the same standards and must pay employees for all hours worked as defined by 29 U.S.C. § 203(g) at the per hour rate set forth in their employee agreements. Vail Resorts' practice of publicly announcing that the Company pays employees at a rate per hour in excess of the minimum wage while not paying employees for all hours worked at the rate set forth in their employment agreements constitutes an unfair method of competition within the meaning of 29 U.S.C. § 202.

121.   Under Department of Labor regulations, 29 C.F.R. §§ 778.108, 778.223, 778.315-318, in a non-overtime week, an employer must pay an employee for all hours worked at their regular rate of pay as set forth in their employment agreements. These regulations are based on the Supreme Court's rulings in *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 and *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419. *See also* 29 C.F.R. § 778.108.

122.   Under Department of Labor regulations, 29 C.F.R. §§ 785.7, 785.9, 785.11-13, 785.41 and 790.6, an employer must pay an employee for all work, even if the work occurs at home, while traveling, or before or after the end of a shift. Management cannot accept the benefits of this work without compensating employees. These regulations are based on the Supreme Court's rulings in *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U. S. 590 (1944); *Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Skidmore v. Swift*, 323 U.S. 134 (1944); and *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). *See also* 29 C.F.R. § 785.7.

123.   Pursuant to 29 U.S.C. §§ 206, 207 and 29 C.F.R. §§ 778.5 and 78.108, the "regular rate at which he is employed" must be construed to mean the regular rate at which he is lawfully employed and the "regular rate" of pay must be drawn from what happens under the employment contract in the normal, non-overtime workweek. Since employees can only be lawfully employed at their regular hourly rate specified in their employment contracts for their normal, non-overtime workweek, Defendant's failure to pay employees for all hours worked in non-overtime weeks at the regular rate of pay specified in their employment agreements violates 29 U.S.C. §§ 202, 203(g), 206 and 207.

124.   Pursuant to 29 U.S.C. §§ 206 and 218, an employer must pay an employee not less than the federal minimum wage or not less than a state law establishing a minimum wage higher than the federal minimum wage, and once an employer agrees to pay a rate per hour higher than the minimum wage, that wage must be paid for all hours worked as defined by 29 U.S.C. § 203(g) because no provision of the FLSA shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage.

125.   Pursuant to 29 U.S.C. §§ 206, 218 and 29 C.F.R. § 778.5, a state minimum wage that is higher than the minimum wage set forth in § 206 becomes the minimum hourly rate mandated by the FLSA and failure to pay an employee the minimum wage mandated by the state in which the employee works violates the FLSA.

126.   Therefore, Defendant violated 29 U.S.C. §§ 203(g), 206 and 218 by effectively reducing the per hour wage set forth in the Company's employment agreements by not paying for all hours worked.

127.   Pursuant to 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. §§ 778.5, 778.108, 778.223 and 778.315, an employer must pay employees at their regular rate for all hours worked in a non-overtime week.

128.   Pursuant to 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. §§ 778.223, 778.315-318, 785.7, 785.9, 785.11-13, 785.41, 790.6, an employer must pay for all hours worked, including but not limited to, work that occurs before and after scheduled shifts, at home or away from the jobsite, and work while traveling.

129.   Therefore, Defendant willfully violated 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. §§ 778.5, 778.108, 778.223, 778.315-318, 785.7, 785.9, 785.11-13, 785.41, and 790.6 by failing to pay employees at their regular rate in non-overtime weeks for all hours worked including work that occurred before and after scheduled shifts, at home or away from the jobsite, and while traveling.

130.   Pursuant to 29 C.F.R. § 531.35, "wages" cannot be considered to have been paid by the employer unless they are paid "free and clear." The wage requirements of the FLSA are not satisfied where, as here, employees "kick-back" directly or indirectly to the employer part of their wages delivered to the employee. Specifically, Vail Resorts required employees to "provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work."

131.   Since Vail Resorts does not reimburse employees for "tools of the trade which will be used in or are specifically required for the performance of the employer's particular work," pursuant to 29 C.F.R. § 531.35, there was a violation

of the FLSA "in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."

132.   Therefore, Defendant willfully violated 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. § 531.35 by not paying wages "free and clear" because employees "kicked-back" part of their wages when Vail Resorts required employees to "provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work" and Vail Resorts' practice and refusal to reimburse employees for their tools of the trade cut "into the minimum or overtime wages required to be paid" under the FLSA.

133.   Defendant's practice of not paying for (i) all hours worked, (ii) training time, and (iii) employee expenses for tools of the trade lowered Plaintiffs' wage per hour below the federal and/or applicable state minimum wage in violation of 29 U.S.C. §§ 203(g), 206 and 218.

134.   Defendant violated 29 U.S.C. § 207 by not paying employees for all hours worked because extra compensation for the excess hours of overtime work pursuant to 29 U.S.C. § 207 cannot be said to have been paid to an employee unless all the straight time compensation due for the non-overtime hours under his contract

or under any applicable statute has been paid. 29 C.F.R. §§ 778.108, 778.223, 778.315-318.

135.   Vail Resorts has not paid Plaintiffs and the FLSA Collective for all their time worked under the FLSA because it has not paid Snow Sport Instructors for over 2.5 hours of daily off-the-clock work described above.

136.   The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective was an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

137.   By its actions alleged above, Defendant willfully, knowingly, and/or recklessly violated the FLSA provisions and corresponding controlling federal regulations.

138.   Defendant willfully, knowingly, and/or recklessly engaged in a widespread pattern and practice of violating the controlling provisions of the FLSA, as set out herein, by failing to properly pay employees for all hours worked, including but not limited to travel time, donning and doffing time, meeting time, preparation of paperwork time, check-out time and other work time.

139.   As a result of Defendant's FLSA violations, Plaintiffs and similarly situated employees have suffered damages by failing to receive wages for all hours worked in accordance with the FLSA.

140.   Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiffs and those similarly situated employees.

141.   As a result of Defendant's unlawful acts, Plaintiffs and others similarly situated have been deprived of their wages for all hours worked in an amount to be determined at trial, and are entitled to the recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees, costs, and other compensation and legal remedies, and additionally, such declaratory and injunctive or other equitable relief, as the law allows.

## <u>COUNT II:</u>

**FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FLSA**
29 U.S.C. §§ 202, 203(g), 207, 216, 218; DOL Regulations, 29 C.F.R. §§ 778.5, 778.100, 778.103, 778.107-09, 778.223, 778.315-16, 778.318, 785.9, 785.11-13, 785.41, 790.6

142.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

143.   At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

144.   Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

145.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

146.   29 U.S.C. § 207. Maximum hours, provides:

> (a) (1) [N]o employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

147.   The regular rate of pay cannot be lower than the minimum provided by state or local law because the words "regular rate at which he is employed" as used in 29 U.S.C. § 207 must be construed to mean the regular rate at which he is lawfully employed. 29 C.F.R. § 778.5.

148.   29 U.S.C. § 207 "prescribes the maximum weekly hours of work permitted for the employment of such employees in any workweek without extra compensation for overtime, and a general overtime rate of pay not less than one and one-half times the employee's regular rate which the employee must receive for all hours worked in any workweek in excess of the applicable maximum hours." 29 C.F.R. § 778.100.

149.   To determine the maximum weekly hours of work, Vail Resorts "must total all the hours worked by the employee for him in that workweek" and "pay

overtime compensation for each hour worked in excess of the maximum hours applicable under" 29 U.S.C. § 207. *See also* 29 C.F.R. § 778.103.

150.   The general overtime pay standard set forth in 29 U.S.C. § 207 "requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed. . . . If the employee's regular rate of pay is higher than the statutory minimum, his overtime compensation must be computed at a rate not less than one and one-half times such higher rate." 29 C.F.R. § 778.107.

151.   The "'regular rate' of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract." 29 C.F.R. § 778.108. The "'regular rate' under the Act is a rate per hour . . . . [and] is determined by dividing [an employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

152.   The FLSA further requires "an employee must be compensated for all hours worked." 29 C.F.R. § 778.223. In "determining the number of hours for which overtime compensation is due, all hours worked . . . by an employee for an employer in a particular workweek must be counted." 29 C.F.R. § 778.315.

153.   Parties cannot lawfully agree that the rate for that work shall be lower merely because the work is performed during a week in which statutory overtime is worked. 29 C.F.R. § 778.316. Since a lower rate cannot lawfully be set for overtime hours, the parties cannot lawfully agree that the working time will not be paid for at all. *Id*. An announcement by the employer that no overtime work will be permitted, or that overtime work will not be compensated unless authorized in advance, will not impair the employee's right to compensation for work which he is actually suffered or permitted to perform. *Id*.

154.   Some "agreements provide for payment only for the hours spent in productive work; the work hours spent in waiting time, time spent in travel on the employer's behalf or similar nonproductive time are not made compensable and in some cases are neither counted nor compensated. Payment pursuant to such an agreement will not comply with the Act; such nonproductive working hours must be counted and paid for." 29 C.F.R. § 778.318.

155.   A "workday" may "be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line." 29 C.F.R. § 785.9.

156.   Work not requested but suffered or permitted by an employer is work time. 29 C.F.R. § 785.11. For example, an employee may voluntarily continue to work at the end of the shift. *Id*.

157.   Work performed away from a job site, or even at home, is compensable work if the employer knows or has reason to believe that the work is being performed. 29 C.F.R. § 785.12.

158.   Management is required to exercise control over the time worked by employees and ensure that work is not performed if the employer does not want it performed and thereby incur the obligation to pay the employee. 29 C.F.R. § 785.13. The employer cannot sit back and accept the benefits of the employee's labor without compensating for it. *Id*. The mere promulgation of a rule against such work is not enough to avoid the obligation to compensate the employee. *Id*.

159.   "Any work which an employee is required to perform while traveling must be counted as hours worked." 29 C.F.R. § 785.41.

160.   Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked. 29 C.F.R. § 790.6.

161.   Vail Resorts' failure to pay Plaintiffs and others similarly situated at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks is a labor condition detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-

being of workers and constitutes an unfair method of competition in commerce which has caused a labor dispute within the meaning of 29 U.S.C. § 202 of the FLSA.

162.   All employers must be held to the same standards and must pay employees for all hours worked as defined by 29 U.S.C. § 203(g) at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks. *See* 29 U.S.C. § 202. Vail Resorts' practice of publicly announcing that the Company pays employees at a rate per hour in excess of the minimum wage while not paying employees for all hours worked at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks constitutes an unfair method of competition within the meaning of 29 U.S.C. § 202.

163.   The Fair Labor Standards Act was designed to put a floor under wages and a ceiling over hours. The limitation of hours in turn had two purposes — the spreading of work and extra compensation for overtime, no matter how high the regular wage may be. Where, as here, an employer does not pay employees for all hours worked, hours will not be reduced, and financial pressure will not be applied to spread employment to avoid the extra wage. Therefore, Defendant violated the FLSA by not paying employees at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks.

164.   The "regular rate at which [an employee] is employed" must be construed to mean the regular rate at which [the employee] is lawfully employed and the "regular rate" of pay must be drawn from what happens under the employment contract in the normal, non-overtime workweek. *See* 29 U.S.C. §§ 206, 207 and 29 C.F.R. §§ 778.5, 778.107, 778.108, and 778.109

165.   Employers must pay employees a general overtime rate of pay not less than one and one-half times the employee's regular rate for all hours worked in any workweek in excess of 40 hours. *See* 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. §§ 778.100, 778.103, 778.107-09.

166.   An employer must pay employees at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks, including but not limited to, work that occurs before and after scheduled shifts, at home or away from the jobsite, and work while traveling. *See* 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. §§ 778.100, 778.103, 778.109, 778.223, 778.315-318, 785.9, 785.11-13, 785.41, 790.6.

167.   At all times relevant to this action, Vail Resorts required Snow Sport Instructors to perform no less than 150 minutes of off-the-clock work when they were paid for 6.5 hours. Nevertheless, Defendant failed to pay Plaintiffs and the

FLSA Collective the federally mandated overtime compensation for the off-the-clock work.

168.    The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective was an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

169.    Vail Resort's Snow Sport Instructors typically work 45 hours per week but are compensated for only 32.5 hours. In busy weeks, Snow Sport Instructors often work seven days and work in excess of 63 hours but are paid for 45.5 hours.

170.    For example, when Snow Sport Instructors taught private lessons for six days in a workweek, they were only paid for 39 hours when they actually worked 54 or more hours. When Snow Sport Instructors taught children's group lessons for six days in a workweek, they were only paid for 43.50 hours when they actually worked 60 or more hours.

171.    In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of one and one-half times each employee's regular hourly wage, including nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

172.    Therefore, Vail Resorts willfully violated 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. §§ 778.5, 778.100, 778.103, 778.107, 778.108, 778.109, 778.223, 778.315-318, 785.7, 785.9, 785.11-13, 785.41, and 790.6 by failing to pay employees at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks including work that occurred before and after scheduled shifts, at home or away from the jobsite, and while traveling.

173.    Defendant willfully and intentionally engaged in a widespread pattern and practice of violating the controlling provisions of the FLSA, as set out herein, by failing to properly pay overtime compensation to the Plaintiffs and the similarly situated employees for all hours worked, in accordance with §§ 203, 206 and 207, *inter alia*, of the FLSA.

174.    As a result of Defendant's FLSA violations, Plaintiffs and others similarly situated have suffered damages by failing to receive wages for all overtime hours worked in accordance with §§ 203, 206 and 207, *inter alia*, of the FLSA.

175.    Defendant has not made a good faith effort to comply with the FLSA with respect to its compensation of the Plaintiffs and those similarly situated employees.

176.    Defendant's FLSA violations were knowing and willful. Defendant knew or could have determined how long it takes Plaintiffs and the FLSA Collective

to perform their off-the-clock work. Further, Defendant could easily account for and properly compensate Plaintiffs and the FLSA Collective for these work activities, but deliberately chose not to.

177.   The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

178.   As a result of Defendant's unlawful acts, Plaintiffs and others similarly situated have been deprived of their wages for all hours worked and overtime compensation in an amount to be determined at trial, and are entitled to the recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees, costs, and other compensation and legal remedies, and additionally, such declaratory and injunctive or other equitable relief, as the law allows.

## COUNT III:

### FAILURE TO REIMBURSE FOR EXPENSES
### IN VIOLATION OF THE FLSA
### 29 U.S.C. §§ 202, 206, 218; DOL Regulation, 29 C.F.R. § 531.35

179.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

180.   Pursuant to 29 C.F.R. § 531.35, "wages" cannot be considered to have been paid by the employer unless they are paid "free and clear." The wage requirements of the FLSA are not satisfied where, as here, employees "kick-back" directly or indirectly to the employer part of their wages delivered to the employee. Specifically, Vail Resorts requires employees to "provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work."

181.   The Company requires employees to have new or up-to-date equipment in excellent condition including skis or snowboards with bindings, boots, gloves, poles, goggles and base layers. Instructors typically use 2-3 different types of skis depending on the conditions. The Company does not reimburse employees for the cost of this required equipment or pay for maintenance and replacement costs for lost or damaged equipment.

