1   Robert Ottinger (Cal. Bar No. 156825)
    THE OTTINGER FIRM, P.C.
2   535 Mission Street
    San Francisco, CA 94133
3   Tel: (415) 262-0096
    Fax: (212) 571-0505
4   Email: robert@ottingerlaw.com

5   Jennifer Liu (Cal. Bar No. 279370)
    Rebecca Peterson-Fisher (Cal. Bar No. 255359)
6   Logan Talbot (Cal. Bar No. 300591
    THE LIU LAW FIRM, P.C.
7   800 Menlo Ave, Suite 102
    Menlo Park, CA  94025
8   Tel: (650) 461-9000
    Fax: (650) 460-6967
9   Email: jliu@liulawpc.com
    Email: rpetersonfisher@liulawpc.com
10  Email: ltalbot@liulawpc.com

11  *Counsel for Plaintiffs and the Proposed FLSA Collective and Class*

12  Additional Counsel listed below.

13

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
**04/20/2021 at 12:46:24 PM**
ʏ: Marina C Olivarez Fuentes, Deputy Cle

14  **SUPERIOR COURT OF STATE OF CALIFORNIA**

15  **COUNTY OF PLACER**   S-CV-0046587

16
17  ANNA GIBSON and ZACHARIAH SAIZ-
    HAWES on behalf of themselves and all
    those similarly situated,
18
        Plaintiffs,
19
            v.
20
    THE VAIL CORPORATION D/B/A VAIL
21  RESORTS MANAGEMENT COMPANY
    and DOES 1 THROUGH 100, inclusive,
22
        Defendant.
23

24

25

26

27

28

**COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT;**

**CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF;**

**DEMAND FOR JURY TRIAL**

(1) **Failure to Pay Overtime Wages, Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*;**

(2) **Failure to Provide Minimum Wages, Cal. Lab. Code §§ 1194, 1197, 1197.1;**

(3) **Failure to Provide Overtime Wages, Cal. Labor Code §§ 510, 1194, and IWC Order No. 10-2001;**

(4) **Failure to Provide Meal Breaks, Cal. Lab. Code §§ 218.5, 226.7, 512, 1198, and IWC Order 10-2001;**

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT



(5)  **Failure to Provide Rest Breaks, Cal. Lab. Code §§ 218.5, 226.7, 512, 1198, and IWC Order 10-2001;**

(6)  **Failure to Reimburse Business Expenses in Violation of California Labor Code § 2802;**

(7)  **Failure to Provide Itemized Wage Statements, Cal. Lab. Code § 226;**

(8)  **Failure to Keep Requisite Payroll Records, Cal. Lab. Code § 1174(d);**

(9)  **Failure to Pay Earned Wages Upon Discharge, Cal. Lab. Code §§ 201-203;**

(10)  **Failure to Pay Earned Wages Timely, Cal Labor Code §§ 204, 210;**

(11)  **Unlawful and/or Unfair Business Practices, Cal. Business & Professions Code § 17200 *et seq.***

(12)  **Civil Penalties Under the Private Attorneys General Act of 2004 ("PAGA") § 2698 *et seq.***

- 1 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

Justin Toobi, Esq. (Cal. Bar. No. 296174)
724 Spring St., Suite 201
Los Angeles, CA 90014
Tel: (310) 435-9407

Julian Burns King (Cal. Bar No. 298617)
Elliot J. Siegel (Cal. Bar No. 286798)
KING & SIEGEL LLP
724 Spring St., Suite 201
Los Angeles, CA 90014
Tel: (213) 465-4802
Fax: (213) 465-4802
Email: julian@kingsiegel.com
Email: elliot@kingsiegel.com

- 2 -

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

**PRELIMINARY STATEMENT**

1.      This is a collective, class, and representative action brought by Plaintiffs Anna Gibson and Zachariah Saiz-Hawes ("Plaintiffs") on their own behalf and on behalf of a proposed nationwide collective under the Fair Labor Standards Act (the "FLSA Collective"), a proposed class in California under California's wage and hour laws (the "California Class"). Plaintiffs and FLSA Collective and California Class Members are or were employed by Defendant The Vail Corporation d/b/a Vail Resorts Management Company ("Defendant" or "Vail") as non-exempt employees in California and elsewhere in the United States who worked on the "mountain," including but not limited to Mountain Safety, Ski and Ride School Instructors, Lift Maintenance, Mountain Host, Mountain Dining, Snowmaking, Ski Patrol, Lift Operations, and Epic Mix ("Non-Exempt Employees").

2.      Defendant has failed and continues to fail to pay Plaintiffs and FLSA Collective and California Class Members for all regular and overtime hours worked in violation of federal and state wage and hour laws. These employees are similarly situated for the purposes of certification under California Code of Civil Procedure § 382 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

3.      In California, Defendant has also failed to pay Plaintiffs and the proposed California Class for all regular and overtime hours worked in violation of California Labor Code §§ 510, 1194, 1197, 1197.1, and Industrial Welfare Commission ("IWC") Order No. 10-2001; failed to provide compliant meal and rest periods in violation of California Labor Code §§ 218.5, 226.7, 512, 1198, and IWC Order No. 10-2001; failed to provide reimbursement for all necessary business expenses in violation of California Labor Code § 2802; failed to provide accurate wage statements in violation of California Labor Code § 226(a); failed to maintain requisite payroll records in violation of California Labor Code § 1174(d); failed to pay them all earned wages timely and upon discharge in violation of California Labor Code §§ 201-204 and 210; engaged in unfair business practices in violation of California Business & Professions Code § 17200 ("Unfair Competition Law"); and violated California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698, *et seq.*

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

4.      Plaintiffs seek relief for the FLSA Collective and the California Class for Defendant's failure to pay appropriate compensation to each member of the Collective and California Class pursuant to applicable federal and state statutes, rules, and regulations.  Plaintiffs seek damages, penalties, restitution, injunctive relief as well as fees and costs, for the aforementioned violations of the FLSA and California law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to Article 6, § 10 of the California Constitution and California Code of Civil Procedure § 410.10.  This action is brought pursuant to California Code of Civil Procedure § 382.  Plaintiffs bring this action on their own behalf and on behalf of all persons within the proposed FLSA Collective and California Class as defined herein.  Defendant owns property, maintains offices, transacts business, and/or has an agent or agents within the County of Placer or otherwise is found within the County of Placer, and Defendant is within the jurisdiction of this Court for purposes of service of process.

6.      Venue is proper in this Court pursuant to California Code of Civil Procedure § 395(a) and § 395.5 because the injuries to the persons complained of herein occurred at least in part in the County of Placer and/or because Defendant conducts business within the County of Placer.

## THE PARTIES

7.      Plaintiff Anna Gibson, at all times relevant hereto, was a resident of the State of California, and currently resides in Richmond, California.  Ms. Gibson was employed by Vail as a snowboard instructor at its Northstar California ski resort in Truckee, California, between approximately November 2017 and April 2019.  Plaintiff consents to sue for violations of the FLSA, pursuant to 29 U.S.C. §§ 216(b) and 256.  A copy of Ms. Gibson's signed consent to join form is attached hereto as **Exhibit A**.

