## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03569-DDD-NRN

RANDY DEAN QUINT,
JOHN LINN, and
MARK MOLINA,
Individually and On Behalf of All Others Similarly Situated,

      Plaintiffs,

         v.

VAIL RESORTS, INC., a Delaware Corporation,

      Defendant.

---

## OPPOSITION TO THE CALIFORNIA PLAINTIFFS' REQUEST FOR AN ORDER TO LIMIT COMMUNICATIONS WITH THE PUTATIVE COLLECTIVE

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................1

II.   PROCEDURAL HISTORY .....................................................................3

      A.    The California Superior Court denied the Colorado Plaintiffs'
            motion to intervene and granted preliminary approval of the
            settlement, over their objections. ...........................................................3

      B.    The California Superior Court granted final approval of the
            settlement, over the Colorado Plaintiffs' objections............................5

      C.    The California Court of Appeal reversed the trial court's denial
            of the Colorado Plaintiffs' motion to intervene and vacated the
            settlement. ...............................................................................................6

III.  ARGUMENT ...........................................................................................9

      A.    Counsel for the California Plaintiffs are not class counsel..................9

            1.    California Plaintiffs' counsel's assertion that they are
                  class counsel is inconsistent with the California Rules. ............9

            2.    The Court of Appeal decision de-certified the class for all
                  purposes and requires beginning again with preliminary
                  approval. ................................................................................11

      B.    Mentioning the California case in the *Hoffmann-LaRoche*
            notice would needlessly confuse putative collective members. .........16

IV.   CONCLUSION .......................................................................................17

i

# TABLE OF AUTHORITIES

<u>Page</u>

**CASES**

*Hamilton v. Vail Corp.*,
2024 WL 4456745 (Cal. Ct. App. Oct. 10, 2024) ......................................*passim*

*Luckey v. Superior Court*,
228 Cal.App.4th 81 (Cal. Super. Ct. 2014) ...................................................7, 12

*In re TD Ameritrade Accountholder Litig.*,
266 F.R.D. 418 (N.D. Cal. 2009) .......................................................................10

**OTHER AUTHORITIES**

California Rules of Court, Rule 3.769 ........................................................................9

Preliminary, *The New Collegiate Dictionary* (Merriam Webster 12th ed.),
https://www.merriam-webster.com/dictionary/preliminary?src= .......................9

## I.    INTRODUCTION

The California Plaintiffs seek to dictate the Colorado Plaintiffs' *Hoffmann-LaRoche* notice on the grounds that they serve as class counsel to some putative collective members who will receive it, and that ethics rules prevent unauthorized communications with represented parties. According to the California Plaintiffs, their counsel is class counsel because of a preliminary approval order issued by a California Superior Court in May 2022. That order provisionally certified a class of Vail employees for purposes of a specific settlement and provisionally appointed California Plaintiffs' counsel as class counsel solely for the purpose of finalizing that settlement. But that order appointing California Plaintiffs' counsel as class counsel is void—for multiple reasons.

First, preliminary approval orders are—by their own terms and by the terms of the relevant rules of procedure—temporary and tied to final approval. When the Superior Court here issued a final approval order, that order superseded and therefore voided the preliminary approval order. To hold otherwise would essentially make California Plaintiffs' counsel the class counsel for 103,000 individuals—in perpetuity—regardless of their failure to secure final approval.

Second, California Plaintiffs' counsel cannot be class counsel because the California Court of Appeal decertified the class when it vacated the Superior Court's approval of the settlement. The California Court of Appeal held that "the trial court's

decision to certify the class [was] problematic" because a "flawed presumption of fairness undermined . . . its certification decision." *Hamilton v. Vail Corp.*, No. C095844, 2024 WL 4456745, at *16 (Cal. Ct. App. Oct. 10, 2024). Because there is no certified class, California Plaintiffs' counsel cannot be class counsel. And the fact that both the final approval and the preliminary approval orders invoke that "flawed presumption" just confirms that the preliminary approval order is now void.

