**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-03569-DDD-NRN

RANDY DEAN QUINT,
JOHN LINN, and
MARK MOLINA,
Individually and On Behalf of All Others Similarly Situated,

      Plaintiffs,

          v.

VAIL RESORTS, INC., a Delaware Corporation,

      Defendant.

---

**JOINT DISCOVERY STATEMENT CONCERNING INTERNATIONAL ADDRESSES,
EXTENDING THE OPT-IN DEADLINE AND AUTHORIZING TEXT NOTICE**

---

Plaintiffs Randy Dean Quint, John Linn And Mark Molina, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), and Defendant Vail Resorts, Inc. ("Vail Resorts"), by and through their respective undersigned counsel, jointly submit this Discovery Dispute Statement for the Court's consideration in advance of the Telephonic Discovery Hearing set to commence on April 15, 2026 at 9:30 A.M.

**A.**     **PLAINTIFFS' STATEMENT**

**I.**     **INTRODUCTION**

Pursuant to this Court's orders (ECF 297 and 298), Plaintiffs worked diligently with their legal administrator and Vail to disseminate notice to the collective. However, despite numerous "meet and confer" exchanges via telephone and email, the parties have been unable to resolve two challenges. *First*, notice has been inadequate because a significant percentage of the collective has

1

not received notice via email or mail. The legal administrator reports that 56.2% of email recipients (12,900 people) did not open the email and therefore did not read the Court-ordered notice informing them of their legal rights. In addition, Vail did not provide email addresses for 363 instructors, and for the emails it did provide, 961 were undeliverable. Therefore, 1,324 collective members (5.5%) did not receive email notice at all. To make matters worse, as of April 13, 2026, 3,110 notices (12.8%) sent by U.S. mail to the addresses Vail provided were undeliverable.

*Second*, for international guest workers in particular, the notice process has proven especially inadequate. Plaintiffs informed Vail prior to the last status conference on February 4, 2026, that the list of international employees was incomplete because there were only about 600 international addresses on the collective list. Industry statistics indicate that foreign guest workers make up 5% to 10% of the workforce at U.S. ski resorts and, as a result, Plaintiffs expected 1,200 to 2,400 international addresses for the 24,273 collective members. At the status conference, Vail's counsel told this Court "We've gone back and checked our databases []and we have secondary addresses for [about] 1,800 of those 25,000 which we can provide[.]" Hearing Tr. at 7-8. In response, this Court ordered Defendant to "provide the supplemental list of addresses to Plaintiffs by []February 5, 2026." ECF 298 at 2. On the same day, according to Vail, it provided an updated list with "approximately 1750 'physical' addresses." After processing Vail's supplemental addresses, Plaintiffs learned that the net effect of the supplement (which consisted of extracting different fields from the same system) was just 43 additional international addresses. Plaintiffs have unsuccessfully attempted to obtain additional international addresses since early February 2026—even going so far as to consult technical experts and to provide Vail with concrete directions for how to programmatically extract the requested information. But Vail has not provided the additional international addresses or confirmed that they would be doing so.

2

## II.    ARGUMENT

To address the notice deficiencies, Plaintiffs respectfully request that this Court issue an order to (i) authorize text notice; (ii) compel Vail to provide the home international addresses for all instructors who worked after December 2, 2017; and (iii) extend the opt-in deadline for the entire collective by 45 days after receipt of the information necessary for this supplemental notice.

Text messaging is the *only* remaining tool to overcome the deficiencies in mail and email notice. Because of well-recognized problems with mail and email delivery for transient populations like ski instructors, most courts in this district routinely approve text notice. *See, e.g.*, *Kenney v. Helix Tcs,* 2021 WL 1634506, at *5 (D. Colo. Apr. 27, 2021). And even in districts that do not routinely approve text notice, those courts approve it where, as here, there is evidence that notice by mail and email have been ineffective or when the defendant does not have a complete list of home or email addresses. *See, e.g.*, *Cowley v. Prudential Sec.,* 2022 WL 18860473, at *3 (E.D. Mich. Nov. 17, 2022), report adopted in relevant part, 2022 WL 18860464 (E.D. Mich. Dec. 16, 2022).