182.   At all relevant times, Vail Resorts had a policy and practice of refusing to reimburse Plaintiffs and the FLSA Collective for expenses incurred in relation to tools of the trade used by Plaintiffs and the FLSA Collective in order to perform their job duties. Such tools of the trade include but are not limited to skis, snowboards, boots, poles, goggles, glasses, gloves, and base layers.

183.   Vail Resorts' failure to reimburse employees for "tools of the trade which will be used in or are specifically required for the performance of the employer's particular work," as required pursuant to 29 C.F.R. § 531.35, violates the FLSA "in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."

184.   Therefore, Defendant willfully violated 29 U.S.C. §§ 202, 203, 206, 207 and 29 C.F.R. § 531.35 by not paying wages "free and clear" because employees "kicked-back" part of their wages when Vail Resorts required employees to "provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work" and Vail Resorts' practice and refusal to reimburse employees for their tools of the trade cut "into the minimum or overtime wages required to be paid" under the FLSA.

185.   Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to reimburse Plaintiffs for expenses incurred

in relation to tools of the trade used by Plaintiffs when Defendant knew or should have known such was due.

186.   As a result of Defendant's unlawful acts, Plaintiffs and others similarly situated have been deprived of reimbursement for expenses incurred to purchase, replace and maintain and repair their tools of the trade in an amount to be determined at trial, and are entitled to the recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees, costs, and other compensation and legal remedies, and additionally, such declaratory and injunctive or other equitable relief, as the law allows.

## <u>COUNT IV:</u>

**FAILURE TO PAY FOR TRAINING TIME IN VIOLATION OF THE FLSA**
29 U.S.C. §§ 202, 206, 207, 218; DOL Regulations, 29 C.F.R. §§ 785.27-29

187.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

188.   Vail Resorts fails to pay Snow Sport Instructors for time spent in periodic work-related training that is integral and indispensable to the employee's job and occurs on Company property at the Company's direction. Such time is compensable under the FLSA. 29 C.F.R. §§ 785.27, 785.29. The Company maintains records of the number of training hours (but not the travel and donning

and doffing time) so the number of training hours and the amount due to each employee can be calculated from Vail Resorts' internal records during discovery.

189.   Attendance at lectures, meetings, training programs and similar activities must be counted as working time because: (a) Attendance occurs during the employee's regular working hours; (b) Attendance is not "voluntary" as that term is defined by 29 C.F.R. § 785.28; and (c) The course, lecture, or meeting is directly related to the employee's job as defined by 29 C.F.R. § 785.29.

190.   The training is not voluntary, in fact, because employees understand or are led to believe that present working conditions or the continuance of employment depend upon attending training or would be adversely affected by failure to devote a significant number of hours to training.

191.   Therefore, Vail Resorts is required to pay employees for training time at their regular rate per hour in non-overtime weeks and at time and a half their regular rate during overtime weeks, and failure to do so constitutes a willful violation of 29 U.S.C. §§ 202, 206, 207, 218.

192.   As a result of Defendant's unlawful acts, Plaintiffs and others similarly situated have been and are deprived of their wages for training time in an amount to be determined at trial, and are entitled to the recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees, costs, and other

69

compensation and legal remedies, and additionally, such declaratory and injunctive or other equitable relief, as the law allows.

## COUNT V:

### VIOLATIONS OF COLORADO WAGE AND HOUR LAW
Colo. Wage Act, C.R.S. § 8-4-101, *et seq*.; Colo. Minimum Wage Act, C.R.S. § 8-6-101, *et seq*.; Colo. Min. Wage Order Numbers 33-35, 7 CCR 1103-1; Colo. Overtime and Min. Pay Standards Order (COMPS Order) 36, 7 CCR 1103-1

193.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

194.   At all relevant times, the representative Plaintiffs and similarly situated Vail Resorts employees are entitled to the rights, benefits and protections provided under Colorado Wage and Hour Law because they were employees performing labor or services for the benefit of Vail Resorts. Colo. Rev. Stat. § 8-4-101(4), 7 CCR 1103-1.

195.   Vail Resorts is subject to the wage and overtime payment requirements of the Colorado Wage and Hour Law because it is a corporation that employs persons in Colorado. Colo. Rev. Stat. § 8-4-101(5), 7 CCR 1103-1.

196.   The Colorado Minimum Wage Act, C.R.S. § 8-6-101, "demands that workers be protected from conditions of labor that have a pernicious effect on their health and morals, and . . . inadequate wages . . . exert such pernicious effect."

197.   The Colorado Minimum Wage Act, C.R.S. § 8-6-104, makes it "unlawful to employ workers in any occupation within this state under conditions of labor detrimental to their health or morals."

198.   The Defendant's failure to pay Plaintiffs and others similarly situated at their regular rate of pay per hour set forth in their employment agreements for all hours worked in non-overtime weeks and failure to pay employees at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks constitute conditions of labor that have a pernicious effect on the health and morals of employees in violation of C.R.S. § 8-6-101 and C.R.S. § 8-6-104.

199.   As the Colorado Department of Labor and Employment ("CDOLE") has explained, under Colorado law non-payment of any amount of wages is actionable. By statute, employers must pay "[a]ll wages or compensation" (C.R.S. § 8-4-103(1)(a)), and authorizes civil actions "to recover any amount of wages or compensation (C.R.S.§ 8-4-110(1)) and Division complaints "for any violation" (C.R.S.§ 8-4-111(1)(a)). (Emphases added by the CDOLE.) COMPS Order 36, Statement of Basis, Purpose, Specific Statutory Authority, and Findings, 7 CCR 1103-1 (2020).

200.   Colorado Minimum Wage Order Nos. 33-35, 7 CCR 1103-1 requires that "all adult employees and emancipated minors" be paid a "Minimum Wage" of "not less than $9.30 effective January 1, 2017, less any applicable lawful credits for all hours worked," not less than $10.20 effective January 1, 2018, not less than $11.10 effective January 1, 2019, and not less than $12.00 effective January 1, 2020 (Amended Order 35) "for all hours worked."

201.   Colorado Minimum Wage Order Nos. 33-35, 7 CCR 1103-1 defined "Time Worked" as the "time during which an employee is subject to the control of an employer, including all the time the employee is suffered or permitted to work whether or not required to do so. Requiring or permitting employees to remain at the place of employment awaiting a decision on job assignment or when to begin work or to perform clean up or other duties 'off the clock' shall be considered time worked and said time must be compensated."

202.   Colorado Minimum Wage Order Nos. 33-35 defined "Travel Time" as "all travel time spent at the control or direction of an employer, excluding normal home to work travel," and mandated that Travel Time "shall be considered as time worked."

203.   Colorado Minimum Wage Order Nos. 33-35 specified that "employees shall be paid time and one-half of the regular rate of pay for any work in excess of:

72

(1) forty (40) hours per workweek; (2) twelve (12) hours per workday; or (3) twelve (12) consecutive hours."

204.   Colorado Minimum Wage Order Nos. 33-35, 7 CCR 1103-1 defined the "Regular Rate of Pay" as the "regular rate of pay actually paid to employees for a standard, non-overtime workweek."

205.   In 2019, Colorado Minimum Wage Order No. 35 was amended. The Colorado Department of Labor and Employment ("CDOLE") explained since "the 2000s, the Division has updated each year's minimum wage — yet the Order's substance has gone unchanged for two decades. Much of the text dates to the 1970s, despite all the economic, social, and technological change since." COMPS Order 36, Statement of Basis, Purpose, Specific Statutory Authority, and Findings, 7 CCR 1103-1 (2020). Given the many reasons to modernize the Order, the Division spent most of 2019 updating it. "To redress confusion generated by a wide range of wage rules being called simply a 'Minimum Wage' Order, the Order's new name is the 'Colorado Overtime & Minimum Pay Standards Order,' or the 'COMPS Order.'" COMPS Order 36, Statement of Basis, Purpose, Specific Statutory Authority, and Findings, 7 CCR 1103-1 (2020).

206.   CDOLE explained that given the many archaic portions of prior orders, COMPS Order 36 adopts several changes that "aim to substantially improve the

clarity, efficiency, and fairness of Colorado's wage rules. Most rules in COMPS Order 36 are substantively unchanged, but many still have revisions for clarity, a mix of increased detail and edits to improve the Order's problems of writing (e.g., confusing provisions) and organization (e.g., inconsistent numbering and lettering)." COMPS Order 36, Statement of Basis, Purpose, Specific Statutory Authority, and Findings, 7 CCR 1103-1 (2020).

207.   As set forth in Colorado Overtime and Minimum Pay Standards Order (COMPS Order) 36, 7 CCR 1103-1, adopted on January 22, 2020 with an effective date of March 16, 2020, the "Regular rate of pay means the hourly rate actually paid to employees for a standard, non-overtime workweek." Rule 1.8.

208.   "Time worked means time during which an employee is performing labor or services for the benefit of an employer, including all time s/he is suffered or permitted to work, whether or not required to do so." Rule 1.9. Moreover, "putting on or removing required work clothes or gear (but not a uniform worn outside work as well), receiving or sharing work-related information, security or safety screening, remaining at the place of employment awaiting a decision on job assignment or when to begin work, performing clean-up or other duties 'off the clock,' clocking or checking in or out, or waiting for any of the preceding[,] shall be considered time worked that must be compensated." Rule 1.9.1.

74

209.   "Travel time means time spent on travel for the benefit of an employer, excluding normal home to work travel, and shall be considered time worked." "Travel time is compensable if it is in employer-mandated transportation that materially prolongs commute time." Rule 1.9.2.

210.   If an employee is covered by multiple minimum or overtime wage requirements, the requirement providing a higher wage, or otherwise setting a higher standard, shall apply. Rule 3.2.

211.   Employees shall be paid time and one-half of the regular rate of pay for any work in excess of any of the following, except as provided below:

(A)   40 hours per workweek;

(B)   12 hours per workday; or

(C)   12 consecutive hours without regard to the start and end time of the workday.

Rule 4.1.1.

212.   "When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation . . . . Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay." Rule 5.2.4.

213.   COMPS Order 36 provides:

8.1 Recovery of Wages.

(A)   An employee receiving less than the full wages or other compensation owed is entitled to recover in a civil action the unpaid balance of the full amount owed, together with reasonable attorney fees and court costs, notwithstanding any agreement to work for a lesser wage, pursuant to C.R.S. §§ 8-4-121, 8-6-118.

(B)   No minimum claim size. There is no minimum size of a wage claim, and thus no claim too minimal ("*de minimis*") for recovery, because Article 4 requires paying "[a]ll wages or compensation" (C.R.S. § 8-4-103(1)(a)), and authorizes civil actions "to recover any amount of wages or compensation" (C.R.S. § 8-4-110(1)) and Division complaints "for any violation" (C.R.S. § 8-4-111(1)(a)).

214.   "Whenever employers are subjected to Colorado law as well as federal and/or local law, the law providing greater protection or setting the higher standard shall apply." Rule 8.6.

215.   The "provisions of the COMPS Order shall be liberally construed, with exceptions and exemptions accordingly narrowly construed." Rule 8.7.

216.   As set forth in detail above, Defendant, pursuant to its illegal policies and timekeeping practices, failed to pay Plaintiffs and the Colorado Class for all "Time Worked" and "Travel Time" at their "Regular Rate of Pay" as defined by Colorado Minimum Wage Order Numbers 33-35 and COMPS Order 36 Rules 1.8 and 1.9 including:

(a)   work performed at home or prior to boarding Company buses, such as checking Company schedules directing employees to particular

76

worksites, communicating with customers and reviewing information to be used during their shifts;

(b) work performed while traveling on Company buses, such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used during their shifts;

(c) all travel time spent at the control or direction of the employer or in employer-mandated transportation that materially prolonged commute time;

(d) time spent donning indispensable uniforms and equipment;

(e) pre-shift meeting time;

(f) break-time;

(g) shifts that took longer to complete than the scheduled time;

(h) post-shift work such as completing paperwork, meeting with supervisors and checking-out;

(i) time spent doffing indispensable uniforms and equipment;

(j) work performed while traveling on Company buses at the end of the day;

(k) all travel time spent at the control or direction of the employer; and

(l) work performed at home such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used on upcoming shifts.

217. For example, when Snow Sport Instructors taught private lessons for three days in a workweek, they were only paid for 19.5 hours when they actually worked 27 or more hours. When Snow Sport Instructors taught children's group

lessons for three days in a workweek, they were only paid for 21.75 hours when they actually worked 30 or more hours.

218.   Thus, Vail Resorts does not pay and has not paid Plaintiffs and the Colorado Class for all of their time worked under the Colorado Wage and Hour Law because it does not pay Snow Sport Instructors for over 2.5 hours of off-the-clock work per day and 10 minute duty-free paid rest breaks for each four hours of work Plaintiffs performed.

219.   Similarly, hourly employees such as ticket scanners and lift operators are not and were not paid for their travel time from Company parking lots to their locker rooms. They are required by Company policy to change into their uniforms and "swipe in" to their timekeeping system as they exited the locker room. At the end of the day, they are required by Company policy to "swipe out" of the timekeeping system in their locker room before changing. Therefore, hourly employees such as ticket scanners and lift operators are not paid for their travel time on Company buses or their donning and doffing time.

220.   Not paying Plaintiffs and the Colorado Class for all "Time Worked" and "Travel Time" at their "Regular Rate of Pay" are "conditions of labor that have a pernicious effect on their health and morals" in violation of C.R.S. § 8-6-101.

221.   Not paying Plaintiffs and the Colorado Class for all "Time Worked" and "Travel Time" at their "Regular Rate of Pay" is a condition of "labor detrimental to their health or morals" in violation of C.R.S. § 8-6-104.

222.   Therefore, by failing to properly compensate Plaintiffs and the Colorado Class for all time worked and/or travel time at their regular rate of pay, Defendant violated, and continues to violate, C.R.S. §§ 8-6-101 and 8-6-104 and Colorado Minimum Wage Order Numbers 33-35, and COMPS Order 36, 7 CCR 1103-1.

223.   Pursuant to Colo. Rev. Stat. § 8-6-111, all employers must be held to the same standards and must pay employees for all hours worked at their regular rate of pay as defined by Colorado Minimum Wage Order Numbers 33-35, and COMPS Order 36, 7 CCR 1103-1.

224.   Pursuant to Colo. Rev. Stat. § 8-6-111, Defendant's failure to pay Plaintiffs and others similarly situated for all hours worked including travel time, donning and doffing time and other pre-shift and post-shift work, violates the rules which were determined and prescribed by order of the director which "shall apply equally to all employers in such industry or occupation." Colo. Rev. Stat. § 8-6-111.

225.   Colorado Minimum Wage Order Numbers 33-35, and COMPS Order 36, 7 CCR 1103, require Defendant to pay overtime compensation at a rate of not

less than one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) hours in a workweek and twelve (12) hours per workday or twelve (12) consecutive hours without regard to the starting and ending time of the workday, whichever calculation results in the greater payment of wages. C.C.R. § 1103-1:4.

226.   Plaintiffs and the Colorado Class are entitled to pay at their regular rate of pay for work up to 40 hours of work per workweek, and at time-and-a-half for all work performed over 40 hours per workweek.

227.   Plaintiffs and members of the Colorado Class worked more than 40 hours for Defendant in one or more workweeks within the past three years, but due to Defendant's failure to pay them for all hours worked, as required under Colorado law, they did not receive overtime pay for all hours worked in violation of C.C.R. § 1103-1:4.