8.      Plaintiff Zachariah Saiz-Hawes, at all times relevant hereto, was a resident of the State of California, and currently resides in the State of Colorado.  Mr. Saiz-Hawes was employed by Vail as a snowboard instructor at its Heavenly ski resort in South Lake Tahoe, California, between

- 4 -

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1  approximately December 2017 and April 2018.  A copy of Mr. Saiz-Hawes's signed consent to join
2  form is attached hereto as **Exhibit B**.

3      9.      Defendant Vail Resorts ("Defendant" or "Vail") is a company headquartered and
4  incorporated in Colorado.  Vail owns and operates approximately 37 ski resorts in three countries,
5  including approximately 17 mountain resorts in the United States.  In California, Defendant owns and
6  operates three luxury ski resorts (Northstar, Kirkwood, and Heavenly), all of which are located in the
7  Lake Tahoe area.

8      10.     Plaintiffs are informed and believe, and based thereupon allege, that the conduct,
9  actions, omissions, and manner of failing to provide overtime and minimum wages, failing to provide
10  proper meal and rest breaks, failing to reimburse necessary business expenses, failing to pay all earned
11  wages upon discharge, failing to provide accurate wage statements and maintain requisite payroll
12  records, failing to timely pay wages during employment, and engaging in unfair competition was
13  willful, known, and intended to violate the laws, and that officers, directors, and managing agents of
14  Defendant, approved, ratified, and directed the conduct in order to inflate profits at the expense of their
15  own employees' earnings and wages.  Through these policies and/or practices, Defendant lowered its
16  operating costs by failing to pay overtime and minimum wages and pay meal and rest break penalties to
17  its Non-Exempt Employees and failing to reimburse Reimbursement Subclass Members, as defined
18  herein, for their business expenses.

19      11.     Plaintiffs are ignorant of the true names or capacities, whether as individuals, partners,
20  corporate entities, or joint venturers, of the Defendant sued herein as Does 1 through 100, inclusive,
21  and for that reason, Defendant is sued under such fictitious names.  Plaintiffs will seek leave from the
22  Court to amend this Collective, Class, and Representative Action Complaint when such true names and
23  capacities are discovered.  Plaintiffs are informed and believe, and thereupon allege, that each of said
24  Doe Defendants, whether individuals, partners, corporate entities, or joint venturers, were responsible
25  in some manner for the circumstances alleged herein, and proximately caused Plaintiffs and those
26  members of the general public, California Class, and Reimbursement Subclass designated herein, to be
27
28

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1    subject to the unlawful employment and business practices, wrongs, injuries, and damages complained

2    of herein.

3                              **COMMON FACTUAL ALLEGATIONS**

4    **Off-the-Clock Work**

5         12.    Vail's timekeeping policies and practices require non-exempt employees who work on

6    the "mountain," including but not limited to Mountain Safety, Ski and Ride School Instructors, Lift

7    Maintenance, Mountain Host, Mountain Dining, Snowmaking, Ski Patrol, Lift Operations, and Epic

8    Mix (collectively, "Non-Exempt Employees"), to work substantial amounts of time off-the-clock.

9         13.    Vail directs Non-Exempt Employees to record only the hours they spend attending

10   morning meetings and the hours they spend working their assigned shifts.

11        14.    This common, company-wide policy and/or practice results in Non-Exempt Employees

12   having to omit hours spent in preliminary and postliminary activities, including but not limited to: (1)

13   donning and doffing their required employee uniform clothing, gear, and equipment, (2) traveling at the

14   beginning of their shift from the base of the mountain to their assigned work location on the mountain,

15   and back down to the base of the mountain at the end of their shift, and, for those Non-Exempt

16   Employees who must ski and/or ride at a high level of performance to carry out their job duties

17   ("Reimbursement Subclass Members"), (3) engaging in necessary maintenance of their equipment.

18        15.    Vail requires Non-Exempt Employees to don and doff their uniforms in Vail's locker

19   rooms.  Vail does not allow Non-Exempt Employees to wear their logo jackets outside of work hours,

20   and Non-Exempt Employees are told to keep their jackets in their lockers so that they do not ever forget

21   them at home when they report to work.  In particular, Reimbursement Subclass Members spend up to

22   half an hour putting on their jackets, boots, and other gear, and gathering their ski/snowboard

23   equipment.

24        16.    Vail also does not compensate Non-Exempt Employees for the time it takes for them to

25   travel up and/or around the mountain from their locker rooms or other locations where they typically

26   begin working for the day to the first assigned work location for the day.  Nor does it compensate them

27   for travel down the mountain at the end of their shifts.  In some cases, it only takes a few minutes to

28

                                              - 6 -
                  COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

walk to the assigned location. However, in many cases, where the employee's first assigned worksite is on the mountain or at another base location, Non-Exempt Employees must take a gondola or chair lift to reach the site. In virtually all cases, taking a gondola or chair lift is mandatory; there is no other feasible way to reach the location. Riding a gondola or chair lift can add anywhere from approximately 10 to 45 minutes to the beginning of a workday. Post-shift tasks and traveling back down to the base of the mountain typically add an additional 10 to 30 minutes to each workday.

17.    From a safety perspective, it is necessary for Reimbursement Subclass Members to regularly maintain their equipment. Having skis and snowboards that are waxed, with sharp edges, free of significant damage, and with properly-set bindings is not only an issue of performance, but also a paramount issue of safety. This maintenance must be done on a regular basis—sometimes even weekly, when Reimbursement Subclass Members are skiing or riding every day. This maintenance work cannot be done during a shift because Reimbursement Subclass Members are required to be physically on the mountain during their shifts, and maintenance work must be done with proper equipment, usually at home or in a ski shop. It is a commonly-held understanding among Reimbursement Subclass Members that this maintenance must be done on their own time. If the work is done before or after a shift, Reimbursement Subclass Members cannot record it, because Vail directs them to record only the hours they spend attending morning meetings and the hours they spend working for their assigned shifts.

**Meal and Rest Breaks**

18.    Vail has common, company-wide policies and/or practices of failing to relieve Plaintiffs and Non-Exempt Employees of all duties so that they may take the meal and rest periods to which they are entitled to law.

19.    As a matter of common, company-wide policy and/or practice, Vail also fails to ensure that it pays Plaintiffs and Non-Exempt Employees proper meal and rest break penalties when they do not receive the meal and rest breaks to which they are entitled by law.

- 7 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

**Unreimbursed Expenses**

20.     Across its three California resorts, Defendant employs thousands of ski and snowboard instructors ("Instructors") to teach skiing and snowboarding to its customers. Instructors teach ski school lessons for children, group lessons for children and adults, and private lessons for children and adults.

21.     Instructors for group or private lessons are required to have a minimum level of certification from Professional Ski Instructors of America (PSIA) or American Association of Snowboard Instructors (AASI), which requires an advanced level of skiing or snowboarding ability.