Third, if more was necessary, the Court of Appeal's decision indicates that the California Plaintiffs must start fresh with preliminary approval if they wish to secure a settlement. The Court of Appeal reversed the denial of the Colorado Plaintiffs' motion to intervene, which was filed *prior to* preliminary approval. It also questioned the sufficiency of basic settlement procedures agreed to by the parties— like the procedure for FLSA opt-ins and the procedures for disseminating settlement funds. These issues very likely require a new settlement and thus new preliminary approval. And more fundamentally, the Court of Appeal raised concerns with the adequacy of the California Plaintiffs' representation that may preclude them from *ever* securing an approvable settlement and counsel from becoming class counsel.

Because the California Plaintiffs' counsel are not class counsel, and any communications they had with putative collective members occurred years ago regarding a settlement that was never completed, it would be improper and confusing to insert the California Plaintiffs into this action's *Hoffmann-LaRoche* notice.

## II.    PROCEDURAL HISTORY[1]

### A.    The California Superior Court denied the Colorado Plaintiffs' motion to intervene and granted preliminary approval of the settlement over their objections.

On November 19, 2021, the Colorado Plaintiffs moved to intervene in *Hamilton II*, before the California Plaintiffs filed for preliminary approval of their settlement. Ex. 13. The Superior Court denied that motion on January 7, 2022. Ex. 31 at 4-10.

On January 28, 2022, the California Plaintiffs moved for preliminary approval of their settlement, Ex. 14, which the Colorado Plaintiffs opposed, Ex. 15. Vail filed an *ex parte* motion to strike the Colorado Plaintiffs' opposition to the settlement, arguing that because the Colorado Plaintiffs' earlier motion to intervene was denied, their objections to preliminary approval were improper and the filing was untimely. Ex. 32. The trial court granted Vail's motion "in its entirety," specifying that the Colorado Plaintiffs' opposition "will not be considered in the determination" of preliminary approval. Ex. 16.

The trial court preliminarily approved the settlement in February 2022. Ex. 17. It began by presuming that the settlement was fair because it was "mediated with

_____

[1] The Colorado Plaintiffs' opposition to the California Plaintiffs' intervention motion, filed concurrently with this opposition, provides a more detailed history of the litigation against Vail in California and Colorado, as well as the settlement reached by the California Plaintiffs. This brief assumes the Court is familiar with that history and relies on the same exhibits.

the assistance of [] an experienced mediator with significant experience in wage and hour class and collective actions." *Id.* at 11.[2] The Court gave "considerable weight to the competency and integrity of counsel and the involvement of a neutral mediator in [concluding] that [the] settlement agreement represents an arm's length transaction entered without self-dealing or other potential misconduct." *Id.*

In a single paragraph—without any substantive analysis—the court stated that the class certification requirements had been met and provisionally certified the class. In doing so, it repeatedly cited the "lessened manageability concerns in a settlement context" and found meaningful that "Vail has stipulated to class certification." *Id.* at 11-12. The court's evaluation of the settlement's fairness was similarly abbreviated. It listed the class certification factors and stated that "Counsels' declarations provided sufficient information to enable the court to assess [those factors]. Based on counsels' representations, which the court finds to be reasonable and credible, the court preliminarily finds the Settlement Agreement to be fair, reasonable, and adequate." *Id.* at 16.

The trial court also temporarily appointed class representatives and class counsel "[s]olely for the purposes of the proposed settlement" and authorized class counsel to represent the class "with respect to all acts … reasonably necessary to

---

[2] Pinpoint cites in this exhibit are to the page number of the PDF.

finalize the Settlement and its terms." Ex. 17 at 2. The preliminary approval order

set May 27, 2022, as the date of the final fairness hearing for the proposed settlement.

*Id*. at 3.

### B.    The California Superior Court granted final approval of the settlement, over the Colorado Plaintiffs' objections.

On May 25, 2022, the California Plaintiffs moved for final approval of their

settlement. Ex. 18. On June 14, 2022, the Colorado Plaintiffs filed an objection and

opposition to final approval. Ex. 21. On June 15, 2022, Vail filed another *ex parte*

motion to strike for largely the same reasons as its motion to strike the Colorado

Plaintiffs' preliminary approval objection. Ex. 33. On June 16, 2022, the trial court

again "struck" the Colorado Plaintiffs' objection "in its entirety."  Ex. 22.