Finally, courts routinely order defendants to supplement addresses of collective members where, as here, there are allegations that the address list is incomplete because the FLSA and DOL regulations *require* employers to maintain this data. *U.S. Equal Emp. Opportunity Comm'n v. Club Demonstration Servs.*, 2020 WL 5585060, at *6 (D. Alaska Sept. 16, 2020); *Chen v. Thai Greenleaf Rest. Corp.*, 2025 WL 1519145, at *6–7 (E.D.N.Y. May 28, 2025) (referencing 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2(a)).

### A.    Because email and mail notice has been ineffective, this Court should authorize text notice.

Outreach via text is required here given the failure to reach a large swath of instructors by mail and email. The benefits of the collective action procedure "depend on employees receiving

accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989); *Flores v. J& T Harvesting*, 2025 WL 2966105, at *1 (D. Colo. Oct. 21, 2025). Given the notice deficiencies, however, there is good reason to believe 50% of potential members remain unaware of the collective action. Because evidence demonstrates that notice by mail and email have been ineffective and because text is better suited to reach ski instructors, this Court should approve text notice. *Cf. Cowley*, 2022 WL 18860473, at *3–4.[1]

Especially when seeking to reach transient populations like ski instructors, "[c]ourts in this District [have regularly] authorized sending notice to putative class members by mail, email, and text message." *Kenney*, 2021 WL 1634506, at *5 (listing examples). Indeed, it is now standard practice in the Second "Circuit to authorize notice via e-mail and text message." *Carrasquillo v. Westech Sec. & Investigation Inc.*, 2025 WL 1558920, at *9 (S.D.N.Y. Apr. 23, 2025), recommendation adopted, 2025 WL 1558201 (S.D.N.Y. June 2, 2025)(collecting cases). Text notice is especially important when other modes of outreach have failed, "because 'text messages cannot be filtered to a SPAM folder or rebound because of a full inbox, they are more likely to reach and be read by the intended audience.'" *Sullivan v. Dent Wizard Int'l,* 2025 WL 1489243, at *7 (E.D. Mo. May 22, 2025); *see Thrower v. UniversalPegasus, Int'l.*, 484, 490, F. Supp. 3d 473 (S.D. Tex. 2020). In *Thrower*, the "true question before the court [was] whether to permit notice to potential plaintiffs via text message in addition to e-mail and mail." *Thrower*, 484 F. Supp. 3d at 489. The court explained that "[w]hile e-mail is engrained in the fabric of our world's

---

[1] Text message notice will have the added benefit of serving as a reminder which courts around the country routinely approve. *See, e.g.*, *Ding v. Mask Pot,* 347 F.R.D. 417, 436 (E.D.N.Y. 2024); *Wells v. Cmty. Health Sys.,* 630 F. Supp. 3d 938, 947 (M.D. Tenn. 2022); *Campbell v. Marshall Int'l,* 623 F. Supp. 3d 927, 935 (N.D. Ill. 2022).

communication structure, there is no denying that it has become saturated and unwieldy.[] Now, our virtual mailboxes are inundated with hundreds or thousands of messages. When it comes to our personal e-mail accounts, we have conditioned ourselves to tune the messages out, assuming they are unwanted advertisements, social-media notifications, unwelcome chain mail, a fake Nigerian prince seeking to transfer large sums of money out of the country, phishing scams, etc. The list goes on." *Thrower*, 484 F. Supp. 3d at 489-490. "This is why e-mails," the court continued, "have the infelicitous tendency of slipping through the cracks[.]" *Thrower*, 484 F. Supp. 3d at 490. And unlike "e-mail, text messages, at the very least, have eyes laid on them before being opened or ignored. [] Whatever the reason, there is no denying that potential plaintiffs are more likely to receive notice of the collective action if a court allows text-message notice, in addition to e-mail and mail." *Thrower*, 484 F. Supp. 3d at 490. *Pryke v. First Solar*, 2021 WL 5027565, at \*3 (N.D. Ohio Oct. 29, 2021) ("Legal commentators endorse [the text] approach" because "text messages are more and more likely to be the best way to provide individual notice.") (collecting articles).