228.   For example, when Snow Sport Instructors taught private lessons for six days in a workweek, they were only paid for 39 hours when they actually worked 54 or more hours. When Snow Sport Instructors taught children's group lessons for six days in a workweek, they were only paid for 43.50 hours when they actually worked 60 or more hours.

229.   Vail Resorts had policies and practices that resulted in the Plaintiffs not being paid the agreed upon rate of pay and overtime for all time worked including work performed prior to and after their shifts and for state law-mandated rest breaks. These policies and practices were uniformly applied to Plaintiffs and the Colorado Class.

230.   By implementing and enforcing these policies and practices, Vail Resorts failed to pay employees for all hours worked at the agreed upon rate and overtime rate as required by the Colorado Wage Act, Colo. Rev. Stat. §§ 8-4-101, *et seq*. and 8-6-115, Colorado Minimum Wage Orders, 7 CCR 1103-1.14.

231.   These policies and practices also resulted in Vail Resorts failing to fully and accurately record the hours worked by the Plaintiffs and the Colorado Class in violation of Colo. Rev. Stat. § 8- 4-103(4).

232.   Because Vail Resorts does not even keep track of the actual number of hours worked by employees, Defendant's violations of Colorado's overtime provisions are willful. C.C.R. § 1103-1:15.

233.   Because Vail Resorts' actions were willful, Plaintiffs' claims for relief are subject to a three-year statute of limitations, pursuant to Colo. Rev. Stat. § 8-4-122.

234.   Colorado Minimum Wage Order Nos. 33-35 and COMPS Order 36 set forth a number of "Exemptions from Overtime" including a "Ski Industry Exemption" which provided that "employees of the ski industry performing duties directly related to ski area operations for downhill skiing or snowboarding, and those employees engaged in providing food and beverage services at on-mountain locations, are exempt from the forty (40) hour overtime requirement of this Wage Order."

235.   Plaintiffs and the Colorado Class do not come within the scope of the "Ski Industry Exemption" and/or the exemption is invalid for the following reasons:

a.     The "Ski Industry Exemption" is a condition of labor and hours of employment that is detrimental to the health or morals for workers in violation of C.R.S. §§ 8-6-101, 104, and 106.

b.     Pursuant to C.R.S. § 8-6-102 which provides that "[w]henever this article or any part thereof is interpreted by any court, it shall be liberally construed by such court," the "Ski Industry Exemption" must be construed in favor or employees. Since the duties of ski and snowboard instructors are **not** "directly related to ski area operations," the "Ski Industry Exemption" does not apply to Snow Sport Instructors. *See Brunson v. Colo. Cab Co.*, 433 P.3d 93, 97 (Colo. App. 2018) ("exemptions, such as the overtime pay exemption, should be construed narrowly.").

82

c.     The Colorado Department of Labor and Employment ("CDOLE") has explained the statutory and regulatory liberal construction rules in C.R.S. § 8-6-102 and COMPS Order 36 Rule 8.4(A) require resolving ambiguity in favor of the interpretation that allows, rather than precludes, claims. Moreover, the Colorado Minimum Wage Act explicitly mandates that it "shall be liberally construed." C.R.S. § 8-6-102. A core aspect of liberal construction is that if two plausible interpretations exist, the broader, more rights-protective interpretation must be chosen. *See Dillabaugh v. Ellerton*, 259 P.3d 550, 554 (Colo. App. 2011) ("if ambiguity exists, a broader interpretation comports with the requirement . . . [of] liberal interpretation"). COMPS Order 36, Statement of Basis, Purpose, Specific Statutory Authority, and Findings, 7 CCR 1103-1 (2020).

d.     Colorado Minimum Wage Order Nos. 33-35 provides that "If an employee is covered by both state and federal minimum wage laws, the law which provides a higher minimum wage or sets a higher standard shall apply." In other words, whenever "employers are subjected to both federal and Colorado law, the law providing greater protection or setting the higher standard shall apply." Therefore, in the alternative, since Colorado law specifies that the law providing greater protection to employees applies and there is no blanket "Ski Industry

Exemption" for overtime under federal law, the Colorado "Ski Industry Exemption" is invalid.

      e.    The CDOLE explained that COMPS 36 Rule 8.7 states that, in accord with the liberal construction rule in C.R.S. § 8-6-102, the provisions of the COMPS Order shall be liberally construed, and exceptions and exemptions within the Order narrowly construed. COMPS Order 36, Statement of Basis, Purpose, Specific Statutory Authority, and Findings, 7 CCR 1103-1 (2020). This Rule effectuates C.R.S. § 8-6-102 and judicial interpretations mandate similar construction of Colorado wage orders. *See, e.g.*, *Bowe v. SMC Elec. Prod., Inc.*, 945 F. Supp. 1482, 1484 (D. Colo. 1996) ("[T]he MWO is remedial in nature and its coverage should be liberally construed.").

236.   Vail Resorts failed to act in good faith or with reasonable grounds to believe that its acts or omissions were not a violation of the Colorado Wage and Hour Law, and as a result, Plaintiffs are entitled to penalties under the law.

237.   As a result of Vail Resorts' violation of the Colorado Wage and Hour Law, all Plaintiffs have suffered damages by failing to receive appropriate wages for all hours worked, in an amount to be determined at trial, and are entitled to the recovery of such amounts, liquidated damages, penalties, pre- and post-judgment interest, their reasonable attorneys' fees, costs, and such other compensation and

legal remedies, and additionally, such declaratory and injunctive or other equitable relief, as the law allows.

## COUNT VI:

### FAILURE TO PAY FOR ALL HOURS WORKED
### IN VIOLATION OF CALIFORNIA LAW
Cal. Labor Code § 223, IWC Wage Order No. 10-2001 §§ 2, 4, 5

238.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

239.   California Labor Code § 223 provides that "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

240.   Since the Company required employees to have new or up-to-date equipment in excellent condition including skis or snowboards with bindings, boots, gloves, poles, and goggles, and the Company did not reimburse employees for the cost of this required equipment or pay for maintenance and replacement costs for lost or damaged equipment, Defendant secretly paid a "lower wage while purporting to pay the wage designated by statute or by contract" in violation of Cal. Labor Code § 223.

241.   Industrial Welfare Commission ("IWC") Wage Order No. 10-2001 § 2 provides that "Employ" means to engage, suffer, or permit to work and "Hours worked" means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

242.   "Any employer who employs 26 or more employees shall pay to each employee wages not less than" $10.50 "per hour for all hours worked," effective January 1, 2017; $11.00 per hour for all hours worked, effective 2018; $12.00 effective 2019; and $13.00 per hour for all hours worked, effective 2020. IWC Wage Order No. 10-2001 § 4(A).

243.   "(A) Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay." IWC Wage Order No. 10-2001 § 5.

244.   As set forth in detail above, Defendant, pursuant to its illegal policies and timekeeping practices, fails and has failed to pay the California Class for all "Hours Worked" at the "wage designated by statute or by contract" as defined by California Labor Code Section 223 and IWC Wage Order No. 10-2001 including:

(a)     work performed at home or prior to boarding Company buses such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used during their shifts;

(b)     work performed while traveling on Company buses such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used during their shifts;

(c)     all travel time spent at the control or direction of the employer or in employer-mandated transportation that materially prolonged commute time;

(d)     the time spent donning indispensable uniforms and equipment;

(e)     pre-shift meeting time;

(f)     break-time;

(g)     shifts that took longer to complete than the scheduled time;

(h)     post-shift work such as completing paperwork, meeting with supervisors and checking-out;

(i)     time spent doffing indispensable uniforms and equipment;

(j)     work performed while traveling on Company buses at the end of the day;

(k)     all travel time spent at the control or direction of the employer;

(l)     work performed at home such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used on upcoming shifts; and

(m)     required reporting time pay that was due when employees reported for work but were not put to work or were furnished less than half said employee's usual or scheduled day's work.

245.   For example, when Snow Sport Instructors teach private lessons for three days in a workweek, they are paid for only 19.5 hours when they actually work 27 or more hours. When Snow Sport Instructors teach children's group lessons for three days in a workweek, they are paid for only 21.75 hours when they actually work 30 or more hours.

246.   Similarly, hourly employees such as ticket scanners and lift operators, are not paid for their travel time from Company parking lots to their locker rooms. They are required by Company policy to change into their uniforms and "swipe in" to their timekeeping system as they exit the locker room. At the end of the day, they are required by Company policy to "swipe out" of the timekeeping system in their locker room before changing. Therefore, hourly employees such as ticket scanners and lift operators are not paid for their travel time on Company buses or their donning and doffing time.

247.   Under California law, the Company is required to pay employees for the travel time on Company buses and their other pre- and post-shift activities. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 587, 590, 592, 94 Cal. Rptr. 2d 3, 995 P.2d 139 (2000) (When an employer requires its employees to meet at designated places to take its buses to work, these employees are "subject to the control of an employer," and their time spent waiting for the buses and traveling on

88

them is compensable as "hours worked"); *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1048 (2020), *reh'g denied* (May 13, 2020).

248.   Defendant also violates IWC Wage Order No. 10-2001 § 5 by failing to pay California Class members reporting time pay of two (2) hours to four (4) hours at the employee's regular rate of pay on days that the employee reports to work but is not put to work or is furnished less than half said employee's usual or scheduled day's work. For example, on slow days, the California Class would report to work for a full day only to be sent home and paid for 15 minutes when employees spend more than two hours traveling on Company buses and donning and doffing indispensable uniforms and equipment. Since the Company maintains records of the employees who were scheduled for work and sent home, and the number of minutes for which they were paid, specific damages can be calculated after discovery.

249.   Since Defendant fails to pay the California Class for all "Hours Worked," the rate at which the California Class is paid per hour is effectively reduced. Therefore, Defendant secretly pays a "lower wage while purporting to pay the wage designated by statute or by contract" in violation of California Labor Code Section 223.

250.   Since Defendant fails to pay the California Class for all "Hours Worked" at the wage per hour designated in their employment contracts, Defendant

secretly pays a "lower wage while purporting to pay the wage designated by statute or by contract" in violation of California Labor Code § 223.

251.   Thus, Vail Resorts does not pay and has not paid the California Class for all of their time worked under California law because it does not pay Snow Sport Instructors for over 2.5 hours of off-the-clock work and travel time per day, and hourly employees such as ticket scanners and lift operators are not paid for their travel time on Company buses or their donning and doffing time.

252.   By their conduct described above, Defendant violated, among other things, California Labor Code § 223 and IWC Wage Order No. 10-2001 §§ 2, 4, 5, and is liable to the California Class for the damages caused.

## COUNT VII:

### FAILURE TO PAY MINIMUM WAGES
### IN VIOLATION OF CALIFORNIA LAW
Cal. Lab. Code §§ 1182.12, 1194, 1194.2 & 1197

253.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

254.   California Labor Code § 1182.12 provides that on and after January 1, 2016, the minimum wage for all industries shall be not less than $10 per hour. For any employer who employs 26 or more employees, the minimum wage shall be

$10.50 starting on January 1, 2017, $11 starting on January 1, 2018, $12 starting on January 1, 2019 and $13 starting on January 1, 2020.

255.   An employee receiving less than the minimum wage may recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit. Cal. Lab. Code § 1194.

256.   An employee receiving less than the minimum wage may recover liquidated damages in an amount equal to the unpaid minimum wages and interest. Cal. Lab. Code § 1194.2.

257.   It is unlawful to pay an employee less than the minimum wage, as established by the Industrial Welfare Commission, for each hour worked. Cal. Lab. Code § 1197.

258.   Any employer who pays to any employee a wage less than the minimum fixed by state or local law, or by an order of the commission, shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties. Cal. Lab. Code § 1197(a).

259.   Members of the California Class are hourly employees who must be paid for all hours worked. Defendant only pays Snow Sport Instructors for a set amount of time such as 6.5 hours or 7.25 hours, depending on the assignment. Defendant does not pay Snow Sport Instructors for additional work time when under

Vail Resorts' control, including, but not limited to, travel time, donning and doffing time, filling out mandatory paperwork and attending meetings. Other hourly employees, such as ticket scanners and lift operators, are not paid for their travel time on Company buses or donning and doffing time.

260.   As a result of Defendant's illegal policies and timekeeping practices, as described herein, Defendant failed and continues to fail to pay Plaintiffs and others similarly situated compensation for each of hour of work outside of actual shift time, and thus failed and continues to fail to pay the minimum wage that these workers are entitled to, for each hour worked, under California Labor Code Section 1197 and Wage Order 10-2001.

261.   Since the Company requires employees to have new or up-to-date equipment in excellent condition including skis or snowboards with bindings, boots, gloves, poles, and goggles, and the Company does not reimburse employees for the cost of this required equipment or pay for maintenance and replacement costs for lost or damaged equipment, Defendant failed and continues to fail to pay the minimum wage that these workers are entitled to, for each hour worked, under California Labor Code Section 1197 and Wage Order 10-2001.

262.   Defendant's failure to pay the minimum wage for each hour worked, as described herein, was done willfully.

92

263.   Additionally, as a result of Defendant's failure to pay the California Class the minimum wages for all hours worked, these workers were not timely paid all earned wages as required by California Labor Code Section 204.

264.   Based on Defendant's conduct, as alleged herein, Defendant is liable to the California Class for unpaid minimum-wage compensation pursuant to California Labor Code Sections 1194 and 1197, and Wage Order 10-2001, liquidated damages in an amount equal to the unpaid wages owed to such employees, plus interest, pursuant to California Labor Code Sections 1194.2, and attorneys' fees and costs of suit, pursuant to California Labor Code Sections 1194 and 1194.2.

## COUNT VIII:

### FAILURE TO PAY OVERTIME WAGES
### IN VIOLATION OF CALIFORNIA LAW
Cal. Labor Code §§ 510, 1194, *et seq*., 1198; IWC Wage Order No. 10-2001

265.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

266.   "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than

twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee." Cal Lab. Code § 510(a).

267.    Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest, reasonable attorney's fees, and costs. Cal. Lab. Code § 1194(a).

268.    California Labor Code Section 1198 provides that the commission shall determine the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

269.    IWC Wage Order No. 10-2001 § 3 provides that employees shall not be employed more than 8 hours in any workday or more than 40 hours in any workweek unless the employees receive one and one-half times their regular rate of pay for all hours worked over 40 hours in the workweek. Employment beyond 8 hours in any workday or more than 6 days in any workweek is permissible only if the employee is compensated for such overtime at not less than: (a) One and one-half times the employee's regular rate of pay for all hours worked in excess of 8

94

hours up to and including 12 hours in any workday, and for the first 8 hours worked on the 7th consecutive day of work, and (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of 8 hours on the 7th consecutive day of work in a workweek. *Id.*

270.    IWC Wage Order No. 10-2001 § 3 (K) provides that no employer who operates a ski establishment shall be in violation of this order by instituting a regularly scheduled workweek of not more than 48 hours provided, however, that any employee shall be compensated at a rate of not less than one and one-half times the employee's regular rate of pay for any hours worked in excess of 10 hours work in a day or 48 hours in a workweek. "Ski establishment" in this context means an integrated, geographically limited recreational industry which is comprised of basic skiing facilities, together with all operations and facilities. *Id.*

271.    Overtime beginning only after 48 hours of work in IWC Wage Order No. 10-2001 § 3(K) does not apply because Vail Resorts did not institute a "regularly scheduled workweek of not more than 48 hours." Therefore, the California Class is entitled to overtime calculated at one and one-half times the regular rate of pay for all hours worked in excess of eight hours per day and/or forty hours per week and double time for all hours worked in excess of twelve hours in any workday and for all hours worked in excess of eight hours on the seventh consecutive day of work in

any workweek. Cal. Lab Code §§ 510, 1194, 1198; IWC Wage Order No. 10-2001 § 3.