22.     Defendant employs both certified and uncertified Instructors. Certified Instructors typically teach lessons to customers skiing and riding at an intermediate or advanced level.

23.     Defendant also employs safety and ski patrol employees to ensure that resort patrons ski and snowboard safely, to assist injured guests, and to transport supplies and equipment to areas of need. Safety and Ski Patrol are required to ski and/or snowboard at an advanced or expert level.

24.     A primary, essential, and defined part of the job description for Certified Instructors who teach intermediate and advanced customers, Safety, and Ski Patrol (together with Certified Instructors and Safety, the "Reimbursement Subclass") is that they must be able to ski and/or ride (i.e., snowboard) at a high level of performance.

25.     In order to perform the duties of the job safely, credibly, and effectively, they need equipment that functions at an adequate level of performance, and gear that keeps them safe, warm, and dry. This equipment includes skis, snowboards, boots, bindings, and poles (skiing only); gear includes helmets, goggles, gloves, base layers, outer layers, socks, and other accessories such as gators/balaclavas.

26.     Vail has an Equipment Loaner Program, through which it makes its basic rental equipment available for Instructors and Patrollers to use. The basic rental equipment is the same equipment that Vail rents to beginner and intermediate skiers and snowboarders. The basic rental skis are shorter than higher-performing skis, made of lower quality material, bend more easily, have duller edges, and get damaged more easily. The basic rental snowboards (called "Learn to Ride" or "LTR"

- 8 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

EXHIBIT A

boards) are also made of lower quality material, bend more easily, and have curved edges. The LTR boards are great for beginners learning how to snowboard, but the qualities that make them appropriate for beginners make them inadequate for Instructors. Specifically, LTR boards do not slide as quickly on snow as higher-performing equipment, and the basic ski and LTR rental equipment have loose bindings that release easily in order to prevent injury in a fall. Certified Instructors, unlike beginners, do not fall frequently, and loose bindings can present a safety risk if their skis and snowboards release when not expected.

27. Vail discourages Reimbursement Subclass Members from using the basic rental equipment because it does not perform at the level required to do the job safely and effectively. Due to the flexibility of the material and lack of sharp edges, the basic rental equipment does not facilitate making abrupt stops and tight turns. Reimbursement Subclass Members need equipment that enables them to stop quickly to assist a fallen student or guest, to turn quickly when needed to navigate to a particular location or avoid a hazard, and to ski/ride quickly to help a student or guest that is out of control or injured during an emergency situation. Using sub-par equipment also requires significantly more exertion than adequately-performing equipment. The resulting tiredness and inability to maneuver oneself smoothly is a major safety issue, because a fall or loss of control can result in potentially catastrophic injuries.

28. In addition to being unsafe, the basic rental equipment also does not allow Certified Instructors to demonstrate proper technique, such as edge control, to students. It also impacts Certified Instructors' ability to maintain credibility with students, especially with intermediate and advanced clients taking lessons on the more difficult blue and black diamond runs, because using basic rental equipment indicates that Certified Instructors are not experienced or well-qualified skiers/snowboarders.

29. Vail also does not want Reimbursement Subclass Members using the basic rental equipment because it can cause shortages in common sizes and contribute to long lines at the rental shop. Reimbursement Subclass Members who wish to rent equipment also cannot do so at the start or

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1  end of their workday; they are instructed to obtain loaner equipment only on Mondays through
2  Thursdays, during non-peak customer hours that fall in the middle of the workday.

3    30.    As a result, virtually all Reimbursement Subclass Members buy their own ski and
4  snowboard equipment to perform the job. Reimbursement Subclass Members typically only use the
5  rental equipment in emergency situations (if they use them at all), such as when they forget their
6  equipment at home or when their equipment is broken and not yet replaced.

7    31.    Vail also requires Reimbursement Subclass Members' equipment to be inspected and
8  approved for safety by a Vail technician before they may begin working. If the technician approves the
9  condition of the equipment, the employee receives a sticker to place on their snowboard or skis to
10  designate that the equipment has been approved for the season.

11    32.    Like most ski resorts, Vail also rents premium "demo" equipment to guests who need
12  equipment that performs above the basic level. Like guests, Reimbursement Subclass Members can
13  rent demo equipment from Vail, but they have to pay out-of-pocket to do so. When Reimbursement
14  Subclass Members forget or break their equipment, they frequently pay out-of-pocket to rent demo
15  equipment instead of using the basic rental equipment, because they cannot safely, credibly, or
16  effectively perform their job duties with the basic rental equipment.

17    33.    Vail is well aware that Reimbursement Subclass Members purchase their own
18  equipment and gear to do their jobs. In fact, Vail encourages them to buy equipment and gear from
19  Vail stores by offering an Equipment Discount Program, which gives skiing and riding professionals
20  employed by Vail a discount on new equipment and gear sold by Vail's stores. Vail's policy explains
21  that the work-related discount voucher is designed to help new employees obtain the equipment and
22  accessories they need to perform their job. However, even with a discount, Reimbursement Subclass
23  Members pay substantial out-of-pocket costs for their equipment and gear.

24    34.    The equipment and gear necessary to be a Reimbursement Subclass Member require a
25  significant expenditure of money each season. Reimbursement Subclass Members incur greater than
26  average wear and tear on their equipment as a result of using their equipment for work. Students,
27  especially children, regularly ski and ride over or under instructors' skis and boards. Reimbursement
28

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1   Subclass Members often need to ski and ride over ice, rocks, and tree branches in order to keep up with
2   patrons skiing or riding on the mountain. Accordingly, Reimbursement Subclass Members typically
3   must buy new equipment every year or every other year. In addition to equipment, Reimbursement
4   Subclass Members also need to buy multiple sets of accessories like gloves, goggles, socks, base layers,
5   gators/balaclavas, in part because these accessories get wet and there is often insufficient time between
6   shifts for them to fully dry.

7       35.     Both skiing and snowboarding also require ongoing expenditures to properly maintain
8   equipment. Skis and boards need to be regularly waxed so that they glide and do not stick on snow.
9   The edges of skis and boards also need to be sharpened on a regular basis, so that they facilitate safe
10  and responsive turning and stopping. When skis or boards are damaged, they need to be repaired.
11  Bindings need to be inspected and adjusted on a regular basis as well.

12      36.     As a result, Reimbursement Subclass Members incur significant out-of-pocket
13  maintenance costs (waxing, tuning, repairing, etc.) in addition to the out-of-pocket purchase price of
14  their equipment and gear.

15      37.     Vail does not reimburse its Reimbursement Subclass Members for all of their
16  equipment, gear, or maintenance costs, which are all reasonable and necessary business-related
17  expenses.

18  **Plaintiff Anna Gibson**

19      38.     Plaintiff Anna Gibson worked for Vail Resorts as a snowboard instructor at its Northstar
20  California (previously "Northstar-at-Tahoe") ski resort from approximately November 2017 until April
21  2019.