On September 1, 2022, the trial court granted the California Plaintiffs' motion

for final approval of the settlement. Ex. 25. The court's reasoning mirrors that of the

preliminary approval decision. It began by applying the same "presumption of

fairness." *Id.* at 24.[3] For instance, as before, it noted that the parties attended

"mediation" with "an experienced mediator with significant experience in wage and

hour class and collective actions." *Id.* It repeated, word for word, that it gave

"considerable weight to the competency and integrity of counsel and the

involvement of a neutral mediator in [concluding] that [the] settlement agreement

---

[3] Pinpoint cites in this exhibit are to the page number of the PDF.

represents an arm's length transaction entered without self-dealing or other potential misconduct." *Id.* at 25.

The court went on to reiterate the same factors used to analyze the settlement at preliminary approval. However, it scrutinized those factors more carefully in concluding that the settlement was fair. *Id.* at 25-26.

### C. The California Court of Appeal reversed the trial court's denial of the Colorado Plaintiffs' motion to intervene and vacated the settlement.

The Colorado Plaintiffs appealed, and on October 10, 2024, the California Court of Appeal reversed the trial court's order denying intervention and directed the trial court to vacate its judgment approving the settlement. *Hamilton v. Vail Corporation*, No. C095844, 2024 WL 4456745 (Cal. Ct. App., Oct. 10, 2024).

With respect to the motion to intervene, the Court of Appeal held that the Colorado Plaintiffs' motion from November 2021—that is, their motion from before preliminary approval—should have been granted because the California Plaintiffs were inadequate representatives. In particular, the Court of Appeal explained, the California Plaintiffs' decision to file in a state without general jurisdiction "created a powerful incentive for California Plaintiffs to settle with defendants to overcome potential personal jurisdiction issues for the many out-of-state claims raised in th[e] case." *Id.* at *8; *see* Plaintiffs' Opposition to Motion to Intervene, Part II.C.1 (summarizing reasoning).

The Court of Appeal also concluded that the "trial court's judgment approving the settlement must be set aside" because "the court improperly presumed the settlement was fair." *Id.* at *15. The Court of Appeal explained that presumptions of fairness might be appropriate for "a negotiated settlement *after* class certification, not *before*." *Id.* To the contrary, California law requires "class action settlements [to] be scrutinized more carefully if there has been no adversary certification" because "the danger of collusion [i]s greater in such circumstances." *Id*. Accordingly, the Court of Appeal held that "a presumption of fairness [was] inapplicable" in the case before it—with the "risk that self-interest, even if not purposeful collusion, will seep its way into the settlement terms" being even "greater still here because of California Plaintiffs' incentive to settle with defendants to overcome potential personal jurisdiction issues." *Id.* at *16.

The Court of Appeal clarified that "this improper presumption affected the court's decision to certify the class." *Id.* at *15. It noted that "in the settlement-only class context, courts must find both that the settlement is fair and that certification is appropriate, with some certification issues ... requir[ing] heightened scrutiny." *Id.* at *16 n.6 (quoting *Luckey v. Superior Court*, 228 Cal.App.4th 81, 94 (Cal. Super. Ct. 2014)).

Finally, the Court of Appeal directed the trial court to scrutinize "the propriety of the settlement's opt-in procedures for the FLSA collective action." *Hamilton*,

7

2024 WL 4456745, at *17. Two parts of the settlement concerned the Court of Appeal:

First, the Court of Appeal questioned "the legitimacy of" the settlement's opt-in procedures, flagging they were potentially inconsistent with federal law. *Id.* The Court of Appeal noted that "[t]he settlement requires the settlement administrator to send checks to all class members, and it provides that class members who cash these checks will be deemed to have opted into the FLSA collective action." *Id.* According to the Court of Appeal, "[t]he settlement notice mentioned this same opt-in procedure for potential members of the collective action." But the Court of Appeal explained that "that practice is disputed," with courts rejecting it "on the ground that this approach is inconsistent with the FLSA's language" on consent. *Id.*

Second, the Court of Appeal questioned the "propriety" of sending individuals a single check. *Id.* It noted that "[b]oth the settlement and the settlement notice contemplate that each covered individual will receive a single check containing both FLSA and class settlement payments," but "[s]ome courts, however, have found this payment structure 'suspect'" because it "offers no option for individuals who want to remain in the class and accept their class settlement payment, yet do not want to opt into the FLSA collective action." *Id.*

## III.    ARGUMENT

### A.    Counsel for the California Plaintiffs are not class counsel.

The California Plaintiffs' counsel are not class counsel for putative collective members for two reasons. First, the California Rules establish that preliminary approval is contingent on, and is superseded by, final approval. Second, the California Plaintiffs cannot be class counsel because the Court of Appeal decision vacated the settlement and decertified the class for all purposes.