### B.    This Court should order Vail to supplement international contact information.

Defendants must supplement contact information for collective members where, as here, evidence indicates that the list is incomplete. *See e.g., U.S. Equal Emp. Opportunity Comm'n v. Club Demonstration Servs.*, 2020 WL 5585060, at \*6 (D. Alaska Sept. 16, 2020). Indeed, defendants are often sanctioned for failing to produce a complete list of collective members with accurate contact information. *See e.g. Chen v. Thai Greenleaf Rest. Corp*., 2025 WL 1519145, at \*6–7 (E.D.N.Y. May 28, 2025); *Smith v. Dasuya Enters*., 2020 WL 3254528, at \*1 (E.D. La. June 16, 2020); *Valenzuela v. Best-Line Shades*, 2022 WL 413364, at \*1–2 (N.D. Cal. Jan. 25, 2022).

Courts routinely order defendants to supply this information, because multiple independent legal obligations already require that this information be maintained and stored accessibly. *Chen*,

2025 WL 1519145, at *6 (explaining that the "failure to keep and maintain records of employee contact information [] violates federal and state record-keeping requirements" because the "FLSA mandates [] that every employer 'shall make, keep, and preserve such records of the persons employed by him'" and "'[t]he DOL has enacted regulations that detail the precise records an employer must keep on every employee.'" (referencing 29 C.F.R. § 516.2(a))); *see also* 29 CFR § 503.16(i) (requiring workers' home addresses to be maintained by H-2B employers); 29 CFR § 503.17(d) (requiring H-2B employers to produce documents within 72 hours of request). Even if Vail is not in possession of the international addresses, Vail should be compelled to obtain the addresses and produce the information to Plaintiffs. *Cf. Lindsay v. Clear Wireless LLC*, 2014 WL 12892709, at *2–3 (D. Minn. July 10, 2014).

> **C.      This Court should extend the opt-in deadline to ensure adequate notice.**

This Court should extend the opt-in period to give Vail time to supplement the collective list and give Plaintiffs time to send text notice, as is common practice when notice efforts are inadequate and supplemental text notice is warranted. *Cowley,* 2022 WL 18860473, at *4; *Ysla v. United States*, 178 Fed. Cl. 728, 730 (2025). An extension of the deadline is also required so that international instructors can be contacted and provided an opportunity to opt in.

**B.      DEFENDANT'S STATEMENT**

As Judge Domenico stated in his Order to Disseminate Notice, ECF 297:

> The Court has already authorized "issuance of a *Hoffmann-LaRoche* notice to all Snow Sports Instructors employed by Vail [Resorts] during the relevant period." Not only did Judge Gallagher recommend issuing collective notice, he recommended the method of distribution and the content of the notice. ***No party objected to the method of distribution*** or content of the notice, and I accepted and adopted the recommendations.

(emphasis added) (quoting and citing ECF 183, Judge Gallagher's Recommendation, and ECF 217, Judge Domenico's Order adopting same).  Despite their initial failure to object in the first

place, once again, "Plaintiffs seek to revisit the methods of distribution . . . of the notices. Specifically, they urge the Court to reconsider its request to distribute notice via text message." ECF 297, p. 1. Plaintiffs also now seek to extend the period for potential members of the collective to opt in to this action. The Court should once again "decline to revisit [its] prior ruling," which was "that postal mail and email were sufficient to provide notice," and deny Plaintiffs' request. *Id.*

The Court's ruling on the method of distribution balanced the "the risk of annoying recipients into indifference through over-saturation" against "the risk of missing recipients through underdissemination." ECF 183, p. 23. Recognizing "to some extent, that [Vail Resorts'] workforce is 'transitory' and that regular mailing does not necessarily ensure that eligible Snow Sports Instructors will adequately receive notice," Judge Gallagher recommended, and Judge Domenico affirmed, that *Hoffmann-LaRoche* notices must be sent to "the last known postal mail address and to the last known e-mail address of eligible [Snow Sport] Instructors." *Id.* The Court also ruled that "additional service of notice by text message, telephone, or on [Vail Resorts'] intranet is unnecessary" and rejected that portion of the Plaintiffs' request. *Id.*

Plaintiffs offer no valid reason to disturb this Court's ruling. Vail Resorts complied with the Court's order and timely provided all of the last known postal mail and email addresses of the 24,273 putative members of the collective. In a good-faith effort to address Plaintiffs' unfounded concerns about the number of international addresses, Vail Resorts even provided any additional postal mail addresses, not just the last known mail addresses, contained in its human resources information system for any of the putative class members—an additional 1,815 addresses, by Plaintiffs' own count—on February 4, 2026, before the opt-in period began. Three weeks later, on February 26, 2026, the day before *Hoffmann-LaRoche* notices were supposed to issue, Plaintiffs

7

began a campaign of insisting that Vail Resorts "identify any non-US citizens in the collective and supply the address that the employee furnished on their employment application."