272.   The California Class did not receive proper compensation for all hours worked in excess of eight (or twelve) hours per day or forty hours per week, or for working more than six days in a workweek. For example, when Snow Sports Instructors taught a private lesson, they are only paid for 6.5 hours when they actually worked 9 or more hours. When Snow Sports Instructors taught private lessons for six days in a workweek, they were only paid for 39 hours when they actually worked 54 or more hours. When Snow Sports Instructors taught a children's group lesson, they were only paid for 7.25 hours despite the fact they actually worked for 10 hours or more. When Snow Sports Instructors taught children's group lessons for six days in a workweek, they were only paid for 43.50 hours when they actually worked 60 or more hours.

273.   By the conduct described above, Defendant violated, among other things, California Labor Code Sections 510, 1194, 1198, and Wage Order No. 10-2001, Section 3, and therefore is liable to the California Class for the damages caused.

274.   As a result of Defendant's wrongful and unlawful acts alleged herein, the California Class has been deprived of overtime compensation in amounts to be

determined and is entitled to recover said amounts according to proof, interest thereon, injunctive relief, attorneys' fees and costs.

## COUNT IX:

### FAILURE TO PAY WAGES FOR MISSED MEAL PERIODS IN VIOLATION OF CALIFORNIA LAW
Cal. Lab. Code § 226.7, IWC Wage Order No. 10-2001

275.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

276.   Members of the California Class are not given an uninterrupted, off-duty meal break of at least 30 consecutive minutes in duration for all shifts in excess of 5 hours, as guaranteed to them as employees under California Labor Code Sections 226.7 and 512, and Wage Order 10-2001.

277.   An employer must pay an employee an additional hour of compensation for every shift that a mandated meal period is not provided. Wage Order 10-2001, § 11. California Labor Code Section 226.7, Subdivision (b), likewise requires an employer to pay an employee an additional hour of compensation for every shift that a meal period required by the California Wage Orders is not provided.

278.   At all relevant times herein, Vail Resorts failed and/or refused to pay the California Class with the additional compensation for missed meal periods required by California Labor Code Section 226.7 and Wage Order 10-2001.

279.   Based on Defendant's conduct, as alleged herein, Defendant is liable to the California Class for their unpaid premium wages for missed meal periods, pursuant to California Labor Code Section 226.7 and Wage Order 10-2001.

## COUNT X:

### FAILURE TO PAY WAGES FOR MISSED REST PERIODS IN VIOLATION OF CALIFORNIA LAW
Cal. Lab. Code § 226.7, IWC Wage Order No. 10-2001

280.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

281.   Members of the California Class are not provided an uninterrupted 10-minute rest break for every 4 hours worked or major fraction thereof, as guaranteed to them as employees under California Labor Code Section 226.7 and Wage Order 10-2001.

282.   An employer must pay an employee an additional hour of compensation for every shift in which said employee was not authorized or permitted to take a mandated rest period. Wage Order 10-2001, § 12. California Labor Code Section 226.7, Subdivision (b), likewise requires an employer to pay an employee an additional hour of compensation for every shift that a rest period mandated by the California Wage Orders is not provided.

283.   At all relevant times herein, Defendant failed and/or refused to provide the California Class with the additional compensation for missed rest periods required by California Labor Code Section 226.7 and Wage Order 10-2001.

284.   Based on Defendant's conduct, as alleged herein, Defendant is liable to the California Class for their unpaid premium wages for missed rest periods, pursuant to California Labor Code Section 226.7 and Wage Order 10-2001.

## COUNT XI:

### FAILURE TO REIMBURSE EXPENSES
### IN VIOLATION OF CALIFORNIA LAW
Cal. Lab. Code § 2802, IWC Wage Order No. 10-2001, § 9

285.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

286.   "When tools or equipment are required by the employer, or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft." IWC Wage Order No. 10-2001, § 9(B).

287.   Vail Resorts requires employees to have new or up-to-date equipment in excellent condition including skis or snowboards with bindings, boots, gloves,

poles, goggles and base layers. Snow Sports Instructors typically use 2-3 different types of skis depending on the conditions. Vail Resorts does not reimburse employees for the cost of this required equipment or pay for maintenance and replacement costs for lost or damaged equipment.

288.   The term "hand tools and equipment" refers to small tools and equipment that are carried in a worker's hands while the worker is performing his or her work, such as a screwdriver, pruning shears, etc. Neither skis, bindings, boots nor poles fall into that category. Thus, Vail Resorts' obligation to provide employees with these items extends to all employees, not just those earning less than twice the minimum wage.

289.   Pursuant to California Labor Code Section 2802, Defendant is required to indemnify the California Class for the expenses and losses incurred during the performance of their job duties. The purpose of this statute is to prevent employers from passing their operating expenses on to their employees. *See*, *e.g.*, *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 562 (2007).

290.   In addition to ski and snowboard equipment, the employees could not perform their job duties without a smartphone. Supervisors and managers required employees to constantly check their assignment schedules and be reachable by phone prior to, during and after their shifts. When employees are required by

employers to use their personal cell phones for work-related calls, "Labor Code section 2802 requires the employer to reimburse them." *Cochran v. Schwan's Home Service, Inc*., 228 Cal. App. 4th 1137, 1140, 1144 (2014). It is irrelevant whether the employee has an "unlimited minutes" plan, "the reimbursement owed is a reasonable percentage of their cell phone bills." *Id*.

291.   In violation of California Labor Code Section 2802, Defendant required California Class members to pay the following expenses, which Defendant did not reimburse: (i) the cost to purchase new or up-to-date equipment including skis or snowboards with bindings, boots, gloves, poles, goggles and base layers; (ii) maintenance and replacement costs for new or up-to-date equipment including skis or snowboards with bindings, boots, gloves, poles, goggles, and base layers; (iii) the cost of smartphones that Defendant required members of the California Class to use for their work; and (iv) the cost of cell phone plans.

292.   The California Class seeks to recover these expenses plus interest thereon, reasonable attorneys' fees, and costs, in an amount to be proven at trial.

## COUNT XII:

### SOLICITATION OF EMPLOYEES BY MISREPRESENTATION IN VIOLATION OF CALIFORNIA LAW
Cal. Lab. Code §§ 970, 972

293.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

294.   California Labor Code Section 970 provides that no person, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in California or from any place outside to any place within the state, or from any place within California to any place outside the state, for the purpose of working by means of knowingly false representations concerning the character or the compensation of such work or the length of time such work will last.

295.   California Labor Code Section 972 provides that any person who violates any provision of Section 970 is liable in a civil action, for double damages resulting from such misrepresentations.

296.   Defendant violates California Labor Code Section 970 by falsely representing that it pays employees per hour at rates in excess of the minimum wage. For example, on March 5, 2018, the Company issued a press release with a message from CEO Rob Katz stating "we are announcing a significant increase in the Vail Resorts minimum wage for our employees in North America" which "will impact

102

thousands of employees across our resorts and lines of business. Effective beginning of the 2018-2019 winter season, the Vail Resorts hourly minimum wage will increase" from "USD$11.00 to USD$12.25 in Colorado, California and Utah."

297.   Defendant also falsely represents in employment agreements issued at the start of each season that the employee receiving the agreement will be paid at a particular base rate per hour of work.

298.   Vail Resorts knew these representations were false because it knew that the Company did not pay employees for all of the hours that the employees actually worked.

299.   Vail Resorts also knew that the misrepresentation that the Company paid wages in excess of minimum wages per hour in press releases, news articles and employment agreements would persuade applicants and employees to move from one place to another in California or from any place outside to any place within California or from California to other states.

300.   Based on Defendant's conduct, as alleged herein, Defendant is liable for double damages resulting from such misrepresentations pursuant to California Labor Code Sections 970 and 972.

## COUNT XIII:

**UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA LAW**
Cal. Bus. & Prof. Code §§ 17200, *et seq*.

301.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

302.   California Business & Professions Code Section 17200 provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

303.   Vail Resorts' failure to pay employees at their regular rate of pay per hour set forth in their employment agreements for all hours worked in non-overtime weeks and failure to pay employees at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks constitutes an unfair method of competition within the meaning of California Business & Professions Code Section 17200, *et seq*.

304.   All employers must be held to the same standards and must pay employees for all hours worked at the per hour rate set forth in their employee agreements. Vail Resorts' practice of publicly claiming that the Company pays employees at a rate per hour in excess of the minimum wage while not paying employees for all hours worked at the rate set forth in their employment agreements in non-overtime weeks and failure to pay employees at one and one-half times their

104

regular rate of pay per hour for all hours worked over 40 hours in overtime weeks constitutes an unfair method of competition within the meaning of California Business & Professions Code Section 17200, *et seq.*

305.   California has an important public policy of protecting the welfare of employees, and thus provides for necessary meal and rest periods and that statutorily guaranteed wages be paid for all hours worked and for missed meal and rest periods. California also prohibits deductions to wages unless authorized by law. *See* Cal. Lab. Code §§ 221, 224, 226.7, 512 & 1197. Defendant's failure to pay for missed meal and rest periods, and the legally-mandated minimum wages for all hours worked, and for equipment and cell phone costs has been, and continues to be, unfair, unlawful, and harmful to the California Class and the general public. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure Section 1021.5.

306.   A violation of California Business & Professions Code Section 17200, *et seq.*, may be predicated on the violation of any state or federal law. Defendant's activities, as alleged herein, violate federal and California laws, and constitute unlawful business acts and practices in violation of California Business & Professions Code Section 17200, *et seq.*

307.   The California Class depends upon Defendant for their livelihood, and do not have the same bargaining advantage as their employer, Vail Resorts. Defendant's failure to pay for (i) all hours worked at the regular rate of pay, (ii) overtime, (iii) missed breaks and mealtimes, and (iv) training time is unlawful and unfair. Throughout the time relevant to this action, Defendant, as described herein, failed and/or refused to abide longstanding California minimum-employee protections.

308.   Through this unlawful scheme, Defendant is able to unjustly keep and appropriate significant amounts of money that otherwise should have been paid to California Class members as wages. Defendant is also able to illegally pass on business operational costs for equipment and cell phones thereby reducing wages due, in violation of California Labor Code Section 2802.

309.   Defendant's unfair business practices have reaped undue benefits and illegal profits, and unjustly enriched Defendant at the expense of the California Class and the public, which have been injured by Defendant's unlawful business acts and practices, as alleged herein, including but not necessarily limited to the loss of money or property.

310.   Pursuant to California Business & Professions Code Sections 17200, *et seq.*, the members of the California Class currently working for Defendant are

entitled to preliminary and permanent injunctive relief enjoining Defendant from continuing to commit its illegal acts, and for an accounting for and restitution of the monies unlawfully withheld and retained by Defendant. Members of the California Class are also entitled to disgorgement of illegally acquired profits by Defendant during the period starting four years prior to the date of the filing of this complaint through the present. Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to the common fund doctrine, California Code of Civil Procedure Section 1021.5 and other applicable laws.

## COUNT XIV:

### VIOLATIONS OF MINNESOTA LAW
Minn. Fair Lab. Stds. Act, Minn. Stat. §§ 177.21-.35; Minn. Payment of Wages
Act (PWA), Minn. Stat. §§ 181.01-.171; Minn. R. 5200.0120

311.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

312.   Members of the Minnesota Class are current and former employees of Defendant within the meaning of Minnesota Statutes, Sections 177.23, Subdivisions 7 and 181.101.

313.   Defendant at all relevant times was an employer within the meaning of Minnesota Statutes Section 181.171, Subdivision 4.

107

314.   Defendant was required by agreement to pay the Minnesota Class for all hours worked at a base hourly rate.

315.   The "purpose of the Minnesota Fair Labor Standards Act" is to "safeguard existing minimum wage and overtime compensation standards that maintain workers' health, efficiency, and general well-being against the unfair competition of wage and hour standards that do not." Minn. Stat. §177.22.

316.   Vail Resorts' failure to pay employees at their regular rate of pay per hour set forth in their employment agreements for all hours worked in non-overtime weeks and failure to pay employees at one and one-half times their regular rate of pay per hour for all hours worked over 48 hours in overtime weeks constitutes unfair competition and a "wage and hour standard" that does not "maintain workers' health, efficiency, and general well-being" in violation of Minnesota Statutes Section 177.22.

317.   Vail Resorts employs and employed members of the Minnesota Class within the meaning of Minnesota Statutes Section 177.23, Subdivision 5, which provides that "Employ" means to permit to work.

318.   Under Minnesota Statutes Section 177.24, Vail Resorts is and was required to pay each employee wages of at least $9.65 per hour beginning Jan. 1,

108

2018, $9.86 per hour beginning Jan. 1, 2019 and $10 per hour beginning Jan. 1, 2020.

319.   Vail Resorts is subject to Minnesota Statutes Section 177.25, which provides that "[n]o employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed."

320.   Minnesota Payment of Wages Act (PWA), Minnesota Statutes Section 181.03, provides that an employer may not, directly or indirectly and with intent to defraud: (1) directly or indirectly demand or receive from any employee any rebate or refund from the wages owed the employee under contract of employment with the employer; or (2) in any manner make or attempt to make it appear that the wages paid to any employee were greater than the amount actually paid to the employee.

321.   An employer that violates Minnesota Statutes Section 181.03 is liable in a civil action brought by the employee for twice the amount in dispute.

322.   Vail Resorts requires employees to have new or up-to-date equipment in excellent condition including skis or snowboards with bindings, boots, gloves, poles, and goggles. The Company does not reimburse employees for the cost of this

required equipment or pay for maintenance and replacement costs for lost or damaged equipment.

323.   Defendant's policy and practice of refusing to reimburse employees for expenses incurred in relation to tools of the trade used by employees in order to perform their job duties constitutes a rebate or refund from the wages owed the employee under contract of employment with the employer and an attempt to make it appear that the wages paid to employees were greater than the amount actually paid to the employees in violation of Minnesota Statutes Section 181.03.

324.   An employer must pay "all wages earned" by an employee at least once every 31 days on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals and requires the employer to pay a penalty in the amount of the employee's average daily earnings for up to 15 days if the employer does not make the payment within 10 days of demand. Minn. Stat. § 181.101.

325.   For purposes of Minnesota Statutes Section 181.101, "wages are earned on the day an employee works. This section provides a substantive right for employees to the payment of wages, including salary, earnings, and gratuities, as well as commissions, in addition to the right to be paid at certain times."

326.   When an employer discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable. Minn. Stat. § 181.13.

327.   "Wages are actually earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater." Minn. Stat. § 181.13.

328.   When an employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns must be paid in full no later than the next regularly scheduled payday. Minn. Stat. § 181.14.