22      39.     While Plaintiff Gibson was working at Vail Resorts, she incurred several necessary
23  business-related expenses. These expenses included her snowboard, boots and bindings, goggles,
24  helmets, base layers, and other necessary winter outdoor gear.

25      40.     Plaintiff Gibson was never reimbursed for these necessary business-related expenses.

26      41.     Pursuant to Defendant's policy, pattern, and/or practice, Plaintiff Gibson also regularly
27  spent time performing preliminary and postliminary activities such as necessary maintenance of her

28

- 11 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1   equipment, donning and doffing her required employee uniform clothing, gear, and equipment, and

2   traveling from the base of the mountain to her assigned work location and back, but she was not

3   properly compensated for all of this time.

4   **Plaintiff Zachariah Saiz-Hawes**

5        42.    Plaintiff Zachariah Saiz-Hawes worked for Vail Resorts as a snowboard and ski

6   instructor at its Heavenly Ski Resort in South Lake Tahoe, California, from approximately December

7   2017 until April 2018.

8        43.    While Plaintiff Saiz-Hawes was working at Vail Resorts, he incurred several necessary

9   business-related expenses. These expenses included his snowboard, skis, boots, googles, face masks,

10  hats, bindings, mittens/gloves, base layers, wax, and other necessary winter outdoor gear.

11       44.    Plaintiff Saiz-Hawes was never reimbursed for these necessary business-related

12  expenses.

13       45.    Pursuant to Defendant's policy, pattern, and/or practice, Plaintiff Saiz-Hawes also

14  regularly spent time performing preliminary and postliminary activities such as necessary maintenance

15  of his equipment, donning and doffing his required employee uniform clothing, gear, and equipment,

16  and traveling from the base of the mountain to his assigned work location and back, but he was not

17  properly compensated for all of this time.

18                             **COLLECTIVE ACTION ALLEGATIONS**

19       46.    Plaintiffs bring the First Cause of Action, the FLSA claim, on behalf of themselves and

20  all similarly-situated current and former persons who have worked for Defendant as Non-Exempt

21  Employees in the United States from three years prior to the date of the filing of this Collective, Class,

22  and Representative Action Complaint and the date of final judgment, and who elect to opt into this

23  action pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective').

24       47.    Plaintiffs, on behalf of themselves and the FLSA Collective, allege and incorporate by

25  reference the allegations in the preceding paragraphs.

26       48.    Plaintiffs are similarly situated to other members of the FLSA Collective.

27

28

49.     Defendant subjected Plaintiffs and the FLSA Collective to the same unlawful compensation policies, including, but not limited to requiring them to perform unpaid, off the clock work.

50.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other members of the FLSA Collective. There are many similarly situated Non-Exempt Employees who have been underpaid in violation of the FLSA who would benefit for the issuance of a court-supervised notice regarding the present lawsuit and the opportunity to join it. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records, such that notice should be sent to them pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring the Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action for violations of California's wage and hour and unfair competition laws as a class action pursuant to California Code of Civil Procedure § 382, on behalf of themselves and a class of persons consisting of all persons who have worked for Defendant as Non-Exempt Employees in California from four years prior to the date of the filing of this Collective, Class, and Representative Action Complaint through the date of final judgement in this matter (the "California Class Period") (the "California Class").

52.     Plaintiffs also bring the Sixth Cause of Action for violation of California Labor Code § 2802 as a class action pursuant to California Code of Civil Procedure § 382, on behalf of themselves and a subclass of persons who have worked for Defendant as Certified Instructors, Safety, or Ski Patrol in California during the California Class Period (the "Reimbursement Subclass").

53.     Plaintiffs, on behalf of themselves, the California Class, and the Reimbursement Subclass, allege and incorporate by reference the allegations in the preceding paragraphs, which demonstrate that class treatment is warranted under California Code of Civil Procedure § 382.

54.     **Numerosity:** The California Class and Reimbursement Subclass are sufficiently numerous that joinder of all members is impracticable. The exact numbers of such persons are not known to Plaintiffs, because the facts on which the calculation of that number can be based are

1    presently within the sole control of Defendant. Upon information and belief, there are thousands of

2    people in the California Class and at least several hundred people in the Reimbursement Subclass.

3        55.    **Ascertainable Class**: The proposed California Class and Reimbursement Subclass

4    consist of readily ascertainable persons. The entire memberships of the California Class and

5    Reimbursement Subclass are unknown to Plaintiffs at this time; however, the identity of such

6    membership is readily ascertainable via Defendant's employment records reflecting the job titles of

7    each such individual.

8        56.    **Typicality:** The claims of Plaintiffs are typical of the claims of the members of the

9    California Class and Reimbursement Subclass. Plaintiffs, like other members of the California Class

10   and Reimbursement Subclass, were subjected to Defendant's uniform policies and practices that

11   violated California law as described in this Collective, Class, and Representative Action Complaint.

12   Plaintiffs' job duties giving rise to the claims asserted in this Collective, Class, and Representative

13   Action Complaint were typical of those of the members of the California Class and Reimbursement

14   Class.

15       57.    **Adequacy:** Plaintiffs can and will fairly and adequately represent the interests of the

16   California Class and Reimbursement Subclass, and they have no interests that conflict with or are

17   antagonistic to the interests of the California Class and Reimbursement Subclass. Plaintiffs suffered

18   actual harm and damages as a result of Defendant's systematic and uniform violations of the California

19   wage and hour laws as set forth in this Collective, Class, and Representative Action Complaint.

20   Plaintiffs have retained attorneys who are highly skilled, competent, and experienced in complex and

21   class action litigation, and who will vigorously assert the claims on behalf of the members of the

22   California Class and Reimbursement Subclass. Plaintiffs are willing and able to vigorously prosecute

23   this action on behalf of the California Class and Reimbursement Subclass.

24       58.    **Predominance:** There are common questions of law or fact affecting the rights of the

25   members of the California Class and Reimbursement Subclass, including but not necessarily limited to

26   whether Defendant failed to provide the California Class with minimum wages for all hours worked,

27   whether Defendant failed to provide the California Class with overtime wages for all overtime hours

28

- 14 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1   worked, whether Defendant failed to provide the California Class with meal and rest breaks, whether

2   Defendant failed to reimburse the Reimbursement Subclass for work-related expenses, whether

3   Defendant failed to provide the California Class with accurate wage statements, whether Defendant

4   failed to maintain requisite payroll records for the California Class, whether Defendant failed to pay

5   final wages, whether Defendant failed to pay timely wages, and whether Defendant engaged in unfair

6   and/or unlawful business practices.  These common questions predominate over questions affecting

7   only individual members.

8        59.    **Superiority:**  Certification of the California Class and Reimbursement Subclass would

9   provide substantial benefits to the Court and members of the California Class and Reimbursement

10  Subclass.  The damages suffered by individual members of the California Class and Reimbursement

11  Subclass are relatively small compared to the significant expense and burden of individual prosecution

12  of this litigation.  In addition, class certification will obviate the need for unduly duplicative litigation

13  which might result in inconsistent judgments about Defendant's uniform policies and practices.