#### 1.    California Plaintiffs' counsel's assertion that they are class counsel is inconsistent with the California Rules.

California Rules of Court, Rule 3.769, proscribes the "[s]ettlement of class actions": "If the court grants preliminary approval, its order must include the time, date, and place of the final approval hearing; the notice to be given to the class; and any other matters deemed necessary for the proper conduct of a settlement hearing." Cal. Rules of Court, rule 3.769. In other words, preliminary approval is premised on an upcoming bid for final approval.

That requirement makes sense. Preliminary approval (and any related appointments of counsel and certifications of a class) are temporary legal structures. The definition of "preliminary" is "coming before and usually forming a necessary prelude to something else." Preliminary, *The New Collegiate Dictionary* (Merriam Webster 12th ed.), https://www.merriam-webster.com/dictionary/preliminary?src= search-dict-box. To be temporary or "come before," an event must be contingent on

a concrete "something" that comes after. That "something" is final approval. In other words, preliminary approval of a settlement cannot exist without an upcoming final approval—and certainly not after a final approval order has already been issued and vacated.

These basic principles are sufficient to reject California Plaintiffs' counsel's argument that they are provisionally approved class counsel. The preliminary approval order—on which the California Plaintiffs hang their hats—was abrogated by the final approval order. And when that final approval order was vacated by the California Court of Appeal, there was no longer a certified class or class counsel. *Cf. In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 424 (N.D. Cal. 2009) ("As the certification was provisional and preliminary to final approval, denial of final approval abrogates provisional class certification and the interim appointment of [] class counsel. Hence, no class has been certified and no appointment of class counsel has been made under FRCP 23(g).").

Any other understanding would be absurd. It would mean that preliminary appointments and certifications—like the California Plaintiffs' provisional appointment here—can exist in perpetuity so long as a final approval order is reversed for any reason that does not make a settlement unsalvageable. Indeed, on the California Plaintiffs' theory, they may take no action whatsoever and forever

represent the 103,000 individuals provisionally certified as a class in the *Hamilton II* court's 2022 preliminary approval order.

But even if preliminary approval orders could survive the vacatur of the final approval order that supersedes them, it would not be appropriate to invoke the preliminary approval order from 2022 here to justify the California Plaintiffs' counsel being class counsel. The *Hamilton II* preliminary approval order appointed the California Plaintiffs' counsel as class counsel only insofar as they sought to finalize the settlement they proposed in February 2022. Ex. 17 at 2. (Preliminary Approval Order) (appointing class counsel "[s]olely for the purposes of the proposed Settlement"). The settlement never became effective because the Court of Appeal vacated final approval. And California Plaintiffs' Counsel have made no effort to re-approve that settlement since the Court of Appeal's decision in October 2024—that is, for over a year. They have not submitted a motion for approval, let alone a timeline for that process. Thus, the provisional approval (if it still could exist) has expired.

2.    The Court of Appeal decision decertified the class for all purposes and requires beginning again with preliminary approval.

Even if preliminary approval need not be premised on an upcoming bid for final approval, the Court of Appeal decision vacating the final approval order makes clear that there is no certified class and thus no class counsel.

11

The Superior Court's failure to scrutinize whether class certification was appropriate led the Court of Appeal to reverse its class certification decision—in full. The Court of Appeal held that an "improper presumption [of fairness] affected the [trial] court's decision to certify the class." *Hamilton II*, 2024 WL 4456745, at *15. It explained that "in the settlement-only class context, courts must find both that the settlement is fair and that certification is appropriate, with some "certification issues ... requir[ing] heightened scrutiny." *Id.* at *16 n.6 (quoting *Luckey v. Superior Court*, 228 Cal.App.4th 81, 94 (Cal. Super. Ct. 2014)). Because the Court of Appeal order necessarily decertified the class, California Plaintiffs' counsel cannot be class counsel.