Ultimately, after investigating the matter, Vail Resorts determined that it does not even have the information Plaintiffs are seeking. The vast majority of international applicants to Snow Sport Instructor roles apply through J-1 visa sponsorship and do not apply directly to Vail Resorts but through a third-party agency. These applicants do not use SuccessFactors, Vail Resorts' applicant tracking system. If these applicants attempt to apply to a role requiring J-1 visa sponsorship via SuccessFactors, they are automatically rejected and directed to the third-party agency. The agency makes the selection and provides Vail Resorts with selected applicants' email addresses only. Then, Vail Resorts onboards them as employees, and they provide Vail Resorts with their contact information, which is recorded into Vail Resorts' human resources information system. The number of agencies Vail Resorts has engaged for this process during the relevant time period is almost certainly more than a dozen.

About 25 Snow Sport Instructors per year also apply through the H-2B via program. While these applicants do apply for jobs through SuccessFactors, there is no way to determine whether each applicant actually onboarded and began working for Vail Resorts without conducting a large-scale search of multiple databases. Specifically, Vail Resorts would have to search SuccessFactors for every Snow Sport Instructor job requisition going back to 2017, determine who was hired into these jobs, identify which hires sought sponsorship, and then cross-check against the list of putative collective members to determine whether any of these international hires actually onboarded with Vail Resorts. (For several reasons, it is common for H-2B hires never to report to work.) And, even if Vail Resorts were to take all of these steps and find additional addresses for

8

this small fraction of potential collective members, the fact remains that the addresses Vail Resorts already provided for these employees are more recent and accurate.

The information that Vail Resorts already provided (and what the Court ordered), *i.e.*, last known postal mail and email addresses, is the best, most up-to-date contact information. Vail Resorts' employees have self-serve access to update their contact information in PeopleSoft, Vail Resorts' human resources information system, letting Vail Resorts know where they want to be contacted. There is simply no reason to believe that employees are still residing at the addresses on their job applications (where different from what they self-reported during their employment). Further, Vail Resorts reminds employees to update their contact information at the end of each season so they can still receive tax filings and other relevant employment documents.

Throughout the course of the Parties' conferral on this issue, it became clear that no answer from Vail Resorts would be acceptable, because Plaintiffs' true objective was text message distribution of the notice to all collective members—not those who might have applied with international addresses. Indeed, during the conferral process, Plaintiffs offered "to move forward without additional international addresses" on the condition that "Vail Resorts consents to text notice." They have offered no viable explanation for extending the opt-in period for everyone else, other than vague, speculative concerns about fairness: "In the tight-knit community of snow sports professionals, word that some prospective collective members were receiving extra time because of their address would generate confusion and accusations of unfairness. Their inquiries might force us to revisit the decision, creating even more confusion." Their concerns are particularly baseless when considered alongside their latest representations about the delivery rate. Plaintiffs recently indicated 22,934 emails were delivered and only 2,850 postal mail notices of

9

4,273, or 11.8%, were undeliverable.[2]  *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1263 (S.D. Fla. 2016) (finding email notice was appropriate where defendant "collected Class members' email addresses at the time they signed their leases, communicated with them through email, and had a portal where Class members could update their email addresses," creating "a strong presumption that the email addresses were valid and operational" and "that assumption was correct because only 11% of the emails were returned to the third-party email vendor as undeliverable"); *In Re: ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. 2:19-ML-2905-JAK (JPRX), 2025 WL 4231615, at *9 (C.D. Cal. Oct. 8, 2025) (10.58% is a "typical" bounce-back rate).