329.   Therefore, wages are actually "earned and unpaid" if the employee was not paid for "all time worked" at the employee's regular rate of pay or as required by statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority. Minn. Stat. §§ 181.13(a), 181.14, Subd. 1.

330.   Minnesota Payment of Wages Act (PWA), Minnesota Statutes Section 181.171, Subdivision 1, provides that an employer who is found to have violated Minnesota Statutes, Sections 181.03, 181.101, 181.13 or 181.14 "is liable to the aggrieved party for the civil penalties or damages provided for in the section

violated. An employer who is found to have violated the above sections shall also be liable for compensatory damages and other appropriate relief including but not limited to injunctive relief."

331.   In an action brought for violations of Minnesota Statutes Section 181.03, 181.101, 181.13 or 181.14, the court shall order an employer who is found to have committed a violation to pay to the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees. Minn. Stat § 181.171, Subd. 3.

332.   Minn. R. 5200.0120, Sub. 1 provides that "The minimum wage must be paid for all hours worked." Time worked includes "training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment." Minn. R. 5200.0120, Sub. 1.

333.   Employers must compensate employees for all rest breaks of less than 20 minutes. Minn. R. 5200.0120, Sub. 1.

334.   Employers must pay employees for "On-call time," defined as when employee is "required to remain on the employer's premises or so close to the premises that the employee cannot use the time effectively for the employee's own purposes is working while on call." Minn. R. 5200.0120, Sub. 2.

335.   Vail Resorts, pursuant to its illegal policies and timekeeping practices, refused and failed to pay the Minnesota Class for all of their hours worked, in breach of its contractual obligations.

336.   As set forth in detail above, Vail Resorts, pursuant to its illegal policies and timekeeping practices, failed to pay the Minnesota Class for all "Hours Worked" such as "training time, call time, cleaning time, waiting time, or any other time when the employee must be either on the premises of the employer or involved in the performance of duties in connection with his or her employment" and "On-call time" at their **"**Regular Rate of Pay" as set forth in Minnesota Statutes Sections 177.23, 177.24, 177.25, 181.101, 181.13, and Minnesota Rule 5200.0120, including:

    (a)    work performed at home or prior to boarding Company buses such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used during their shifts;

    (b)    work performed while traveling on Company buses such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used during their shifts;

    (c)    all travel time spent at the control or direction of the employer or in employer-mandated transportation that materially prolonged commute time;

    (d)    the time spent donning indispensable uniforms and equipment;

    (e)    pre-shift meeting time;

    (f)    break-time;

(g)     shifts that took longer to complete than the scheduled time;

(h)     post-shift work such as completing paperwork, meeting with supervisors and checking-out;

(i)     time spent doffing indispensable uniforms and equipment;

(j)     work performed while traveling on Company buses at the end of the day;

(k)     all travel time spent at the control or direction of the employer; and

(l)     work performed at home such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used on upcoming shifts.

337.   Members of the Minnesota Class are entitled to pay at their regular rate of pay for work up to 48 hours of work per workweek, and at time-and-a-half for all of work performed over 48 hours per workweek.

338.   The Minnesota Class worked more than 48 hours for Defendant in one or more workweeks within the past three years, but due to Defendant's failure to pay them for all hours worked, as required under Minnesota law, they did not receive overtime pay for all hours worked in violation of Minnesota Statutes Sections 177.25, 181.101, 181.l3, 181.171 and Minnesota Rule 5200.0120.

339.   For example, when Minnesota Class members teach private lessons for six days in a workweek, they are paid for only 39 hours when they actually work 54 or more hours. When Minnesota Class members teach children's group lessons for

114

six days in a workweek, they are paid for only 43.50 hours when they actually work 60 or more hours.

340.   Vail Resorts' illegal policies and timekeeping practices resulted in the Minnesota Class not being paid the agreed upon rate of pay and overtime for all time worked, including work performed prior to and after their shifts and for state law mandated rest breaks. These policies and practices were uniformly applied to members of the Minnesota Class.

341.   By failing to properly compensate the Minnesota Class for all time worked, Defendant violated, and continues to violate their statutory rights under Minnesota Statutes Sections 177.23, 177.24, 177.25, 181.101, 181.13, 181.14, and 181.171.

342.   Defendant's actions were willful and not the result of mistake or inadvertence. Minn. Stat. § 541.07(5).

343.   As a direct and proximate result of Defendant's unlawful conduct, the Minnesota Class has suffered damages in an amount to be determined at trial.

344.   The Minnesota Class seeks damages in the amount of their unpaid straight-time wages for all hours worked, overtime wages for all hours worked, reasonable attorneys' fees and costs for this action, pre- and post-judgment interest, and such other legal and equitable relief as the Court deems proper.

## COUNT XV:

## VIOLATIONS OF WISCONSIN LAW

Wisc. Emp. Regs., Wis. Stat. § 103, *et seq*.; Wis. Min. Wage Law, Wis. Stat.
§ 104, *et seq*.; Wage Payments, Claims and Collections Law Wisc. Stat. § 109, *et
seq*.; Wisconsin Department of Workforce Development ("DWD") Administrative
Rules 272.03, 272.12, 274.03, 274.045

345.   Plaintiffs reallege and incorporate by reference each and every

allegation set forth in the preceding paragraphs.

346.   As detailed below, Vail Resorts violates and has violated Wisconsin

Statutes Sections 103.03 and 104.03, and DWD Administrative Rules 272 and 274 .

347.   At all relevant times, Vail Resorts has been, and continues to be, an

"employer" within the meaning of Wisconsin Statutes Sections 103.001 and 104.01.

348.   At all relevant times, the members of the Wisconsin Class were Vail

Resorts employees within the meaning of Wisconsin Statutes Sections 103.001(5)

and 104.01(2).

349.   Wisconsin Statutes Section 103.02 provides that "[t]he department

shall, by rule, classify [hours of beginning and ending work] . . . into periods to be

paid for at regular rates and periods to be paid for at the rate of at least one and one-

half times the regular rates."

350.   DWD Rule 272.12 is promulgated under the authority of Wisconsin

Statutes Section 103.02 and governs the "interpretation of hours worked."

116

351.   "Overtime compensation" means the compensation required to be paid for hours worked as periods to be paid for at the rate of at least 1.5 times an employee's regular rate of pay. Wis. Stat. § 103.025(c).

352.   Wis. Stat. § 103.43(1)(a) provides that "No person may influence, induce, persuade or attempt to influence, induce, persuade or engage a worker to change from one place of employment to another" in Wisconsin or to accept employment in Wisconsin from another state "by means of any false or deceptive representations, false advertising or false pretenses concerning the amount and character of the compensation to be paid for work."

353.   Any worker who is influenced, induced or persuaded by means of any false or deceptive representations or advertising, "shall have a right of action for recovery of all damages that the worker sustains in consequence of the false or deceptive representation, false advertising or false pretenses used to induce the worker to change his or her place of employment" in Wisconsin or to accept employment in Wisconsin, against any person or corporation, directly or indirectly, causing the damage. Wis. Stat. § 103.43(3).

354.   Vail Resorts falsely represented in employment agreements issued at the start of each season that the employee receiving the agreement would be paid at a particular base rate per hour of work.

355.   Defendant knew these representations were false because it knew that the Company did not pay employees for all of the hours that the employees actually worked.

356.   Defendant knew that the misrepresentation that the Company paid wages in excess of minimum wages per hour in press releases, news articles and employment agreements would persuade applicants and employees to move from one place to another in Wisconsin or from any place outside to any place within Wisconsin in violation of Wisconsin Statutes Section 103.43.

357.   The State of Wisconsin has an important public policy of ensuring a uniform minimum wage is paid. Wisconsin Statutes Section 104.001 provides that the "legislature finds that the provision of a minimum wage that is uniform throughout the state is a matter of statewide concern[.] Therefore, this chapter shall be construed as an enactment of statewide concern for the purpose of providing a minimum wage that is uniform throughout the state."

358.   All employers must be held to the same standards and must pay employees for all hours worked. Wis. Stat. § 104.001. "Employees subject to the statutes must be paid for all time spent in physical or mental exertion (whether burdensome or not) controlled or required by the employer." DWD Admin. R. 272.12(1)(a)1.

118

359.    Employees also must be paid for their entire workday. "Workday" means the period between "the time on any particular workday at which such employee commences their principal activity or activities" and "the time on any particular workday at which they cease such principal activity or activities." DWD Amin. R. 272.12(1)(a)2. The "workday" may be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line. Also, its duration may vary from day to day depending upon when the employee commences or ceases their "principal" activities. *Id.*

360.    If all employers do not pay for all time worked, payment of wages will not be uniform throughout the State as required by Wisconsin Statutes Section 104.001.

361.    An employer must pay an employee for all work, even if the work occurs at home, while traveling, or before or after the end of a shift. Management cannot accept the benefits of this work without compensating employees. DWD Admin. R. 272.12.

362.    Attendance at lectures, meetings, training programs and similar activities must be counted as working time because: (a) attendance occurred during the employee's regular working hours; (b) attendance was not "voluntary"; and (c)

the course, lecture, or meeting was directly related to the employee's job. DWD Admin. R. 272.12(f).

363.   The training required by Vail Resorts was not voluntary, in fact, because employees understood or were led to believe that present working conditions or the continuance of their employment would be adversely affected by failure to devote a significant number of hours to training.

364.   Therefore, Vail Resorts was required to pay employees for training time at their regular rate per hour in non-overtime weeks and at time and a half their regular rate during overtime weeks.

365.   With respect to overtime, Vail Resorts is required pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week. DWD Admin. R. 274.03.

366.   An employer must pay employees at least the minimum wage prescribed by DWD Administrative Rule 272 for all hours worked. Wis. Stat. § 104.02; DWD Admin. R. 274.

367.   Any employer who violates the overtime provision of DWD Administrative Rule 274.03 shall be subject to the penalties provided in Wisconsin Statutes Sections 103.005 and 109.11(2), which provide that, in a wage claim action that is commenced by an employee, a court may order the employer to pay to the

employee, in addition to the amount of wages due and unpaid and in addition to or in lieu of criminal penalties, increased wages of not more than 50 percent of the amount of wages due and unpaid.

368.   During the applicable statute of limitations, the members of the Wisconsin Class performed work for which they received less than the Wisconsin minimum wage, including time spent working during an unpaid meal periods.

369.   As a result of Defendant's willful failure to pay minimum wages due to Wisconsin Class members, Vail Resorts has violated, and continues to violate Wisconsin Statutes Sections 103.03, 104.03, and 109.03 and DWD Administrative Rules 272 and 274.

370.   Wisconsin Statute §109.01(3) provides that the "term 'wage' or 'wages' mean remuneration payable to an employee for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay . . . bonuses and any other similar advantages agreed upon between the employer and the employee or provided by the employer to the employees as an established policy."

371.   "Wage deficiency" means the difference between the amount required by law to be paid and the amount actually paid to an employee. Wis. Stat. §109.01(4).

372.    Wisconsin Statute § 109.03(5) provides that each "employee shall have a right of action against any employer for the full amount of the employee's wages due on each regular pay day . . . An employee may bring an action against an employer under this subsection without first filing a wage claim with the department."

373.    The provisions of Wisconsin Statutes Sections 103.02 and 109 address two sides of the same coin. Under Section 103.02, the DWD has promulgated an administrative rule requiring employers to pay employees for all work, even if the work occurs at home, while traveling, or before or after the end of a shift. DWD Admin. R. 272.12.

374.    Under the authority of Wisconsin Statute Section 103.02, the DWD promulgated an administrative rule requiring each employer to pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week. DWD Admin. R. 274.03. Under DWD Administrative Rule 274.045, the provisions of Rule 272.12 apply to the interpretation of hours worked under Rule 274.

375.    In Wisconsin Statute Section 109.03(5), the legislature provided employees with the right to bring an action in court against an employer for wages due without first pursuing administrative review with the DWD. Combined, these

statutory provisions create a system to assure that each employee is compensated for his or her labor. The plain meaning of Wisconsin Statutes Sections 103.02 and 103.005, when read together with Section 109, is that employees are authorized by the legislature to seek enforcement of DWD Administrative Rules 272.12 and 274.03 through Wisconsin Statutes Section 109.03(5). *German v. Wis. Dep't of Transp., Div. of State Patrol*, 235 Wis. 2d 576, 582-85, 612 N.W.2d 50 (2000).

376.    The Wisconsin Class seeks recovery of attorneys' fees, costs, and expenses of this action to be paid by Vail Resorts, as provided by Wisconsin Statutes Section 109.03(6).

377.    The Wisconsin Class seeks damages in the amount of the unpaid wages earned and due as provided by Wisconsin Statutes Sections 103.03, 104,03 and 109.03, and DWD Admin Rule 272, and any penalties due under Wisconsin Statutes Section 109.11, as well as such other legal and equitable relief from Defendant's unlawful and willful conduct as the Court deems just and proper.

## COUNT XVI:

### VIOLATIONS OF WASHINGTON STATE LAW
Min. Wage Requirements And Labor Standards Act and the Wage Rebate Act
Revised Code of Washington ("RCW") § 49, *et seq*.; Wash. Dep't of Labor &
Indus., Emp't Stds. Admin. Policy ES.A.5, ES.A.8.1, ES.C.2

378.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

123

379.   RCW 49.12.010 provides that "[t]he welfare of the state of Washington demands that all employees be protected from conditions of labor which have a pernicious effect on their health. The state of Washington, therefore, exercising herein its police and sovereign power declares that inadequate wages and unsanitary conditions of labor exert such pernicious effect."

380.   RCW 49.12.020 provides that "[i]t shall be unlawful to employ any person in any industry or occupation within the state of Washington under conditions of labor detrimental to their health."

381.   Not paying the Washington Class for all hours worked at their regular rate of pay in non-overtime weeks and failure to pay employees at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks is a condition of "labor detrimental to their health" in violation of RCW 49.12.020.

382.   RCW 49.12.150 provides that if any employee shall receive less than the legal minimum wage, the employee shall be entitled to recover in a civil action the full amount of the legal minimum wage with costs and attorneys' fees notwithstanding any agreement to work for such lesser wage.

383.   RCW 49.46.005 provides: (1) The establishment of a minimum wage for employees is a subject of vital and imminent concern to the people of the State

of Washington and requires appropriate action by the legislature to establish minimum standards of employment within the state. Therefore, the legislature declared that in its considered judgment the health, safety and the general welfare of the citizens of this state requires the establishment of a minimum wage to protect the immediate and future health, safety and welfare of the people of this state; and (2) The legislature has repeatedly amended this chapter to establish and enforce modern fair labor standards, including periodically updating the minimum wage and establishing the forty-hour workweek and the right to overtime pay.

384. Defendant's failure to pay employees at their regular rate of pay per hour set forth in their employment agreements for all hours worked in non-overtime weeks and failure to pay employees at one and one-half times their regular rate of pay per hour for all hours worked over 40 hours in overtime weeks is contrary to the "minimum standards of employment" established by the legislature in RCW 49.46.005 and threatens the "health, safety and the general welfare of the citizens" of the State of Washington in violation of RCW 49.46.005.

385. Under RCW 49.46.010(2) and (7), the terms "Employ" "includes to permit to work" and "Wage" "means compensation due to an employee by reason of employment."