14        a.    This case involves a large corporate Defendant and sufficiently numerous

15  individual Class Members with many relatively small claims but all having similar and common issues

16  of law and fact;

17        b.    If each individual member of the California Class and Reimbursement Subclass

18  was required to file an individual lawsuit, the large corporate defendant would necessarily gain an

19  unconscionable advantage because Defendant would be able to exploit and overwhelm the limited

20  resources of each individual member of the California Class and Reimbursement Subclass with

21  Defendant's vastly superior financial and legal resources;

22        c.    Requiring each individual member of the California Class and Reimbursement

23  Subclass to pursue an individual remedy would also discourage members of the California Class and

24  Reimbursement Subclass from bringing lawful claims because many would be disinclined to pursue an

25  action against Defendant out of an appreciable and justifiable fear of retaliation and permanent

26  damage to their lives, careers, and well-being;

27

28

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

d.     Proof of common business practices or factual patterns that the members of the California Class and Reimbursement Subclass experienced will establish the right of each member of the California Class and Reimbursement Subclass to recover on the causes of action alleged herein;

e.     The prosecution of separate actions by the individual members of the California Class and Reimbursement Subclass, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the California Class and Reimbursement Subclass against Vail; would establish potentially incompatible standards of conduct for Vail; and/or would result in legal determinations with respect to individual members of the California Class and Reimbursement Subclass that would, as a practical matter, be dispositive of the interest of the other members of the California Class and Reimbursement Subclass who are not parties to the adjudications or that would substantially impair or impede the ability of the members of the California Class and Reimbursement Subclass to protect their interests; and,

f.     The claims of the individual members of the California Class and Reimbursement Subclass are not sufficiently large to warrant vigorous individual prosecution, considering all of the concomitant costs and expenses attending thereto.

g.     Furthermore, because the damages suffered by each individual member of the California Class and Reimbursement Subclass may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the California Class and Reimbursement Subclass to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

h.     Finally, the cost to the court system of adjudicating such individualized litigation would be substantial. As explained above, individualized litigation would also present the potential for inconsistent or contradictory judgments.

60.     **Existence and Predominance of Common Questions of Fact and Law:** There are common questions of law and fact as to the members of the Class, which predominate over questions affecting only individual members of the Class including, without limitation:

- 16 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

a.    Whether Vail had a policy, procedure, or practice of requiring the California Class to work off-the-clock.

b.    Whether Vail had a policy, procedure, or practice of failing to provide minimum wages to the California Class for all hours worked;

c.    Whether Vail had a policy, procedure, or practice of failing to provide overtime wages to the California Class for all overtime hours worked;

d.    Whether Vail had a policy, procedure, or practice of requiring California Class Members to work without proper meal and rest breaks;

e.    Whether Vail violated California Labor Code § 2802 by systematically failing to reimburse the Reimbursement Subclass for necessary business expenditures incurred as a direct consequence of the performance of their job duties;

f.    Whether Vail failed to keep true and accurate time and pay records for all hours worked by the California Class, and other records required by the California Labor Code and applicable IWC Orders;

g.    Whether Vail failed to maintain requisite payroll records for the California Class as required by the California Labor Code;

h.    Whether Vail engaged in unlawful, unfair, and/or deceptive business practices in violation of California Business & Professions Code §§ 17200, *et seq.*;

i.    Whether Vail engaged in the relevant policies, procedures, or practices alleged herein with oppression, fraud, or malice within the meaning of California Civil Code § 3288; and

j.    The nature and extent of class-wide injury and the measure of damages for those injuries.

61.    **Manageability of Class and Common Modes of Proof:** The nature of this action makes use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiffs for the wrongs alleged herein. Specifically, Vail maintains all records necessary to identify each and every member of the California Class and Reimbursement Subclass. To the extent Vail maintains inadequate records, or has not retained records, Plaintiffs propose surveys, representative

1   testimony of members of the California Class and Reimbursement Subclass, and record sampling done

2   on a statistically significant and randomized basis to prove each claim as hereinafter alleged.  Initial

3   investigation shows a clear and common pattern and practice of failing to provide minimum wages for

4   all hours worked, failing to reimburse necessary business expenses, failing to pay all earned wages

5   upon discharge, failing to pay all wages timely, failing to provide accurate wage statements, and

6   engaging in unfair competition, with the intended effect of increasing the profitability of Vail's

7   business in California.  Further, Vail utilized these uniform practices and procedures to gain an unfair

8   competitive advantage over competitors, by essentially lowering their operating costs in comparison to

9   competitors.  Therefore, this action is brought for the benefit of the public, for the benefit of the

10  affected employees, and to promote the public policy of the State of California to protect employee

11  wages and to prevent unfair competition in the amusement and recreation industry.

12

13                                   **FIRST CAUSE OF ACTION**
    **Failure to Provide Overtime Wages, Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*;**
14                        (On Behalf of Plaintiffs and the FLSA Collective)

15      62.      Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

16      63.      At all relevant times, Plaintiffs and other similarly situated members of the FLSA

17  Collective were engaged in commerce and/or the production of goods for commerce within the

18  meaning of 26 U.S.C. §§ 206(a) and 207(a).

19      64.      The overtime wage provisions set forth in §§ 210 *et seq.* of the FLSA apply to

20  Defendant.

21      65.      Defendant was and is an employer of Plaintiffs and other similarly situated members of

22  the FLSA Collective and is engaged in commerce and/or the production of goods for commerce within

23  the meaning of 29 U.S.C. §§ 206(a) and 207(a).

24      66.      At all relevant times, Plaintiffs and other similarly situated members of the FLSA

25  Collective were and are employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

26

27

28

                                         - 18 -
                COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

67. Plaintiffs and other similarly situated members of the FLSA Collective worked more than forty hours in a workweek, but were not paid at the overtime rate for hours worked in excess of forty.

68. Defendant has failed to pay Plaintiffs and other similarly situated members of the FLSA Collective the overtime wages to which they were entitled under the FLSA.

69. Defendant's violations of the FLSA, as described in this Complaint, have been willful and intentional.

70. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be tolled or extended by agreement, equity, or operation of law.

71. As a result of Defendants' willful violations of the FLSA, Plaintiffs and other similarly situated members of the FLSA Collective have suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201 *et seq.*, in amounts to be determined at trial or through undisputed record evidence, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C.§ 216(b).

## SECOND CAUSE OF ACTION
### Failure to Provide Minimum Wages, Cal. Labor Code §§ 1194, 1197, 1197.1
(On Behalf of Plaintiffs and the California Class)

72. Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

73. At all relevant times, California Labor Code §§ 1194, 1197, 1197.1 provide that any employee receiving less than the legal minimum wage applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of the applicable minimum wage, including interest thereon, reasonable attorney's fees, and the cost of suit.