That's especially true because both the preliminary approval order and the final approval order suffer from the same defects requiring reversal. The improper presumption of fairness that the Superior Court identified is present—sometimes word for word—in both the preliminary approval decision and the final approval decision. *Compare* Ex. 17 at 11 (beginning analysis by stating: "[T]he Settlement Agreement was mediated with the assistance of . . . an experienced mediator with significant experience in wage and hour class and collective actions, including mediating nationwide FLSA cases. The court gives considerable weight to the competency and integrity of counsel and the involvement of a neutral mediator in [concluding] that [the] settlement agreement represents an arm's length transaction

12

entered without self-dealing or other potential misconduct.") *with* Ex. 25 at 24 (discussing the "Presumption of Fairness" because of the "mediation session with . . . an experienced mediator with significant experience in wage and hour class and collective actions, including mediating nationwide FLSA cases. . . The court gives considerable weight to the competency and integrity of counsel and the involvement of a neutral mediator in [concluding] that [the] settlement agreement represents an arm's length transaction entered without self-dealing or other potential misconduct.").

In fact, the Superior Court's final approval decision *expands* upon the preliminary approval decision, with similar—but additional—legal analysis; neither order engages in any sort of "heightened scrutiny," as required by the Court of Appeal, for class certification purposes. Thus, if the final approval order is void, the preliminary approval order is necessarily void for the same reasons.

That understanding is consistent with the rest of the Court of Appeal decision—all of which indicates that the California Plaintiffs must start fresh with preliminary approval if they wish to secure a settlement. In addition to vacating the settlement's approval, the Court of Appeal reversed the trial court's denial of the Colorado Plaintiffs' motion to intervene, which was filed *prior to* preliminary approval. The Superior Court "struck" and thus refused to consider the Colorado Plaintiffs' oppositions to both preliminary and final approval motions on the ground

13

that it had already denied their motion to intervene. Thus, now that the Court of Appeal granted the Colorado Plaintiffs' motion to intervene and made them a party to the litigation, the settling parties should file new motions for preliminary and final approval, and the Superior Court must consider the Colorado Plaintiffs' oppositions to preliminary and final approval of any settlement.

The Court of Appeal's concern with the sufficiency of basic settlement procedures—"issues that appeared to go unaddressed in the proceedings below"— also indicates that the parties must start with preliminary approval on remand. *Hamilton II*, 2024 WL 4456745, at *17. According to the Court of Appeal, "[f]irst, the trial court should consider the propriety of the settlement's opt-in procedures for the FLSA collective action." *Id.* "The settlement requires the settlement administrator to send checks to all class members, and it provides that class members who cash these checks will be deemed to have opted into the FLSA collective action" *Id*. But, as the Court of Appeal explained, "the legitimacy of that practice is disputed." *Id.* "Second, the trial court should consider the propriety of" sending a "single check containing both FLSA and class settlement payments." *Id.* "Both the settlement and the settlement notice contemplate that each covered individual will receive a single check containing both FLSA and class settlement payments," a "payment structure" that the Court of Appeal raised as "suspect." *Id.*

14

These issues must be considered at preliminary approval—and almost certainly require a new settlement. If the Superior Court determines that the opt-in and single check procedure must be modified, putative class members must receive a new notice, which must be reviewed by the court for the first time at the preliminary approval stage. But because (as the Court of Appeal made clear) the settlement itself requires potentially problematic opt-in and check procedures, the issues it identified likely require a revised settlement. A new settlement, of course, also necessitates a new motion for preliminary approval, and new notice. Thus, the California Plaintiffs should not be permitted to rely on the preliminary certification order of a settlement that is likely defunct to complicate the notice in this case.

But even with a revised settlement that omits the questionable settlement procedures, the problems raised by the Court of Appeal may prevent the California Plaintiffs from *ever* becoming class counsel in *Hamilton II*. The Court of Appeal detailed how the California Plaintiffs filed in a forum where their case could proceed "only with defendants' blessing"—which created "an inescapable need for these plaintiffs to settle with defendants." *Id.* at *10. Their willingness to proceed with such a "diminished bargaining position" may cast a cloud of over the adequacy of their representation in any future settlement too. *Id.*

The California Plaintiffs' response is: "nothing in the Court of Appeal's order reversed the provisional certification of the class representatives and class counsel."