The only possible explanation for Plaintiffs' request is that they are unhappy with the number of Opt-Ins now that the period to opt in to the lawsuit has expired.  But, this is not a viable reason to disturb the Court's correct, repeated rulings on this issue.  *See Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) ("'[N]otice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice.'") (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996) and collecting cases).  On this point, Judge Gallagher's reasoning is especially relevant: "Although the Court appreciates that the goal of notice is to ensure that the maximum number of eligible employees receive notice, the risk of annoying recipients into indifference through over-saturation is just as substantial as the risk of missing recipients through underdissemination."  ECF 183, p.

---

[2] Despite reporting this information to vail Resorts on April 13, 2026, Plaintiffs are now claiming that "as of April 13, 2026, 3,110 notices (12.8%) sent by U.S. mail to the addresses Vail provided were undeliverable."

23.  There is simply no good reason why tens of thousands of people who already received two notices but did not opt in to the lawsuit should receive yet another notice.

Plaintiffs' brief is rife with speculation based on "industry statistics" about "U.S. ski resorts" and " multiple independent legal obligations." It also completely omits that this is Plaintiffs' third attempt to secure text message notice after they failed to seek it in the first place. Whether or not Plaintiffs' "expectations" about international addresses, which are based on nothing by conjecture, have been met does not change the fact that Vail Resorts provided the last known email and postal mailing address in its possession for snow sport instructors during the relevant time period. Plaintiffs also admit that Vail Resorts went above and beyond what the Court required by supplementing with yet more addresses from its human resources management system. It is telling that while Plaintiffs ask the Court to order Vail Resorts to "supplement contact information for collective members," they do not suggest how that might be possible, what information might be used for such a supplement, other where Vail Resorts can "obtain the addresses." That is because Vail Resorts was crystal clear in its communications with Plaintiffs about the information in its possession. Plaintiff's insinuation that Vail Resorts is withholding information that it would have to maintain to comply with federal regulations is completely false and does not explain how the addresses some international applicants might have used to apply for jobs with Vail Resorts, even if Vail Resorts were in possession of such addresses,  would possibly satisfy any of these alleged requirements. For all of these reasons, the Court should deny Plaintiffs' attempt to re-open not only the issue of notice distribution but also the notice period itself.

11

Respectfully submitted this 14th day of April, 2026.

| | |
|---|---|
| *s/ Edward P. Dietrich* | *s/ Marielle A. Moore* |
| Edward P. Dietrich | Michael H. Bell |
| EDWARD P. DIETRICH, APC | Marielle A. Moore |
| 9465 Wilshire Boulevard, Suite 300 | OGLETREE, DEAKINS, NASH, SMOAK |
| Beverly Hills, CA 90212 | & STEWART, P.C. |
| Telephone:  310.300.8450 | 2000 South Colorado Boulevard |
| Facsimile:  310.300.8401 | Tower Three, Suite 900 |
| edward@dstlegal.com | Denver, CO  80222 |
| | Telephone:  303.764.6800 |
| | Facsimile:   303.831.9246 |
| | mike.bell@ogletree.com |
| | marielle.moore@ogletree.com |
| OMNUM LAW APC | Jeffrey L. Rudd |
| Benjamin Galdston | OGLETREE, DEAKINS, NASH, SMOAK |
| 4350 Executive Drive, Suite 350 | & STEWART, P.C. |
| San Diego, CA 92121 | 155 N. Wacker Drive, Suite 4300 |
| Telephone: 858.539.9767 | Chicago, IL  60606 |
| bgaldston@omnumlaw.com | Telephone: 312.558.1220 |
| | Facsimile:  312.807.3619 |
| | jeffrey.rudd@ogletree.com |
| Joseph Marc Sellers | |
| Brian C. Corman | |
| Alisa Tiwari | |
| Cohen Milstein Sellers & Toll PLLC | |
| 1100 New York Ave., NW, Suite 800 | |
| Washington, DC 20005 | |
| Telephone: 202.408.4600 | |
| jsellers@cohenmilstein.com | |
| bcorman@cohenmilstein.com | |
| atiwari@cohenmilstein.com | |
| *Attorneys for Plaintiffs Randy Dean Quint, John Linn and Mark Molina* | *Attorneys for Defendant Vail Resorts, Inc.* |