386.   Beginning "January 1, 2017, and until January 1, 2018, every employer shall pay to each of his or her employees . . . wages at a rate of not less than eleven dollars per hour," beginning January 1, 2018, not less than eleven dollars and fifty cents per hour, beginning January 1, 2019, not less than twelve dollars per hour, and beginning January 1, 2020, not less than thirteen dollars and fifty cents per hour. RCW 49.46.020.

387.   Employers must pay employees all wages to which they are entitled under the Washington Minimum Wage Act ("WMWA") which has been renamed the Washington Minimum Wage Requirements And Labor Standards Act ("MWALSA"). If the employer fails to do so, RCW 49.46.090 requires that the employer pay the employees the full amount due less any amount actually paid to the employees.

388.   RCW 49.46.120 provides that Chapter 49.46 establishes minimum standards for wages, paid sick leave, and working conditions of all employees in the State of Washington, and is in addition to and supplementary to any other federal, state, or local law or regulation. Any standards relating to wages, hours, paid sick leave, or other working conditions established by any applicable federal, state, or local law or regulation which are more favorable to employees than the minimum

standards applicable under Chapter 49.46 shall be in full force and effect and may be enforced as provided by law.

389.   As the Washington Department of Labor and Industry has explained, "Hours worked," means all hours during which the employee is authorized or required, known or reasonably believed by the employer to be on duty on the employer's premises or at a prescribed work place. The department's interpretation of "hours worked" means all work requested, suffered, permitted or allowed and includes travel time, training and meeting time, wait time, on-call time, preparatory and concluding time, and may include meal periods. "Hours worked" includes all time worked regardless of whether it is a full hour or less. "Hours worked" includes, for example, a situation where an employee may voluntarily continue to work at the end of the shift. Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.C.2 (Revised 9/2/2008).

390.   Employers must pay covered employees for all hours worked in a workweek. In general, "hours worked" includes all time an employee must be on duty, on the employer's premises, or at any other prescribed place of work. Also included is any additional time the employee is "suffered or permitted" to work. For example, an employee may voluntarily continue to work at the end of the shift. The reason for the continued work at the end of the shift is immaterial. If the employer

knows or has reason to believe that the work is continuing, the employer must count the additional time as working time. Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.C.2, and ES.A.8.2 (Issued 12/02/2003, Revised 6/26/2020).

391.   "Any employee who is paid less than minimum wage, or less than the agreed wage rate, may file a complaint with the department." *Id*. Any employee paid less "than the wages to which he [or she] is entitled under or by virtue" of the WMWA, may file a wage claim with the Department of Labor and Industries pursuant to RCW 49.48.040. *See* RCW 49.46.090(2). This means that an employee is entitled to at least the minimum wage. If a higher hourly wage has been negotiated, the employee is entitled to payment at the rate for all hours worked subject to the agreement. The authority to make such a claim is not the WMWA but rather is RCW 49.52.050, unless the claim is for overtime, which falls under RCW 49.46.130. Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.A.5 Payment of Wages Less Than Minimum Wage—Employer's Liability (1/2/2002).

392.   By the actions alleged above, Vail Resorts violated the provisions of RCW 49.46, the WMWA and Washington Department of Labor & Industries, Employment Standards Administrative Policy ES.C.1, ES.C.2 and ES.A.8.2 by failing to pay for all "Hours Worked" including "travel time, training and meeting

time, wait time, on-call time, preparatory and concluding time," at their "Regular

Rate of Pay" as defined by ES.C.2, ES.A.8.2 and ES.A.5 including:

(a)  work performed at home or prior to boarding Company buses such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used during their shifts;

(b)  work performed while traveling on Company buses such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used during their shifts;

(c)  all travel time spent at the control or direction of the employer or in employer-mandated transportation that materially prolonged commute time;

(d)  the time spent donning indispensable uniforms and equipment;

(e)  pre-shift meeting time;

(f)  break-time;

(g)  shifts that took longer to complete than the scheduled time;

(h)  post-shift work such as completing paperwork, meeting with supervisors and checking-out;

(i)  time spent doffing indispensable uniforms and equipment;

(j)  work performed while traveling on Company buses at the end of the day;

(k)  all travel time spent at the control or direction of the employer; and

(l)  work performed at home such as checking Company schedules directing employees to particular worksites, communicating with customers and reviewing information to be used on upcoming shifts.

393.    As a result of the unlawful acts of Defendant, the Washington Class has been deprived of compensation in amounts to be determined at trial, and pursuant to RCW 49.46.090 and 49.48.030, are to recover those damages, including interest thereon, and attorneys' fees and costs.

394.    Washington's Minimum Wage Requirements And Labor Standards Act ("MWALSA") does not permit averaging of weekly pay for hourly workers. Instead, hourly workers must receive their contractual rate of pay or minimum wage, whichever is higher, for each hour worked. *Hill v. Xerox Business Servs.,* 426 P.3d 703, 706 (Wash. 2018).

395.    The Company failed to pay employees for uncompensated time spent in periodic work-related training that is integral and indispensable to the employee's job and occurs on Company property at the Company's direction. Such time is compensable. Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.C.2. The Company maintains records of the number of training hours so the exact amount due each employee can be calculated during discovery.

396.    Training and meeting time is generally interpreted to mean all time spent by employees attending lectures, meetings, employee trial periods and similar activities required by the employer, or required by state regulations, and shall be

130

considered hours worked. *See* Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.C.2 (Revised 9/2/2008).

397.   Attendance at lectures, meetings, training programs and similar activities must be counted as working time because: (a) Attendance occurred during the employee's regular working hours; (b) Attendance was not "voluntary"; (c) The course, lecture, or meeting was directly related to the employee's job. Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.C.2.

398.   The training was not voluntary in fact because employees understood or were led to believe that present working conditions or the continuance of their employment would be adversely affected by failure to devote a significant number of hours to training.

399.   Therefore, Vail Resorts was required to pay employees for training time at their regular rate per hour in non-overtime weeks and at time and a half their regular rate during overtime weeks, and failure to do so constitutes a willful violation of Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.C.2.

400.   With respect to overtime compensation, "no employer shall employ any of his or her employees for a workweek longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours

above specified at a rate not less than one and one-half times the regular rate at which he or she is employed." RCW 49.46.130.

401. Employees are entitled to overtime compensation for hours worked in excess of forty per week and he or she must be compensated at an overtime rate of at least at one and one-half times his or her regular rate of pay for all hours in excess of forty in a seven-day workweek. *See* RCW 49.46.130(1). Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.A.8.1 (7/15/2014).

402. Overtime pay is required regardless of whether the employee is paid hourly or in some other manner (*e.g.*, commission, piecework, salary, non-discretionary bonus, or an alternative pay structure combined with an hourly rate), or whether payment is made on a daily, weekly, bi-weekly, semi-monthly, monthly or other basis. *See* Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.A.8.1 (7/15/2014).

403. The "overtime requirement may not be waived by agreement between an employee and employer. A declaration by an employer that no overtime work will be permitted, or that overtime work will not be paid unless authorized in advance, is not a defense to an employee's right to compensation for any overtime hours actually worked." Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.A.8.1 (7/15/2014).

404.   The Washington State overtime law, RCW 49.46.130, requires overtime compensation be paid at a rate of at least 1.5 times the employee's "regular rate" for each hour worked in a workweek in excess of 40 hours. . . Employers must keep an accurate record of daily hours worked in order to calculate the regular rate. Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.A.8.2 HOW TO CALCULATE OVERTIME (Issued 12/02/2003, Revised 6/26/2020).

405.   The Washington Class worked more than 40 hours in one or more workweeks within the past three years, but due to Defendant's failure to pay them for all hours worked, as required under Washington law, they did not receive overtime pay for all hours worked in violation of RCW 49.46.130, ES.A.8.1 and ES.A.8.2.

406.   For example, when Snow Sport Instructors taught private lessons for six days in a workweek, they were only paid for 39 hours when they actually worked 54 or more hours. When Snow Sport Instructors taught children's group lessons for six days in a workweek, they were only paid for 43.50 hours when they actually worked 60 or more hours.

407.   Vail Resorts had policies and practices that resulted in the Washington Class not being paid the agreed upon rate of pay and overtime for all time worked, including work performed prior to and after their shifts and for state law mandated

rest breaks. These policies and practices were uniformly applied to all members of the Washington Class.

408. According to the Washington State Supreme Court, in *Seattle Professional Engineering Employees Association (SPEEA) v. Boeing*, 139 Wn.2d 824 (2000), the WMWA can be used only to claim unpaid wages of up to the statutory minimum hourly rate. If the agreed rate of wage is higher than the minimum wage and the employer fails to pay that rate of wage, the action to recover unpaid wages, above the minimum wage, by the employee or by the department on the employee's behalf, must be brought under RCW 49.52.050 (and RCW 49.52.070 to seek double damages and attorney fees). However, according to the Court in *SPEEA v. Boeing*, unpaid overtime, in any amount, can be claimed under the WMWA. *See* Wash. Dep't of Labor & Indus., Emp't Stds. Admin. Policy ES.A.5 Payment of Wages Less Than Minimum Wage − Employer's Liability (1/2/2002).

409. By failing to properly compensate the Washington Class for all time worked and/or travel time at their regular rate of pay, Defendant pays employees a lower wage than the wage such employer was obligated to pay employee by any statute or contract in violation of RCW 49.52.050(2).

410.   Defendant willfully failed to pay Washington Class members at a rate not less than one and one-half times their regular rate when they worked longer than forty hours in a week.

411.   Any employer who collects or receives from any employee a rebate of any part of wages paid to an employee is guilty of a misdemeanor. RCW 49.52.050(1).

412.   Any employer who "willfully and with intent to deprive the employee of any part of his wages, pays any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" is guilty of a misdemeanor. RCW 49.52.050(2).

413.   An employer or agent of any employer, who willfully makes or causes another to make any false entry in any employer's books or records purporting to show the payment of more wages to an employee than such employee received is guilty of a misdemeanor. RCW 49.52.050(3).

414.   Any employer who violates RCW 49.52.050 (1) and (2) shall be liable in a civil action for twice the amount of wages rebated or withheld, together with costs of suit and reasonable attorney fees. RCW 49.52.070.

415.   Violations by an employer or agent of any employer of Subdivisions (3), (4), and (5) of RCW 49.52.050 shall raise a presumption that any deduction from or underpayment of any employee's wages was willful. RCW 49.52.080.

416.   At all relevant times, Vail Resorts had a policy and practice of refusing to reimburse employees for expenses incurred in relation to tools of the trade used by employees to perform their job duties. Such tools of the trade include, but are not limited to, skis, snowboards, boots, poles, goggles, glasses, gloves, and base layers. Failure to reimburse the Washington Class for these expenses constitutes a rebate of wages paid to employees in violation of RCW 49.52.050, 49.52.070 and 49.52.080.

417.   The alleged unlawful actions by Defendant against the Washington Class as set forth above were committed willfully and with intent to deprive the Washington Class of part of their wages. As such, based on the above allegations, Defendant violated the provisions of RCW 49.52.050.

418.   In addition, Defendant failed to reimburse the Washington Class in whole or in part for expenses that were required as part of their employment. The unreimbursed out-of-pocket expenses were essentially deducted from the wages of the Washington Class.

419.   Defendant derived a financial profit or benefit from these deductions.

420.    By the actions alleged above, Defendant violated Washington laws. As a result of the unlawful acts of Defendant, the Washington Class has been deprived of compensation in amounts to be proven at trial. Pursuant to RCW 49.52.060, 49.48.010 and 49.46.090, the Washington Class members are entitled to recover those damages, including interest thereon, and attorneys' fees and costs.

421.    The alleged unlawful actions by Defendant against the Washington Class, as set forth above, were committed willfully and with intent to deprive the Washington Class of part of their wages.

422.    As such, based on the above allegations, Defendant violated the provisions of RCW 49.52.050.

423.    As a result of the unlawful acts of Defendant, the Washington Class has been deprived of compensation in amounts to be determined at trial, and pursuant to RCW 49.52.070 are entitled to recovery of twice such amounts, including interest thereon, and attorneys' fees and costs.

## COUNT XVII:

### VIOLATIONS OF NEW YORK STATE LAW
NYLL Article 6, Payment of Wages, and Article 19; the Minimum Wage Act,
N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, 2.3, 2.10

424.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

425.   At all relevant times, Defendant was an employer of the New York Class within the meaning of New York Labor Law and has employed the New York Class within the meaning of the New York Labor Law.

426.   Pursuant to New York Labor Law Section 190, "Wages" are the "earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis. The term 'wages' also includes benefits or wage supplements as defined" in New York Labor Law Section 198-C of Article 6, except for the purposes of New York Labor Law Sections191 and 192.

427.   Pursuant to New York Labor Law Section 191(d), clerical and other workers "shall be paid the wages earned in accordance with the agreed terms of employment."

428.   The New York Labor Law provides that the employer shall "furnish each employee with a statement with every payment of wages," listing the "regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

429.   "If any employee is not provided a statement or statements as required by" New York Labor Law Section 195(3), "he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred

or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. Law § 198.

430.   The employees' wage statements were consistently inaccurate because Defendant did not track the number of hours the employees actually worked and the statements did not list the number of regular hours actually worked, and the number of overtime hours actually worked. Therefore, Defendant violated New York Labor Law Section 195(3) and owes the maximum statutory damages. *See*, *e.g.*, *Coley v. Vannguard Urban Imp. Ass'n, Inc.*, No. 12-cv-5565-PKC-RER, 2018 WL 1513628 at *14 (E.D.N.Y. Mar. 27, 2018).

431.   Pursuant to New York Labor Law Section 198, in any action for a wage claim in which the employee prevails, the "court shall allow such employee to recover the full amount of any underpayment," and all "employees shall have the right to recover full wages, benefits and wage supplements."

432.   New York Labor Law Section 198(1)-(a) expressly provides that "any employee paid less than the wage to which he or she is entitled under the provisions of this article" [Article 6] is entitled to recover his or her "full wages."

433.   Pursuant to New York Labor Law Section 198(3) all "employees shall have the right to recover full wages, benefits and wage supplements and liquidated

damages accrued during the six years previous to the commencing of such action, whether such action is instituted by the employee or by the commissioner."

434.   Pursuant to New York Labor Law Section 198-B(2) "Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages . . . it shall be unlawful for any person . . . to request, demand, or receive . . . a return, donation or contribution of any part or all of said employee's wages, . . . upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment."

435.   Pursuant to New York Labor Law Section 198-C(1), in addition to any other penalty or punishment otherwise prescribed by law, "any employer who is party to an agreement to pay or provide benefits or wage supplements to employee . . . and who fails . . . to provide such benefits or furnish such supplements within thirty days after such payments are required to be made, shall be guilty of a misdemeanor."

436.   Pursuant to New York Labor Law Section 198-C(2), "as used in this section, the term 'benefits or wage supplements' includes, but is not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay."

437.   Accordingly, since the New York Class is entitled to recover "full wages, benefits and wage supplements" pursuant to New York Labor Law Section 198(3) and the term "benefits or wage supplements" includes reimbursement for expenses pursuant to New York Labor Law Section 198-C(2), Defendant is liable for the full amount of unpaid hours at the employees' regular rate of pay and the cost of equipment.