74. During the relevant time period, Defendant failed to pay minimum wages to Plaintiffs and California Class Members in violation of California Labor Code §§ 1194, 1197, 1197.1. Specifically, Defendant required Plaintiffs and California Class Members to perform preliminary and

- 19 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1  postliminary activities off the clock, in addition to other work, and did not compensate them at all for
2  the time they spent performing those and other activities.

3    75.    Pursuant to California Labor Code § 1197.1, Plaintiffs and California Class Members
4  are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee minimum
5  wages, and $250.00 for each subsequent failure to pay each employee minimum wages.

6    76.    Pursuant to California Labor Code § 1194.2, Plaintiffs and California Class Members
7  are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and
8  interest thereon.

9    77.    Due to Defendant's unlawful conduct, as set forth herein, Plaintiffs and the California
10  Class sustained damages, including loss of earnings for hours worked.  Plaintiffs and the California
11  Class are entitled to damages, including wages, prejudgment interest, liquidated damages, and costs and
12  attorneys' fees.

**THIRD CAUSE OF ACTION**
**Failure to Pay Overtime Wages, Cal. Labor Code § 510, 1194, Wage Order 10-2001**
(On Behalf of Plaintiffs and the California Class)

16    78.    Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

17    79.    Plaintiffs and the California Class worked in excess of eight (8) hours in a day, and/or in
18  excess of forty (40) hours in a week.

19    80.    During the relevant time period, Defendant intentionally and willfully failed to pay
20  Plaintiffs and the California Class overtime premium pay for hours worked in excess of eight (8) hours
21  in a day, and/or in excess of forty (40) hours in a week.

22    81.    Defendant's failure to pay Plaintiffs and the California Class the unpaid balance of
23  overtime compensation violates the provisions of the California Labor Code sections 510 and 1194 and
24  Wage Order 10-2001.

25    82.    Due to Defendant's unlawful conduct, as set forth herein, Plaintiffs and the California
26  Class sustained damages, including loss of earnings for hours of overtime worked.  Plaintiffs and the

- 20 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1  California Class are entitled to damages, including overtime wages, prejudgment interest, and costs and

2  attorneys' fees.

3

4  **FOURTH CAUSE OF ACTION**

5  **Failure to Provide Meal Breaks, Cal. Labor Code §§ 218.5, 226.7, 512, 1198, and IWC Order No. 10-2001**

6  (On Behalf of Plaintiffs and the California Class)

7      83.    Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

8      84.    California Labor Code § 226.7(a) prohibits an employer from requiring an employee to

9  work during any meal period mandated by an applicable IWC Order.  IWC Order No. 10-2001 and

10  California Labor Code § 512(a) prohibit employers from employing a worker for more than five (5)

11  hours without a meal period of at least thirty (30) minutes, or for more than ten hours without a second

12  meal period of at least 30 minutes.  Under California Labor Code § 226.7(b) and IWC Order No. 10-

13  2001, if an employer fails to provide an employee a meal period as required, the employer must pay the

14  employee one hour of pay at the employee's regular rate of compensation for each workday that a meal

15  period is not provided as required.

16      85.    California Labor Code § 1198 makes unlawful the employment of an employee under

17  conditions prohibited by the IWC.

18      86.    Under California Labor Code § 558, Defendant is also liable for civil penalties for

19  failure to provide adequate meal periods as follows:  (1) for any initial violation, fifty dollars ($50) for

20  Plaintiffs or each California Class Member for each pay period in which a meal period was not

21  provided, and (2) for each subsequent violation, one hundred dollars ($100) for Plaintiffs or each

22  California Class Member for each pay period in which a meal period was not provided.  Defendant has

23  a policy and/or practice of failing to relieve Plaintiffs and the California Class of all duties so that they

24  may take the meal periods to which they are entitled by law.

25      87.    Defendant also has a policy and/or practice of failing to pay meal break penalties to

26  Plaintiffs and the California Class when they did not receive a meal period within the first five hours of

27  working as required by law.

28

- 21 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

88.     As a direct and proximate result of Defendant's unlawful conduct as alleged herein, Plaintiffs and the California Class have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and they are entitled to recover economic and statutory damages, as well as interest, costs and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Rest Breaks, Cal. Labor Code §§ 218.5, 226.7, 512, 1198, and IWC Order No. 10-2001**
(On Behalf of Plaintiffs and the California Class)

89.     Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

90.     The applicable IWC Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four-hour work period, or major portion thereof, that must be in the middle of each applicable work period insofar as is practicable.

91.     California Labor Code § 226.7 requires employers to pay non-exempt employees an additional hour of premium wages at the employee's regular rate of compensation on each workday that the employee is not provided with a rest period.

92.     California Labor Code § 1198 makes unlawful the employment of an employee under conditions prohibited by the IWC.

93.     Under California Labor Code § 558, Defendant is also liable for civil penalties for failure to provide rest periods as follows:  (1) for any initial violation, fifty dollars ($50) for Plaintiffs or each California Class Member for each pay period in which a rest period was not provided, and (2) for each subsequent violation, one hundred dollars ($100) for Plaintiffs or each California Class Member for each pay period in which a rest period was not provided.

94.     Defendant has a policy and/or practice of failing to provide Plaintiffs and the California Class with proper rest breaks.

95.     Defendant also has a policy and/or practice of failing to pay rest break penalties to Plaintiffs and the California Class when they did not receive proper rest breaks as required by law.

96.     As a direct and proximate result of Defendant's unlawful conduct as alleged herein, Plaintiffs and the California Class have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial, and are entitled to recover economic and statutory damages, as well as interest, costs and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION
**Failure to Reimburse Employees for Business Expenses, Cal. Labor Code § 2802**
(On Behalf of Plaintiffs and the Reimbursement Subclass)

97.     Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

98.     California Labor Code § 2802 provides that employers shall reimburse employees for all necessary expenses incurred in the performance of their job duties.

99.     Defendant required Plaintiffs and Reimbursement Subclass Members to purchase and maintain their own snowboarding and ski equipment and gear, which were necessary to perform their job duties.  Plaintiffs and Reimbursement Subclass Members incurred additional necessary expenses to maintain their snowboarding and ski equipment.  However, Defendant did not reimburse Plaintiffs or Reimbursement Subclass Members for any of these necessary business expenses.

100.    Defendant's intentional and consistent failure to reimburse Plaintiffs and members of the Reimbursement Subclass for the above-described expenses violates California Labor Code § 2802.

101.    As a direct and proximate result of Defendant's unlawful conduct as alleged herein, Plaintiffs and members of the Reimbursement Subclass have sustained economic damages in an amount to be established at trial, and are entitled to recover economic and statutory damages, as well as interest, costs and reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION
**Failure to Provide Accurate Wage Statements, Cal. Labor Code § 226(a)**
(On Behalf of Plaintiffs and the California Class)

102.    Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

103.    Defendant knowingly and intentionally failed to provide Plaintiffs and California Class Members with timely, accurate, itemized wage statements including, *inter alia*, failing to provide wage

1  statements which set forth their total hours actually worked, net wages actually earned, and overtime

2  rates, in violation of California Labor Code § 226.  Such failure caused injury to Plaintiffs and

3  California Class Members by, among other things, impeding them from knowing the amount of wages

4  they were and are owed.