ECF 282 at 7. But as the California Plaintiffs themselves state in their motion to intervene—the Court of Appeal "could not[] reverse the trial court's order granting preliminary approval and provisional certification" because it was "an interlocutory order that is not appealable." ECF 281 at 5-6. They fail to recognize that such interlocutory orders are merged into a final judgment when it is appealed. Thus, when the Colorado Plaintiffs appealed the final approval order, preliminary approval was at issue too. And the Court of Appeal understood itself as invalidating the preliminary approval order because—in declining to adjudicate the Colorado Plaintiffs' challenges to decisions at preliminary approval—it explained that the Court was already "grant[ing] Colorado Plaintiffs the relief they seek." *Hamilton II*, 2024 WL 4456745, at *12–13.

### B. Mentioning the California case in the *Hoffmann-LaRoche* notice would needlessly confuse putative collective members.

Contrary to the California Plaintiffs' argument, failing to mention their vacated settlement would not be misleading. Rather, the opposite is true. Snow sports instructors are only a fraction of California Plaintiffs' (now decertified) class. And only some of the snow sports instructors that the Colorado Plaintiffs seek to notify are covered by the California Plaintiffs' (now vacated) settlement of FLSA claims and have received communications from the California Plaintiffs about those claims. Even then, the communications they received from the California Plaintiffs were years ago and are likely forgotten. And issuing a notice with the content

16

demanded by the California Plaintiffs would be misleading because, contrary to their

assertions, there is no settlement, there is no class, and they are not class counsel.

## IV.    CONCLUSION

For the foregoing reasons, if the Court grants the motion to intervene, it should

deny the California Plaintiffs' request for an order to limit communications with the

putative collective and change the *Hoffmann-LaRoche* notice.

DATED: January 16, 2026                    Respectfully submitted,

                                          */s/ Edward P. Dietrich*

                                          **EDWARD P. DIETRICH, APC**

                                          Edward P. Dietrich
                                          9465 Wilshire Boulevard, Suite 300
                                          Beverly Hills, CA 90212
                                          Telephone:  310.300.8450
                                          Facsimile:  310.300.8401
                                          edward@dstlegal.com

                                          **COHEN MILSTEIN SELLERS &
                                          TOLL PLLC**

                                          Joseph M. Sellers
                                          Brian C. Corman
                                          Alisa Tiwari
                                          1100 New York Ave., NW, Suite 800
                                          Washington, DC 20005
                                          202-408-4600
                                          jsellers@cohenmilstein.com
                                          bcorman@cohenmilstein.com
                                          atiwari@cohenmilstein.com

**OMNUM LAW APC**

Benjamin Galdston
4350 Executive Drive, Suite 350
San Diego, CA 92121
Telephone: 858.539.9767
bgaldston@omnumlaw.com

*Attorneys for Plaintiffs and the
Proposed Collective and Classes*

## CERTIFICATE OF COMPLIANCE WITH PRACTICE STANDARDS

Plaintiffs certify their compliance with this Court's Civil Practice Standards, Section III.A., Length Limitations, which limit a party's brief to 4000 words. The foregoing **OPPOSITION TO THE CALIFORNIA PLAINTIFFS' REQUEST FOR AN ORDER TO LIMIT COMMUNICATIONS WITH THE PUTATIVE COLLECTIVE** totals 3,737 words, excluding the Table of Contents, Table of Authorities and signature block.

_/s/ Edward P. Dietrich_ _____

Edward P. Dietrich

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 16, 2026 I electronically filed the foregoing **OPPOSITION TO THE CALIFORNIA PLAINTIFFS' REQUEST FOR AN ORDER TO LIMIT COMMUNICATIONS WITH THE PUTATIVE COLLECTIVE** with the Clerk of Court using the CM/ECF system, which will send electronic notice of such filing to counsel for Defendant Vail Resorts, Inc.

*/s/ Edward P. Dietrich*
Edward P. Dietrich