438.   Moreover, the failure to reimburse New York Class members for the cost of equipment including, but not limited to, skis, snowboards, boots, poles, goggles, glasses, gloves, and base layers, constitutes a "kick-back" under New York Labor Law Section 198-B(2), an unlawful "return, donation or contribution of any part or all of said employee's wages" and an unlawful failure to provide benefits or wage supplements by failing to reimburse the expenses for the cost of this equipment under New York Labor Law Section 198-C. The New York Class is therefore entitled to recover the costs of equipment under New York Labor Law Section 198(3), which gives employees the right to recover full wages, benefits and wage supplements.

439.   The New York Class is entitled to recover for all unpaid hours at their regular rate of pay and the cost of equipment and unreimbursed expenses as New York Labor Law Section 198-B(2) "kick-backs" which are a "return, donation or

contribution of any part or all of said employee's wages" which by definition cause an "underpayment" of wages pursuant to New York Labor Law Section 198, which gives employees the right to institute an action in a court for a wage claim to recover the full amount of any underpayment including earnings, "benefits or wage supplements" and "reimbursement for expenses."

440.   Accordingly, the New York Class is entitled to recover full wages, benefits and wage supplements and all reasonable attorneys' fees, prejudgment interest and an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due pursuant to New York Labor Law Section 198.

441.   Pursuant to New York Labor Law Section 650, employment at insufficient wages "impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and employment of 'persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy.'"

442.   Defendant's failure to pay New York Class members for all hours worked at their regular rate of pay "impairs the health, efficiency, and well-being of

the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees" in violation of New York Labor Law Section 650.

443.   Since Vail Resorts is in competition with other employers based upon the hourly rate of pay, not paying its employees at the agreed upon hourly wage for all hours worked "constitutes unfair competition against other employers and their employees."

444.   The "declared policy of the state of New York" announced in New York Labor Law Section 650 can only be effectuated if all employers are held to the same standard, *i.e.,* paying all employees at their agreed upon wage for all hours worked.

445.   Under Article 19—the Minimum Wage Act— "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than" the minimum wage. NYLL § 652.

446.   Pursuant to New York Labor Law Section 663, if "any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, [and] prejudgment interest."

447.   Pursuant to New York Labor Law Sections 650, 652 and 663, employees are entitled to be paid at their regular rate of pay for each hour worked under the "provisions of the article."

448.   Defendant violated New York Labor Law Sections 650, 652 and 663 by not paying New York Class members for all hours worked at their regular rate of pay.

449.   In the alternative, Defendant paid New York Class members less than the applicable minimum wage for each hour worked because Defendant paid the New York Class zero dollars for training time and for hours worked prior to and after their shifts. Failure to reimburse employees for equipment and cell phone expenses also unlawfully reduced their earnings below the minimum wage for each hour worked.

450.   Pursuant to New York Compensation Codes Rules & Regulations, Title 12, Section 142-2.2, an "employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" according to the same methods provided in the Fair Labor Standards Act of 1938.

451.   The New York Class worked more than 40 hours in one or more workweeks, but due to Defendant's failure to pay them for all hours worked, as required under New York law, they did not receive overtime pay for all hours worked

in violation of New York Labor Law Sections 650, 652 and 663 and New York

Compensation Codes Rules & Regulations, Title 12, Section 142-2.2.

452.   For example, when Snow Sport Instructors teach private lessons for six

days in a workweek, they are only paid for 39 hours when they actually work 54 or

more hours. When Snow Sport Instructors teach children's group lessons for six days

in a workweek, they are only paid for 43.50 hours when they actually work 60 or

more hours.

453.   Pursuant to New York Compensation Codes Rules & Regulations Title

12, Section 142-2, an "employee who by request or permission of the employer

reports for work on any day shall be paid for at least four hours, or the number of

hours in the regularly scheduled shift, whichever is less, at the basic minimum hourly

wage."

454.   Defendant violated New York Compensation Codes Rules &

Regulations Title 12, Section 142-2, by failing to pay the New York Class at "least

four hours, or the number of hours in the regularly scheduled shift, whichever is less,

at the basic minimum hourly wage" on days that employees reported to work but

were not put to work. For example, on slow days, New York Class members would

report to work for a full day only to be sent home and paid for 15 minutes. Since the

Company maintains records of the employees who were scheduled for work and sent

home and the number of minutes for which they were paid, specific damages can be calculated after discovery.

455.   At all relevant times, Defendant willfully failed to pay the New York Class the lawful minimum hourly wage, in violation of the New York Labor Law, including, but not limited to, New York Labor Law Article 19, Section 650, *et seq*., and its accompanying regulations and orders of the New York State Department of Labor.

456.   Defendant knew or should have known that the practices described in this complaint are unlawful under New York Labor Law. Defendant's violations were willful.

457.   Accordingly, the New York Class is entitled to recover from Defendant their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, as well as reasonable attorneys' fees and costs of the action, all in an amount to be determined at trial, pursuant to New York Labor Law Section 663.

458.   At all relevant times, Defendant failed to pay New York Class members their lawful overtime wages, in violation of the New York Labor Law, including, but not limited to, New York Labor Law Section 650, *et seq*., and its accompanying regulations and orders of the New York State Department of Labor.

459.   Defendant knew or should have known that the practices described in this complaint are unlawful under New York Labor Law. Defendant's violations were willful.

460.   Accordingly, the New York Class is entitled to recover from Defendant its unpaid overtime wages, liquidated damages, pre- and post-judgment interest, as well as reasonable attorneys' fees and costs of the action, all in an amount to be determined at trial, pursuant to New York Labor Law Section 663.

## COUNT XVIII:

### VIOLATIONS OF VERMONT LAW
### 21 V.S.A. §§ 302, 341, 342, 345, 347, 381, 384, 395

461.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

462.   "Employer" means any organization or corporation doing business in, or operating within Vermont, that has one or more individuals performing services for it within Vermont. 21 V.S.A. § 302(1). "Employee" means "every person who may be permitted, required, or directed by any employer, in consideration of direct or indirect gain or profit, to perform services." 21 V.S.A. § 302(2).

463.   Vail Resorts is an "employer" and the members of the Vermont Class are "employees" as defined by Section 302.

147

464.   "Wages" means "all remuneration payable for services rendered by an employee, including salary, commissions, and incentive pay." 21 V.S.A. § 341.

465.   "Any employer having one or more employees doing and transacting business within the State shall pay each week, in lawful money or checks, the wages earned by each employee to a day not more than six days prior to the date of such payment." 21 V.S.A. § 342(a)(1).

466.   Since Vail Resorts did not pay the Vermont Class for all hours worked at their regular rate of pay, the Company did not pay the "wages earned by each employee" in violation of 21 V.S.A. § 342(a)(1).

467.   21 V.S.A. § 345(a) provides that "Each employer who violates section 342, 343, 482, or 483 of this title shall be fined not more than $5,000.00. Where the employer is a corporation, the president or other officers who have control of the payment operations of the corporation shall be considered employers and liable to the employee for actual wages due when the officer has willfully and without good cause participated in knowing violations of this chapter."

468.   Since Defendant did not keep track of the actual number of hours worked by employees, Defendant willfully, knowingly, and/or recklessly engaged in a widespread pattern and practice of violating the controlling provisions of the FLSA and Vermont law as set out herein, by failing to properly pay employees for

all hours worked, including but not limited to travel time, donning and doffing time, meeting time, preparation of paperwork time, check-out time and other work time.

469.   21 V.S.A. § 347 provides that "An employer who violates section 342 or 343 of this title shall forfeit to the individual injured twice the value thereof, to be recovered in a civil action, and all costs and reasonable attorney's fees."

470.   Since Defendant willfully violated Section 342, the employer is liable for double the actual wages due for each and every hour worked at the rate per hour set forth in the Vermont Class' employment agreements and all costs and reasonable attorney's fees pursuant to 21 V.S.A. § 347.

471.   It is the "declared public policy of the State of Vermont that workers employed in any occupation should receive wages sufficient to provide adequate maintenance and to protect their health, and to be fairly commensurate with the value of the services rendered." 21 V.S.A. § 381.

472.   Not paying the Vermont Class for all hours worked at their regular rate of pay is a violation of Section 381 because the wages paid were not "fairly commensurate with the value of the services rendered."

473.   21 V.S.A. § 384(a) provides that "An employer shall not employ any employee at a rate of less than $9.15. Beginning on January 1, 2016, an employer shall not employ any employee at a rate of less than $9.60. Beginning on January 1,

2017, an employer shall not employ any employee at a rate of less than $10.00. Beginning on January 1, 2018, an employer shall not employ any employee at a rate of less than $10.50, and beginning on January 1, 2019 and on each subsequent January 1, the minimum wage rate shall be increased by five percent or the percentage increase of the Consumer Price Index."

474.   Since the Vermont Class was not paid for all hours worked, the employees were paid zero dollars for some hours in violation of Section 384(a).

475.   21 V.S.A. § 384(b) provides "Notwithstanding subsection (a) of this section, an employer shall not pay an employee less than one and one-half times the regular wage rate for any work done by the employee in excess of 40 hours during a workweek."

476.   21 V.S.A. § 395 provides "If any employee is paid by an employer less than the applicable wage rate to which the employee is entitled under this subchapter [subchapter 3, 21 V.S.A. §§ 381-397], the employee shall recover, in a civil action, twice the amount of the minimum wage less any amount actually paid by the employer, together with costs and reasonable attorney's fees, and any agreement between an employer and an employee to work for less than the wage rates is no defense to the action."

477.   Vail Resorts failed to pay the Vermont Class members for all hours worked at their regular rate of pay in violation of Sections 302, 341, 342, 345, 347, 381, 384, and 395. For example, when members of the Vermont Class teach private lessons for three days in a workweek, they are paid for only 19.5 hours when they actually work 27 or more hours. When Vermont Class members teach children's group lessons for three days in a workweek, they are paid for only 21.75 hours when they actually work 30 or more hours.

478.   Similarly, hourly employees such as ticket scanners and lift operators are not paid for their travel time from Company parking lots to their locker rooms. They are required by Company policy to change into their uniforms and "swipe in" to their timekeeping system as they exit the locker room. At the end of the day, they are required by Company policy to "swipe out" of the timekeeping system in their locker room before changing. Therefore, hourly employees such as ticket scanners and lift operators are not paid for their travel time on Company buses or their donning and doffing time.

479.   Vermont Class members worked more than 40 hours for Defendant in one or more workweeks within the past three years, but due to Defendant's failure to pay them for all hours worked, as required under Vermont law, they did not receive overtime pay for all hours worked in violation of Sections 381, 384, and 395.

480.   For example, when Vermont Class members teach private lessons for six days in a workweek, they are paid for only 39 hours when they actually work 54 or more hours. When Vermont Class members teach children's group lessons for six days in a workweek, they are paid for only 43.50 hours when they actually work 60 or more hours.

481.   As the Vermont Department of Labor has explained, unless all of these conditions are met, the employee must be paid for attendance at lectures, meetings, training programs and similar activities.

1.   Attendance is outside of the employee's regular working hours; AND
2.   Attendance is in fact voluntary; AND
3.   The course, lecture or meeting is not directly related to the employee's job; AND
4.   The employee does not perform any productive work during such attendance.

482.   The Company fails to pay employees for time spent in periodic work-related training that is integral and indispensable to the employee's job and occurs on Company property at the Company's direction. The Company maintains records of the number of training hours (but not the travel and donning and doffing time) so the number of training hours and the amount due to each employee can be calculated during discovery.

483.   Attendance at lectures, meetings, training programs and similar activities must be counted as working time because: (a) Attendance occurred during

the employee's regular working hours; (b) Attendance was not "voluntary"; (c) The course, lecture, or meeting was directly related to the employee's job.

484.   The training was not voluntary in fact because employees understood or were led to believe that present working conditions or the continuance of their employment would be adversely affected by failure to devote a significant number of hours to training.

485.   Therefore, Vail Resorts was required to pay employees for training time at their regular rate per hour in non-overtime weeks and at time and a half their regular rate during overtime weeks.

486.   As the Vermont Department of Labor has explained, "Where differences exist between the State and Federal law, the law providing greater employee protection is the law to which the employer must adhere." A Summary Of Vermont Wage And Hour Laws, Wage and Hour Program, Vermont Department of Labor, revised June 2019.

487.   Therefore, if the Court determines that the relief sought in Counts I-IV for Violations of the FLSA provides greater protection to the employees, the Vermont Class is entitled to the same relief.

488.   As a result of Vail Resorts' violations of Vermont law, the Vermont Class has suffered damages by failing to receive appropriate wages for all hours

worked, in an amount to be determined at trial, and is entitled to the recovery of such amounts, liquidated damages, penalties, pre- and post-judgment interest, reasonable attorneys' fees, costs, and such other compensation and legal remedies, and additionally, such declaratory and injunctive or other equitable relief, as the law allows.

## COUNT XIX:

### VIOLATIONS OF MICHIGAN LAW
Mich. Comp. Laws §§ 408.414, 408.419, 408.471, 408.472, 408.931, 408.934, 408.939

489.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

490.   The term "Employ" means to "engage, suffer, or permit to work." Mich. Comp. Laws § 408.

491.   The "minimum hourly wage rate" in the state of Michigan was $8.90 per hour, as of January 1, 2017, and $9.25 per hour, as of January 1, 2018. Mich. Comp. Laws § 408.414. On March 29, 2019, the minimum wage was raised to $9.45 per hour and on January 1, 2020, the minimum wage was raised to $9.65 per hour.

492.   Since the Michigan Class was not paid for all hours worked, the employees were paid zero dollars for some hours worked in violation of Michigan Compensation Laws Section 408.414.

493.   With respect to overtime compensation, "an employee shall receive compensation at not less than 1-1/2 times the regular rate at which the employee is employed for employment in a workweek in excess of 40 hours." Mich. Comp. Laws § 408.414a.

494.   Michigan Class members worked more than 40 hours for Defendant in one or more workweeks within the past three years, but due to Defendant's failure to pay them for all hours worked, as required under Michigan law, they did not receive overtime pay for all hours worked in violation of Mich. Comp. Laws § 408.414a.

495.   For example, when Michigan Class members teach private lessons for six days in a workweek, they are paid for only 39 hours when they actually work 54 or more hours. When Michigan Class members teach children's group lessons for six days in a workweek, they are paid for only 43.50 hours when they actually work 60 or more hours.

496.   Michigan Compensation Laws Section 408.419 provides "(1) If an employer violates this act, the employee affected by the violation, at any time within 3 years, may . . . (a) Bring a civil action for the recovery of the difference between the amount paid and the amount that, but for the violation, would have been paid the

155

employee under this act and an equal additional amount as liquidated damages together with costs and reasonable attorney fees as are allowed by the court."

497.   "Wages" means "all earnings of an employee whether determined on the basis of time, task, piece, commission, or other method of calculation for labor or services." Mich. Comp. Laws § 408.471(f).

498.   Michigan Compensation Laws Section 408.472 provides that an employer shall pay the following to an employee: "(a) On or before the first day of each calendar month, the wages earned by the employee during the first 15 days of the preceding calendar month. (b) On or before the fifteenth day of each calendar month, the wages earned by the employee during the preceding calendar month from the sixteenth day through the last day."