5       104.    Plaintiffs and California Class Members are entitled to and seek injunctive relief

6  requiring Defendant to comply with California Labor Code §§ 226(a), and further seek the amount

7  provided under California Labor Code §§ 226(e), including the greater of all actual damages or fifty

8  dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per

9  employee for each violation in a subsequent pay period, up to $4,000 per employee.

10       105.    As a direct and proximate result of Defendant's unlawful conduct as alleged herein,

11  Plaintiffs and members of the California Class have sustained economic damages in an amount to be

12  established at trial, and are entitled to recover economic and statutory damages, as well as interest, costs

13  and reasonable attorneys' fees.

14

15  <center>**EIGHTH CAUSE OF ACTION**
**Failure to Keep Requisite Payroll Records, Cal. Labor Code § 1174(d)**
(On Behalf of Plaintiffs and the California Class)</center>

16

17       106.    Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

18       107.    Defendants have intentionally and willfully failed to keep accurate and complete payroll

19  records documenting the hours worked daily and the wages paid, to Plaintiffs and the California Class

20  Members.

21       108.    As a result of Defendant's violation of California Labor Code § 1174(d), Plaintiffs and

22  the California Class have suffered injury and damage to their statutorily-protected rights.

23       109.    Specifically, Plaintiffs and the California Class Members have been injured by

24  Defendant's intentional and willful violation of California Labor Code § 1174(d) because they were

25  denied both their legal right and protected interest in having available accurate and complete payroll

26  records, as required by California Labor Code § 1174(d).

27

28

## NINTH CAUSE OF ACTION
### Failure to Pay Earned Wages Upon Discharge, Cal. Labor Code §§ 201-203
(On Behalf of Plaintiffs and former employee members of the California Class)

110.    Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

111.    California Labor Code §§ 201 and 202 require employers to pay all compensation due and owing to their employees immediately upon discharge or within seventy-two hours of their termination of employment.  California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for "waiting time" penalties of up to thirty (30) days' wages.

112.    Defendant willfully failed to pay Plaintiffs and other California Class Members who are no longer employed by Defendant compensation due upon termination as required by California Labor Code §§ 201 and 202.  As a result, Defendant is liable to Plaintiffs and former employee California Class Members for waiting time penalties as provided under California Labor Code § 203, as well as reasonable attorneys' fees and costs.

113.    As a direct and proximate result of Defendant's unlawful conduct as alleged herein, Plaintiffs and former employee members of the California Class have sustained economic damages in an amount to be established at trial, and are entitled to recover economic and statutory damages, as well as interest, costs and reasonable attorneys' fees.

## TENTH CAUSE OF ACTION
### Failure to Timely Pay Wages, Cal. Labor Code §§ 204, 210
(On Behalf of Plaintiffs and the California Class)

114.    Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

115.    California Labor Code § 204 requires biweekly payment of wages for all employees except salaried executive, administrative and professional employees covered by the FLSA, whom it requires employers to pay at least once per month.

116.    California Labor Code § 210 makes any person subject to civil penalties for failing to timely pay employees as required by California Labor Code § 204.

- 25 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

117. Defendant failed to pay Plaintiffs and California Class Members all wages due and owing twice during each calendar month on their regular paydays, in that Defendants did not pay Plaintiffs and California Class Members at all for work performed off the clock.

118. As a direct and proximate result of Defendant's unlawful conduct as alleged herein, Plaintiffs and members of the California Class are entitled to recover $100 for Defendant's initial violation, and $200 for each subsequent violation, plus twenty-five percent of the amount of wages unlawfully withheld, as well as interest, costs and reasonable attorneys' fees.

## ELEVENTH CAUSE OF ACTION

**Unlawful, Unfair, and/or Deceptive Business Practices, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
(On Behalf of Plaintiffs and the California Class)

119. Plaintiffs re-allege each paragraph of this Complaint as though fully set forth herein.

120. Defendant's failure to provide minimum wages, failure to pay overtime wages, failure to reimburse business expenses, failure to provide meal and rest breaks, and failure to pay earned wages upon discharge are unlawful under California law as described herein. Therefore, these business practices are also unlawful and prohibited by California Business and Professions Code §§ 17200, *et seq.*

121. California Labor Code § 90.5 provides that it is the public policy of California to protect employees from working under unlawful conditions—and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers. The actions of Defendant in committing the wage and hour violations described herein therefore constitute unfair, fraudulent, and/or deceptive business practices, within the meaning of California Business and Professions Code §§ 17200, *et seq.*

122. Plaintiffs, individually and on behalf of all others similarly situated, are entitled to an injunction and/or other equitable relief against such unlawful practices in order to prevent future loss, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits. Plaintiffs, and all others similarly situated, are entitled to full restitution and/or disgorgement of all profits earned as a result of Defendant's business acts and practices.

123.    The illegal conduct alleged is continuing, and there is no indication that Defendant will discontinue such activity. Plaintiffs allege that if Defendant is not enjoined from the conduct set forth in this Complaint, Defendant will continue to engage in the wage and hour violations described herein.

124.    Plaintiffs further request that the Court issue a preliminary and permanent injunction prohibiting Defendant from failing to provide minimum wages, failing to reimburse business expenses, and failing to pay earned wages upon discharge.

125.    Defendant committed the unlawful actions herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs and members of the California Class, from an improper and evil motive amounting to oppression, fraud, and/or malice, and in conscious disregard of the rights of Plaintiffs and members of the California Class. Plaintiffs and members of the California Class are therefore entitled to recover punitive damages from Defendant pursuant to California Civil Code § 3294, in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION
**Violation of the Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq.***
(On Behalf of the State of California, Plaintiff Gibson, and the PAGA Representative Class)

126.    Plaintiff Gibson re-alleges each paragraph of this Complaint as though fully set forth herein.

127.    The Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698, *et seq.*, authorizes Plaintiff Gibson to recover civil penalties that otherwise would have been "assessed and collected by the Labor and Workforce Development Agency" for violations of the Labor Code through a "civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees." Cal. Lab. Code § 2699(a).

128.    Plaintiff Gibson is an "aggrieved employee[s]" under PAGA, as she was employed by Defendant during the applicable statutory period and suffered each of the wage and hour violations alleged herein. As such, Plaintiff Gibson seeks to recover, on behalf of themselves and all other current and former aggrieved Non-Exempt Employees, the civil penalties provided by PAGA, plus reasonable attorneys' fees and costs.

1      129.   Plaintiff Gibson seeks to recover the PAGA civil penalties through a representative

2 action as permitted by PAGA and the California Supreme Court in *Arias v. Superior Court* (2009) 46

3 Cal. 4th 969. Therefore, class certification of the PAGA claims is not required, but Plaintiff Gibson

4 may choose to seek certification of the PAGA claims.

5      130.   Plaintiff Gibson has satisfied the requirements for bringing a civil action under PAGA,

6 as set forth in California Labor Code § 2699.3.