499.   By failing to properly pay employees for all hours worked, including but not limited to travel time, donning and doffing time, meeting time, preparation of paperwork time, check-out time and other work time, Defendant violated Michigan Compensation Laws Section 408.472 by not paying employees on or before the first day of each calendar month, the wages earned for all hours worked at the hourly rate set forth in their employee agreements.

500.   As a result, the Michigan Class is entitled to recover the difference between the amount paid ($0 for travel, donning and doffing, meeting time,

preparation of paperwork time, check-out time and other "off-the-clock" time) and the amount that, but for the violation, would have been paid the employee (the hourly rate set forth in their employee agreements in non-overtime weeks and 1-1/2 times their regular rate in overtime weeks) and an equal additional amount as liquidated damages together with costs and reasonable attorney fees. Mich. Comp. Laws § 408.419.

501.   The "improved workforce opportunity wage act" became effective on March 29, 2019. Mich. Comp. Laws § 408.931.

502.   In the improved workforce opportunity wage act, the term "Employ" means to "engage, suffer, or permit to work." Mich. Comp. Laws § 408.932.

503.   The improved workforce opportunity wage act raised the minimum wage to $9.45 per hour effective March 29, 2019 and to $9.65 per hour effective January 1, 2020. Mich. Comp. Laws § 408.934.

504.   Since the Michigan Class is not paid for all hours worked, the employees were paid zero dollars for some hours in violation of Michigan Compensation Laws Section 408.934.

505.    With respect to overtime compensation, "an employee shall receive compensation at not less than 1-1/2 times the regular rate at which the employee is

employed for employment in a workweek in excess of 40 hours." Mich. Comp. Laws § 408.934a.

506.   Michigan Class members work more than 40 hours in one or more workweeks but due to Defendant's failure to pay them for all hours worked, as required under Michigan law, they do not receive overtime pay for all hours worked in violation of Michigan Compensation Laws Section 408.934a.

507.   If an employer violates Michigan Compensation Laws, the employee affected by the violation, at any time within 3 years, may bring a civil action for the recovery of the difference between the amount paid and the amount that, but for the violation, would have been paid the employee under this act and an equal additional amount as liquidated damages together with costs and reasonable attorney fees as are allowed by the court. Mich. Comp. Laws § 408.939(1).

508.   As a result, the Michigan Class is entitled to recover the difference between the amount paid ($0 for travel, donning and doffing, meeting time, preparation of paperwork time, check-out time and other "off-the-clock" time) and the amount that, but for the violation, would have been paid the employee (the hourly rate set forth in their employee agreements in non-overtime weeks and 1-1/2 times their regular rate in overtime weeks) and an equal additional amount as liquidated

damages, together with costs and reasonable attorney fees. Mich. Comp. Laws §§ 408.472, 408.939(1), and 408.945.

## COUNT XX:

### VIOLATIONS OF UTAH LAW
Payment of Wages Act, Utah Code Ann. § 34-28-1, *et seq.*

509.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

510.   Defendant is an employer within the meaning of Utah Code Ann. Section 34-28-2.

511.   Under Utah law, the term "Wages" means the amounts due the employee for labor or services, whether the amount is fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount. Utah Code Ann § 34-28-2.

512.   Pursuant to Utah Code Ann. § 34-28-3 (1)(a), an employer shall pay the wages earned by an employee at regular intervals, but in periods no longer than semimonthly on days to be designated in advance by the employer as the regular payday; (b) An employer shall pay for services rendered during a pay period within 10 days after the close of that pay period.

513.   By failing to properly pay employees for all hours worked, including but not limited to travel time, donning and doffing time, meeting time, preparation

159

of paperwork time, check-out time and other work time, Vail Resorts violated Section 34-28-3 by not paying employees' wages earned for all hours worked at the hourly rate set forth in their employee agreements at regular intervals, but in periods no longer than semimonthly.

514.   Under Utah law, an employer may not require an employee to rebate, refund, offset, or return a part of the wage, salary, or compensation to be paid to the employee except as provided in Subsection (6). Utah Code Ann. § 34-28-3 (7).

515.   Vail Resorts requires employees to have new or up-to-date equipment in excellent condition including skis or snowboards with bindings, boots, gloves, poles, and goggles. The Company did not reimburse employees for the cost of this required equipment or pay for maintenance and replacement costs for lost or damaged equipment.

516.   Defendant's policy and practice of refusing to reimburse employees for expenses incurred in relation to tools of the trade used by employees in order to perform their job duties constitutes a rebate or refund from the wages owed the employee under contract of employment with the employer and an attempt to make it appear that the wages paid to employees were greater than the amount actually paid to the employees in violation of Section 34-28-3.

517.   As a direct and proximate result of Defendant's violations of the Utah Payment of Wages Act ("UPWA"), members of the Utah Class have sustained damages, including loss of earnings for hours of regular time worked for Defendant, in an amount to be established at trial.

518.   Vail Resorts has not acted in good faith nor with reasonable grounds to believe that its actions and omissions were not in violation of the UPWA.

519.   Claimants are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages under the UPWA. Claimants are also entitled to statutory damages pursuant to Section 34-28-9.5(3)(b) and to an award of pre-judgment interest and attorneys' fees and costs.

## COUNT XXI:

## BREACH OF CONTRACT AS TO THE NATIONWIDE CLASS

520.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

521.   At all times relevant to this action, Defendant had a contract with Plaintiffs and every other Nationwide Class member to pay each employee for each hour worked at a pre-established (contractual) regular hourly rate.

522.   Each Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

523.   Plaintiffs and every other Nationwide Class member performed under the contracts by doing their jobs and carrying out the off-the-clock activities that Defendant requires or accepts.

524.   By not paying Plaintiffs and every other Nationwide Class member the agreed upon hourly wage for all of the work they performed each shift, Defendant systematically breached its contracts with Plaintiffs and each member of the Nationwide Class.

525.   Defendant also breached the duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Nationwide Class members spent performing off-the-clock activities, which is an employer's responsibility.

526.   As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and every other member of the Nationwide Class have been damaged, in an amount to be determined at trial.

162

## COUNT XXII:

## UNJUST ENRICHMENT AS TO THE NATIONWIDE CLASS

527.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

528.   This Count is pled in the alternative to Count XXI, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

529.   At all times relevant to this action, Defendant promised Plaintiffs and every other Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Nationwide Class members performed for Defendant's benefit.

530.   Plaintiffs and every other Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

531.   By not paying Plaintiffs and every other Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

532.   Plaintiffs and the Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

533.   Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Nationwide Class member and enjoyed the benefits derived therefrom.

534.   Upon information and belief, Defendant used the monies owed to Plaintiffs and other Nationwide Class members to finance various business ventures or pay equity owners.

535.   Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Nationwide Class for the same.

536.   Plaintiffs and the Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

537.   As a direct and proximate result of Defendant's actions, Plaintiffs and other Nationwide Class members suffered damages, including but not limited to, loss of wages.

## IX.   **PRAYER FOR RELIEF**

1.      WHEREFORE, Plaintiffs, on their own behalf and on behalf of the putative FLSA Collective and Rule 23 Classes, request judgment as follows:

a.      Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth in Count I through Count IV;

b.      Certifying this action as a class action (for the Rule 23 Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' Colorado, California, Utah, Minnesota, Wisconsin, Washington, New York, Vermont and Michigan state law claims (Count V through Count XX);

c.      Certifying this action as a class action (for the Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts XXI-XII);

d.      Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all members of the FSLA Collective and Rule 23 Classes, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

165

e.      Designating Plaintiffs as the representatives of the FLSA Collective and the Rule 23 Classes, and undersigned counsel as Class counsel;

f.      Awarding Plaintiffs damages their respective unpaid compensation, including wages, overtime compensation, plus an equal amount of liquidated and penalty damages;

g.      Issuing such injunctive and/or declaratory or other equitable relief to which the Plaintiffs may be entitled, so that the unlawful behavior of the Defendant may be stopped;

h.      Awarding Plaintiffs their reasonable attorneys' fees, costs and expenses of this action; and

i.      Awarding such other legal and/or equitable relief as is permitted by law;

j.      Declaring Defendant breached its contracts with Plaintiffs and the Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.      Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

l.      Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.      Awarding such other and further relief as this Court deems appropriate.

## X.      **JURY DEMAND**

All Plaintiffs demand that this matter be tried to a jury.

Dated:  December 3, 2020                    Respectfully submitted,

                              */s/Edward P. Dietrich*
                              EDWARD P. DIETRICH
                              Edward P. Dietrich, APC
                              9595 Wilshire Boulevard, Suite 900
                              Beverly Hills, CA 90212
                              Tel:  (310) 300-8450
                              Fax:  (310) 300-8401
                              edward@dstlegal.com

                              */s/Benjamin Galdston*
                              BENJAMIN GALDSTON
                              Benjamin Galdston, Esq.
                              12544 High Bluff Drive, Suite 340
                              San Diego, CA 92130
                              Tel:  (858) 539-9767
                              benjamin@galdston.com

                              *Attorneys for Plaintiffs and the
                              Proposed Class*

## APPENDIX A - DOCUMENT RESERVATION OBLIGATIONS

Plaintiffs request that Defendant Vail Resorts search for, collect, and preserve documents and electronically stored information that will be the subject of discovery during this action. "[W]hen a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents and of the possible consequences of failing to do so." ABA Civil Discovery Standards, Standard 10, Preservation of Documents (Aug. 2004).  This duty "applies to information stored in an electronic medium or forma . . . ."  *Id*. at Standard 29.

Defendant is obligated to take all steps necessary to identify and preserve all potentially relevant documents and electronically stored information, including but not limited to the following.

## DOCUMENT PRESERVATION INSTRUCTIONS

The information that Plaintiffs anticipate requesting in discovery includes, but is not limited to, the following:

- The portions of any database or system maintained or used that contains time stamps or other data, including timesheets and telephone records, relating to the hours worked by Plaintiffs and putative opt-in plaintiffs and/or class members as well as their pay;

- Emails and other electronic and hard-copy documents pertaining to Defendant's decision to not pay the overtime premium;

1

- Emails and other electronic and hard-copy documents pertaining to Defendant's reliance on department of labor authority when deciding not to pay the overtime premium;

- Emails and other electronic and hard-copy documents pertaining to any audit or investigation performed by the department of labor;

- Emails and other electronic and hard-copy documents pertaining to the job duties performed by Defendant's employees, including Plaintiffs;

- Emails and other electronic and hard-copy documents pertaining to the hours worked by Defendant's employees, including Plaintiffs;

- Emails sent and received by Plaintiffs, putative opt-in plaintiffs or class members, and their managers/supervisors;

- Emails and other electronic or hard-copy documents pertaining to Defendant's compliance with the Fair Labor Standards Act and/or state laws; and

- Emails and other electronic or hard-copy documents pertaining to Plaintiffs and all other current or former employees.

This information, including all associated metadata, must be preserved. Therefore, Plaintiffs request that Defendant perform offline backups of any databases which contain information of the types identified above.  Plaintiffs also request that Defendant perform offline backups of all current Microsoft Exchange (or other email) databases to external hard drives, preserving their native format. These backups should be done routinely from this point forward.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner that they apply to other evidence.  Therefore,

Plaintiffs request that Defendant take every reasonable step to preserve this information until the final resolution of this matter, and discontinue all data destruction activities, including but not limited to, backup tape recycling policies, any automatic email deletion functions, and refrain from disposing of any relevant hardware or data storage.  In short, Plaintiffs request that the utmost care be taken in the preservation of all relevant electronic data, including metadata.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RANDY DEAN QUINT,
JOHN LINN and
MARK MOLINA,
on behalf of themselves and all similarly situated persons,

      Plaintiffs,

v.

VAIL RESORTS, INC., a Delaware Corporation,

      Defendant.

---

## EXHIBIT A – QUINT CONSENT TO JOIN COLLECTIVE ACTION

---

I, Randy Dean Quint, work or worked for Vail Resorts, Inc. as a ski instructor in the United States and was not compensated for snow sport equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling from employee parking lots to my locker room or worksite, the donning and doffing of uniforms, and equipment or training time during the past three years. I was not paid my regular rate of pay per hour set forth in my employment agreement for all hours worked in non-overtime weeks or at one and one-half times my regular rate of pay per hour for all hours worked over 40 hours in overtime weeks.

1

Pursuant to 29 U.S.C. § 216(b), I hereby give my consent to join and become a party plaintiff in the lawsuit titled *Quint, et al. v. Vail Resorts, Inc., et al.*, to recover unpaid off-the-clock work, overtime wages and unreimbursed expenses under the Fair Labor Standards Act ("FLSA") and for other relief under state and federal law.

Respectfully submitted,

Signature: _____

Name: Randy Dean Quint

Date: 12 | 1 | 2020

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RANDY DEAN QUINT,
JOHN LINN and
MARK MOLINA,
on behalf of themselves and all similarly situated persons,

       Plaintiffs,

v.

VAIL RESORTS, INC., a Delaware Corporation,

       Defendant.

---

## EXHIBIT B – LINN CONSENT TO JOIN COLLECTIVE ACTION

---

I, John Linn, work or worked for Vail Resorts, Inc. as a ski instructor in the United States and was not compensated for snow sport equipment and cell phone costs or "off-the-clock" work including, but not limited to, traveling from employee parking lots to my locker room or worksite, the donning and doffing of uniforms, and equipment or training time during the past three years. I was not paid my regular rate of pay per hour set forth in my employment agreement for all hours worked in non-overtime weeks or at one and one-half times my regular rate of pay per hour for all hours worked over 40 hours in overtime weeks.

1

Pursuant to 29 U.S.C. § 216(b), I hereby give my consent to join and become a party plaintiff in the lawsuit titled *Quint, et al. v. Vail Resorts, Inc., et al.*, to recover unpaid off-the-clock work, overtime wages and unreimbursed expenses under the Fair Labor Standards Act ("FLSA") and for other relief under state and federal law.

Respectfully submitted,

Signature: _John M. Linn_

Name: John Linn

Date: 12-01-2020

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

RANDY DEAN QUINT,
JOHN LINN and
MARK MOLINA,
on behalf of themselves and all similarly situated persons,

       Plaintiffs,

v.

VAIL RESORTS, INC., a Delaware Corporation,

       Defendant.

---

## EXHIBIT C – MOLINA CONSENT TO JOIN COLLECTIVE ACTION

---

I, Mark Molina, work or worked for Vail Resorts, Inc. as a ticket scanner in the United States and was not compensated for "off-the-clock" work including, but not limited to, traveling from employee parking lots to my locker room or worksite, the donning and doffing of uniforms, and equipment or training time during the past three years. I was not paid my regular rate of pay per hour set forth in my employment agreement for all hours worked in non-overtime weeks or at one and one-half times my regular rate of pay per hour for all hours worked over 40 hours in overtime weeks.

1

Pursuant to 29 U.S.C. § 216(b), I hereby give my consent to join and become a party plaintiff in the lawsuit titled  *Quint, et al. v. Vail Resorts, Inc., et al.*, to recover unpaid off-the-clock work, overtime wages and unreimbursed expenses under the Fair Labor Standards Act ("FLSA") and for other relief under state and federal law.

Respectfully submitted,

Signature: _____

Name: Mark Molina _____

Date: _12/1/20_____

2