7      131.   Plaintiff Gibson sent a notice to the California Labor and Workforce Development

8 Agency indicating her intent to seek penalties under PAGA due to Defendant's failure to reimburse

9 business expenses on November 19, 2019. On January 13, 2021, Plaintiff Gibson filed an amended

10 notice to clarify that she also intended to seek PAGA penalties for Defendant's other violations of the

11 California Labor Code, including but not limited to: failure to provide overtime and minimum wages,

12 failure to provide meal and rest breaks, failure to provide accurate wage statements, and failure to

13 provide all earned wages timely and upon discharge. To date, Plaintiff Gibson has not received any

14 response from the LWDA.

15      132.   Under PAGA, Plaintiff Gibson and the State of California are entitled to recover the

16 maximum civil penalties permitted by law for the violations of the California Labor Code and IWC

17 Order No. 4-2001 alleged herein.

18

19                         **PRAYER FOR RELIEF**

20      WHEREFORE, the Plaintiffs, on behalf of themselves and all similarly situated persons, pray

21 for relief as follows:

22      A.     Designation of this action as a collective action on behalf of the FLSA Collective and

23 prompt issuance of notice pursuant to 29 U.S.C. 216(b).

24      B.     Certification of the California Class and Reimbursement Subclass for violations of the

25 California Labor Code and California Unfair Competition Law;

26      C.     Designation of Plaintiffs as Representatives of the California Class and Reimbursement

27 Subclass;

28

1    D.    A declaratory judgment that the practices complained of herein are unlawful;

2    E.    An award of damages, including liquidated damages, and restitution to be paid by

3    Defendant according to proof for Plaintiffs, the FLSA Collective, the California Class, and the

4    Reimbursement Subclass;

5    F.    Pre-judgment and post-judgment interest, as provided by law;

6    G.    Attorneys' fees and costs of action incurred herein, including any expert fees; and

7    H.    Such other injunctive and equitable relief as the Court may deem just and proper.

- 29 -

COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

Dated: April 14, 2021

Respectfully submitted,

By: _____
        Jennifer Liu

Robert Ottinger (SBN 156825)
THE OTTINGER FIRM, P.C.
535 Mission Street
San Francisco, CA 94133
Tel: (415) 262-0096
Fax: (212) 571-0505
Email: robert@ottingerlaw.com

Jennifer Liu (Cal. Bar No. 279370)
Rebecca Peterson-Fisher (Cal. Bar No. 255359)
Logan Talbot (Cal. Bar No. 300591)
THE LIU LAW FIRM, P.C.
800 Menlo Ave, Suite 102
Menlo Park, CA  94025
Tel: (650) 461-9000
Fax: (650) 460-6967
Email: jliu@liulawpc.com
Email: rpetersonfisher@liulawpc.com
Email: ltalbot@liulawpc.com

Justin Toobi, Esq. (Cal. Bar. No. 296174)
724 Spring St., Suite 201
Los Angeles, CA 90014
Tel: (310) 435-9407

Julian Burns King (Cal. Bar No. 298617)
Elliot J. Siegel (Cal. Bar No. 286798)
KING & SIEGEL LLP
724 Spring St., Suite 201
Los Angeles, CA 90014
Tel: (213) 465-4802
Fax: (213) 465-4802
Email: julian@kingsiegel.com
Email: elliot@kingsiegel.com

*Counsel for Plaintiffs and Proposed FLSA Collective and Class*

- 30 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs, on behalf of themselves and the FLSA Collective, California Class, and

3  Reimbursement Subclass hereby demand a jury trial on all causes of action and claims with respect to

4  which they have a right to jury trial.

5      Dated:  April 14, 2021                          Respectfully submitted,

6

7                                                       By: _____
                                                            Jennifer Liu
8

9                                                       Robert Ottinger (SBN 156825)
                                                        THE OTTINGER FIRM, P.C.
10                                                      535 Mission Street
                                                        San Francisco, CA 94133
11                                                      Tel: (415) 262-0096
                                                        Fax: (212) 571-0505
12                                                      Email: robert@ottingerlaw.com

13                                                      Jennifer Liu (Cal. Bar No. 279370)
                                                        Rebecca Peterson-Fisher (Cal. Bar No. 255359)
14                                                      Logan Talbot (Cal. Bar No. 300591)
                                                        THE LIU LAW FIRM, P.C.
15                                                      800 Menlo Ave, Suite 102
                                                        Menlo Park, CA  94025
16                                                      Tel: (650) 461-9000
                                                        Fax: (650) 460-6967
17                                                      Email: jliu@liulawpc.com
                                                        Email: rpetersonfisher@liulawpc.com
18                                                      Email: ltalbot@liulawpc.com

19                                                      Justin Toobi, Esq. (Cal. Bar. No. 296174)
                                                        724 Spring St., Suite 201
20                                                      Los Angeles, CA 90014
                                                        Tel: (310) 435-9407
21
                                                        Julian Burns King (Cal. Bar No. 298617)
22                                                      Elliot J. Siegel (Cal. Bar No. 286798)
                                                        KING & SIEGEL LLP
23                                                      724 Spring St., Suite 201
                                                        Los Angeles, CA 90014
24                                                      Tel: (213) 465-4802
                                                        Fax: (213) 465-4802
25                                                      Email: julian@kingsiegel.com
                                                        Email: elliot@kingsiegel.com
26
                                                        *Counsel for Plaintiffs and Proposed FLSA Collective
27                                                      and Class*

28

- 31 -
COLLECTIVE, CLASS, AND REPRESENTATIVE ACTION COMPLAINT

# EXHIBIT A

DocuSign Envelope ID: B4C63B13-4023-4816-B139-AD86FDA3413E

## CONSENT TO JOIN FORM

1.      I consent to be a party plaintiff in a lawsuit against Vail Resorts Management Company, and/or related entities and individuals (collectively "Vail") in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      I hereby designate The Liu Law Firm, P.C. and The Ottinger Firm, P.C. ("the Firms") to represent me in bringing such claims, and to make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firms will petition the Court for attorneys' fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

3.      I also consent to join any other related action against Vail or other potentially responsible parties to assert my claims and for this Consent Form to be filed in any such action.

DocuSigned by:

*Anna Gibson*

DEDDC94C5614467...
Signature

Anna Gibson

Print Name

# EXHIBIT B

DocuSign Envelope ID: 02640075-8081-46EE-9B14-0E669F947263

## CONSENT TO JOIN FORM

1.     I consent to be a party plaintiff in a lawsuit against Vail Resorts Management Company, and/or related entities and individuals (collectively "Vail") in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.     I hereby designate The Liu Law Firm, P.C. and The Ottinger Firm, P.C. ("the Firms") to represent me in bringing such claims, and to make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firms will petition the Court for attorneys' fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

3.     I also consent to join any other related action against Vail or other potentially responsible parties to assert my claims and for this Consent Form to be filed in any such action.

DocuSigned by:

D82C1D8F180444C...
Signature

Zachariah Saiz-Hawes

Print Name